## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
OMAR MORRISON, individually    :
and on behalf of other         :
similarly situated Assistant   :
Store Managers,                :
                               :
              Plaintiffs,      :
                               :
v.                             :        Civil No. 3:09CV1285(AWT)
                               :
OCEAN STATE JOBBERS, INC.      :
                               :
              Defendant.       :
------------------------------x
```

## RULING ON MOTION TO PROCEED AS A COLLECTIVE ACTION AND TO AUTHORIZE NOTICE TO INDIVIDUALS IN THE PUTATIVE COLLECTIVE ACTION

The plaintiff, Omar Morrison ("Morrison"), brings this putative collective and class action "on his own behalf and on behalf of all others similarly situated" alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). (Am. Collective & Class Action Compl. (Doc. No. 23) ("Am. Compl"), at 1.)  The plaintiff has filed a Motion to Proceed as a Collective Action and to Authorize Notice to Individuals in the Putative Collective Action (Doc. No. 19).  For the reasons set forth below, the motion is being granted.

## I.    FACTUAL BACKGROUND

The plaintiff was employed at four Ocean State Job Lot ("Ocean State") stores from June 2, 2008 through September 16, 2009, when his employment was terminated.  From approximately the end of June, 2008 until the termination of his employment, the plaintiff worked as an Assistant Store Manager, a position that was classified as exempt from the overtime requirements of the FLSA.  Approximately 375 Assistant Store Managers were employed by more than 90 Ocean State stores between August 18, 2006 and the present.

The plaintiff alleges that he was required to work more than 40 hours per week and was improperly classified as exempt, as were all other Assistant Store Managers at Ocean State stores. The defendant, Ocean State Jobbers, Inc., asserts through its Director of Human Resources, Roy Greene, that it is a separate legal entity from Ocean State stores, which it licenses to separate entities who operate stores in the Northeastern United States.

## II.   LEGAL STANDARD

The FLSA authorizes "one or more employees" to bring an action against their employer "in behalf of . . . themselves and other employees similarly situated."  29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing

2

to become such a party and such consent is filed in . . . court . . . ." Id.  In other words, "'[s]uch a joint, or collective, action requires potential plaintiffs to opt in to the suit in order to benefit from any judgment.'" Perkins v. S. New Eng. Tel. Co., 669 F. Supp. 2d 212, 217 (D. Conn. 2009) (quoting Neary v. Metro. Prop. & Cas. Ins. Co., 517 F. Supp. 2d 606, 618 (D. Conn. 2007)).  Although "'district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to [29 U.S.C. § 216(b)]' the Second Circuit has not articulated a test for certification of an FLSA collective action." Hendricks v. J.P. Morgan Chase Bank, N.A., 263 F.R.D. 78, 82 (D. Conn. 2009) (citations omitted).

When considering whether to certify an action as a collective action under § 216(b),

> [d]istrict courts in this circuit have undertaken a two-stage inquiry.  The first step in determining whether a suit pursuant to the FLSA may proceed as a collective action is for the court to determine whether the proposed class members are similarly situated. If the court concludes the proposed members are similarly situated, then the collective action will be conditionally certified.

Perkins, 669 F.Supp.2d at 217 (citations omitted).

The first step of the inquiry takes place before discovery is conducted.  At that stage, "a class representative has only a minimal burden to show that he is similarly situated to the

3

potential class, which requires a modest factual showing sufficient to demonstrate that they and the potential class members together were victims of a common policy or plan that violated the law." <u>Marcus v. Am. Contract Bridge League</u>, 254 F.R.D. 44, 47 (D. Conn. 2008) (quoting <u>Neary</u>, 517 F. Supp. 2d at 618) (internal quotation marks omitted).

The second step of the inquiry

> occurs upon completion of discovery.  A court, often prompted by a motion for decertification by the defendant, will examine all the evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated.  The court's findings on the motion for decertification constitutes the second step in the two-part inquiry.

<u>Perkins</u>, 669 F. Supp. 2d at 217 (citations omitted) (internal quotation marks omitted).  Ultimately, "[a] collective action should be certified if, on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected."  <u>Hendricks</u>, 263 F.R.D. at 83 (internal quotation marks omitted).

## III. DISCUSSION

The plaintiff has proposed that the court preliminarily certify notice to the following class: all "Ocean State Assistant Store Managers at all Ocean State stores who have worked for defendant as Assistant Store Managers in all stores in Rhode Island, Connecticut, Massachusetts, Vermont, New Hampshire and

New York, between August 18, 2006 and the date of final judgment in this matter." (Am. Compl. ¶ 15.)

Because the instant motion is for conditional certification- the first stage of the analysis discussed above- the plaintiff must meet only a "modest burden of proof." Marcus v. Am. Contract Bridge League, 254 F.R.D. 44, 47 (D. Conn. 2008). At this stage,

> the court need only "be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case."  However, the court need not judge the merits of plaintiffs' claims because they are irrelevant to the conditional class certification inquiry, as long as plaintiff asserts a plausible basis for the claim.

Id. (citations omitted).  "[S]everal courts have held that it is appropriate to bring an FLSA exemption claim as a class action with regard to employees who perform similar, but not identical, duties, notwithstanding the highly fact-specific nature of the exemption inquiry. Scott v. AETNA Servs., Inc., 210 F.R.D. 261, 265 (D. Conn. 2002) (citing cases).

In this case, the plaintiff has met his modest burden of demonstrating that the potential class members are similarly situated.  He has presented evidence that Ocean State stores are controlled and operated by a single organization with a uniform set of policies, including a consistent job description for Assistant Store Managers; that Assistant Store Managers are required to work more than 40 hours per week; and that the duties

of Assistant Store Managers are similar across Ocean State
stores, and that this was true for from the time Morrison was
hired through the time that the instant motion was filed.

As an initial matter, although there is a dispute about the
identity of the plaintiff's employer and the extent of its
business, the plaintiff has produced evidence demonstrating that
Ocean State is an organization that is centrally controlled and
uniformly operated.  First, the plaintiff has produced evidence
from the defendant's website showing a list of its "Connecticut
Stores," showing a map of the states New York, Vermont, New
Hampshire, Massachusetts, Rhode Island, and Connecticut and
instructing the public to "[s]elect a state for store listings,"
and containing links to pages entitled "About Our Company" and
"Join Our Team." (Declaration of Omar Morrison (Doc. No. 19-2)
("Morrison Decl.") Ex. F at 18-19.)  The plaintiff has produced
several advertisements for jobs at Ocean State on
AllRetailJobs.com in which Ocean State presents itself as a
single company.  One advertisement states that "Ocean State Job
Lot is a privately owned company.  We operate a growing chain of
stores with locations in Rhode Island, Massachusetts,
Connecticut, New Hampshire, Maine, New York, and Vermont." (Id. 3
(emphasis added).) Another states that "We are a privately owned
company." (Id.  6 (emphasis added).)  Finally, the plaintiff has
produced Ocean State's "Company Policy and Procedure" guide and

"Management Training and Development" guide that detail policies that are to be implemented at all Ocean State stores. (Morrison Decl. Ex. D & Ex. E.)

The plaintiff has also produced evidence demonstrating that all Ocean State Assistant Store Managers are required to work over 40 hours per week and do not receive overtime pay. (See Morrison Decl. ¶ 8 & Ex. B.)  The plaintiff has also produced evidence demonstrating that there is a uniform, accurate job description of Assistant Store Managers at Ocean State, and that Ocean State's Assistant Store Managers spend "the vast majority of [their] time (about 80 percent) performing manual labor and non-management duties."  (Morrison Decl. ¶ 33; see Morrison Decl. Ex. A.)

Finally, although the plaintiff worked only at Ocean State stores in Connecticut,[1] he has made a sufficient showing at this stage for preliminary certification with respect to Ocean State employees in Rhode Island, Connecticut, Massachusetts, Vermont, New Hampshire and New York.  First, he avers that he has personal knowledge about the work performed by Assistant Store Managers at all Ocean State stores, because all assistant managers receive the same "Ocean State Job Lot Management Training and

---

[1] The plaintiff avers that he worked at Ocean State Stores in Ledyard, CT; Manchester, CT; Wethersfield, CT; and Willimantic, CT.  (See Morrison Decl. ¶¶ 1, 4.)

Development" guide; because his training was overseen by an Ocean
State Job Lot Field Trainer who, in his understanding, "traveled
to stores around New England and made sure that training was done
pursuant to" Ocean State's standards (Morrison Decl. ¶ 16);
because he attended a three-day management training conference in
Rhode Island; and because Assistant Store Managers share the same
job description and have the same primary duties from store-to
store.  (See Morrison Decl. ¶¶ 14-17, 31-33.)  Second, he
provides documentation of the common policies and a job
description that he avers Ocean State's Assistant Store Managers
were expected to follow.  For example, a posting on
AllRetailJobs.com for an Ocean State store management position in
Poughkeepsie, New York includes the text "[t]he Store
Manager/Assistant Manager is responsible for the timely and
consistent execution of all Merchandising, Operational, and Human
Resource policies and procedures . . . in accordance with the
philosophy and standards of the company."  (Morrison Decl. Ex. F
at 6.)  This description is also contained in the "Store
Manager/Assistant Store Manager" job description posted on the
oceanstatejoblot.com website.[2] (See Morrison Decl. Ex. A.)  These
internet postings, printed in October and November of 2009, are a

---

[2]Although the job descriptions on the oceanstatejoblot.com
website and on the AllRetailJobs.com website are not identical in
all respects, they are sufficiently similar for the plaintiff to
meet his burden at this stage of the proceedings.

sufficient to demonstrate that current Assistant Store Managers throughout the Northeast are affected by the same policies as were Assistant Store Managers at the time Morrison was employed by the defendant.

This combination of personal knowledge and documentation of Ocean State's common policies, including common policies relating to Assistant Store Managers, persuades the court that the plaintiff has met his "modest burden" with respect to demonstrating that the plaintiff and the proposed members of the putative class are similarly situated for the limited purpose of conditional certification. Cf. Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008) (granting preliminary certification for the defendant's Coney Island store but not all other Brooklyn area stores, because "[t]he sum of plaintiffs' allegations" regarding the other Brooklyn area stores consisted of a "claim that two managers of the Coney Island store . . . admitted . . . that they knew Domino's modified its employees' time records and forced its employees to work off-the-clock" at the other Brooklyn area stores; one plaintiff's claim that a delivery driver at one Brooklyn store "told him that Domino's reduced her hours" and another former Domino's employee's "generalized allegations of wrongdoing at every Domino's location he worked," including a particular other Brooklyn area store).

The defendant argues that the misclassification inquiry is

9

essentially an individual one inappropriate for conditional certification, and that the plaintiff is an inappropriate class representative because of his unique circumstances.  The defendant also argues that the plaintiff has not demonstrated that other potential members of the putative class wish to join the litigation.  Each of these arguments is most appropriately addressed at a different stage of the litigation.[3]

The defendant's first argument was expressly rejected by the court in Perkins v. Southern New England Telephone Co., 669 F. Supp. 2d 212 (D. Conn. 2009).  As the court noted there, "[h]ad Congress intended to exclude misclassification claims from collective actions, it would have done so.  Additionally, a number of courts in this district have certified collective actions for FLSA overtime claims." Id. at 218.  As in Perkins, the defendant here "relies heavily" on Mike v. Safeco Insurance Company of America, 274 F. Supp. 2d 216 (D. Conn. 2003). Perkins, 669 F. Supp, 2d at 218.  As the court noted in Perkins, however, the court in Mike denied certification "because the representative plaintiff 'disavowed' his job description, and

_____

[3]The court notes that the defendant's three major arguments correlate to the "ad hoc review of certain factors" some courts have adopted during review of certification motions at the second stage of the process "including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." Hendricks v. J.P. Morgan Chase Bank, 263 F.R.D. 78, 83 (D. Conn. 2009) (internal quotation marks omitted).

thus the court would have to 'engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to Mike's.'" Id. (quoting Mike, 274 F. Supp. 2d at 221).

The defendant's reliance on the applicable federal regulations to support this argument also fails.  The defendant notes that 29 C.F.R. § 541.2 states that "[a] job title alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations . . . ."  29 C.F.R. § 541.2.  The regulations also state that "[t]o qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers."  29 C.F.R. § 541.201.  Even though the regulations refer to "any particular employee," that does not preclude the scenario where a class of employees has identical primary duties.  Here, the plaintiff has produced evidence that a common job description accurately describes the duties of the putative class and a common set of policies governed all Ocean State stores employing proposed class members.  Thus, the plaintiff is not relying on the job title here.

The defendant's second argument, that facts unique to

Morrison make his situation different from other Assistant Store
Managers, addresses the merits of certification in this case,
rather than the specific issue of whether the plaintiff has met
his modest burden of demonstrating that the putative class
members are similarly situated.  However, "even at the second
step of the certification stage, courts do not address the merits
of the plaintiffs' claims." Hendricks, 263 F.R.D. at 83.  "For
certification of a collective action under the FLSA, even at the
second stage, plaintiffs need show only that their positions are
similar, not identical, to the positions held by the putative
class members." Id. at 83 (emphasis added) (internal quotation
marks omitted).  The defendant argues that the plaintiff is an
inappropriate class representative because he was terminated for
performance issues, specifically issues relating to the
management duties that are relevant to the exemption inquiry;
because he has been pursuing discrimination claims against the
defendant in a separate action before the Connecticut Commission
on Human Rights and Opportunities; and because his lawsuit
against his previous employer indicates that he is a serial
plaintiff who was "simply setting up Ocean State for an eventual
lawsuit." (Def.'s Mem. Law Opp. Pl.'s Mot. Proceed as a
Collective Action (Doc. No. 39) ("Mem. Opp."), at 26.)

     However, regarding the plaintiff's termination, "although
[the defendant] is sure to raise some individualized defenses

regarding the discretion some plaintiffs may have exercised, those questions are more properly raised in a full discussion of the merits, not at the certification stage . . . ." Perkins, 669 F. Supp. 2d at 221.  In addition, the "plaintiffs need only to be 'similarly' situated"; they do not need to be "identically situated".  Id. at 220.  Further, to the extent that the defendant is making this argument to suggest that other Assistant Store Managers performed management duties to a sufficient degree to be exempt from the FLSA and Morrison did not, it "appears to be couching arguments about the merits of the misclassification case in arguments about the similarity of the potential class." Id. at 219.

In support of its argument regarding the plaintiff's other lawsuits, the defendants cite only Savino v. Computer Credit, Inc., 164 F.3d 81 (2d Cir. 1998), where the Second Circuit affirmed the denial of Rule 23 class certification because the named plaintiff "offered differing accounts [of the facts] that form the very basis for his lawsuit" in his pleadings and testimony, leading the district court to conclude that he was not an adequate class representative.  Id. at 87.  Putting aside the different context of class certification under Rule 23, the plaintiff in Savino took inconsistent positions in the same litigation on the same claim; the defendant here suggests only that Morrison has the potential for making inconsistent claims in

the future in other cases being adjudicated elsewhere. Similarly, the plaintiff's claims against other employers do not have any bearing on whether or not Ocean State violated the FLSA in connection with its employment of Assistant Store Managers.

Finally, the defendant's argument that the plaintiff has not demonstrated that other potential members of the class want to join this case misapprehends the purpose of the two-step certification inquiry discussed above.  While the plaintiff may be unable to demonstrate interest on the part of other potential class members in this case, the inquiry must take place after those potential class members have been notified of the action, not before.  In addition, this argument has previously been rejected in this district.  See Neary v. Metro. Prop. & Cas. Ins. Co., 517 F. Supp. 2d 606, 622 (D. Conn. 2007) ("As to defendant's claim that plaintiff has not identified other potential class members who would want to participate in this action, such identification, at this preliminary stage, is not required in the Second Circuit.").[4]

---

[4]The defendant also notes that the plaintiff's counsel "has already begun attempting to solicit other potential plaintiffs to increase his clientele in this case . . . and . . . provides a form of opt-in notice [on his law firm's website] that any individual can conveniently complete and send to Plaintiff's counsel." (Mem. Opp. 30-31.)  "However, federal courts have frequently allowed for court-authorized notice even if plaintiffs have been in contact with potential class members." Perkins, 669 F. Supp. 2d at 222.

14

**IV.   CONCLUSION**

For the reasons set forth above, the Motion to Proceed as a Collective Action and to Authorize Notice to Individuals in the Putative Collective Action (Doc. No. 19) is hereby GRANTED.

It is so ordered.

Signed this 17th day of May, 2010 at Hartford, Connecticut.


_____/s/AWT_____
        Alvin W. Thompson
    United States District Judge