## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------- x
OMAR MORRISON, CARLI GALASSO,    :
AND MANUEL TOPPINS, INDIVIDUALLY :
and on behalf of other similarly :
situated ASSISTANT STORE         :
MANAGERS,                        :
                                 :
          Plaintiffs,            :   Civil No. 3:09-cv-1285(AWT)
                                 :
v.                               :
                                 :
OCEAN STATE JOBBERS, INC.,       :
                                 :
                                 :
          Defendant.             :
------------------------------- x
```

## <u>RULING ON MOTION FOR SUMMARY JUDGMENT</u>

The plaintiffs, Omar Morrison, Carli Galasso, Manuel Toppins and 22 opt-in plaintiffs, bring this action against the defendant, Ocean State Jobbers, Inc. ("Ocean State"), claiming that Ocean State misclassified them as exempt under federal and state overtime laws and failed to pay them overtime pay for hours above 40 in a workweek, in violation of the Fair Labor Standards Act, 29 U.S.C.§§ 216(b) ("FLSA"), the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58, et seq. ("CMWA"), and the Massachusetts Minimum Fair Wage Law, Mass. Gen. Laws, ch. 151, §§ 1-22 ("MFWL").

For the reasons set forth below, the defendant's motion for summary judgment is being granted in part and denied in part.

The motion is being granted with respect to the MFWL claims of two plaintiffs.

## I.    BACKGROUND

Ocean State is a retailer that "offer[s] a wide range of closeout and overstock merchandise." (Declaration of Richard Portno (Doc. No. 240) ("Portno Declaration") ¶ 3.) As of November 2014, it operated 116 stores in the Northeast United States. Ocean State "make[s] money by putting [its] best items in prime locations, building powerful visual presentations, and signing them properly." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 248) ("Plaintiffs' Opposition") at 4.) "The steady, sizable flow of new goods into [a] store requires constant planning and attention to freight flow . . . . Under normal circumstances, the company freight flow turnaround goal - from shipping truck to sales floor - is 24-hours." (Id.)

Ocean State's stores are organized into regions, and districts within those regions. Each region and district has a Regional Manager and a District Manager with overall accountability for the stores in their areas. At the store level, Ocean State employs a store management team consisting of a Store Manager and one or more Assistant Store Managers ("ASMs"). Ocean State classifies its Store Manager and Assistant Store Managers as exempt employees, and classifies

-2-

other employees at the stores, such as Department Heads and Sales Associates, as non-exempt.

The Sixth Amended Collective and Class Action Complaint ((Doc. No. 229) (the "Complaint")) includes a claim by all the plaintiffs for violation of the FLSA (Count One), a claim for violation of the CMWA brought by plaintiffs Morrison, Donna Dmochowski, Paula Krafft, Jeremy Mason, Normand Langevin, Linda Dodge, James Bethune, Sandra Carnelli, Stephen Dynder, Kristen Maturo, Wendy Hapgood, Mohammed Rashid, Eric Curtiss, Debra Hermans, and Peter Vella (Count Two); and a claim for violation of the MFWL brought by plaintiffs Carli Galasso, Manuel Toppins, Selma Cherry, Virginia Bisson and Richard Main (Count Three).

Ocean State has moved for summary judgment on all of the plaintiffs' claims.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  When ruling on a motion for summary judgment, the court may not try issues of fact, but must leave those issues to the jury.  See, e.g., Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987).  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  Only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable

inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). However, the inferences drawn in favor of the nonmovant must be supported by evidence.

## III. DISCUSSION

Ocean State contends that summary judgment in its favor is appropriate because each of the elements of the executive exemption to the overtime pay rule has been satisfied with respect to each of the plaintiffs.  It also contends that the FLSA's two-year statute of limitations applies (rather than a three-year period) because the plaintiffs cannot show that Ocean State has acted willfully; thus the claims of certain plaintiffs must be dismissed because they are time barred if the statute of limitations is two years.  Ocean State also contends that liquidated damages under the FLSA are not appropriate because Ocean State took reasonable affirmative steps, in good faith, to comply with the FLSA.

### A.    Executive Exemption

Section 7(a)(1) of the FLSA provides that, except as otherwise provided, an employee who works more than 40 hours per week must "receive[] compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29

-5-

U.S.C. § 207(a)(1).  One exception is that the overtime pay rule "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity . . . ."  29 U.S.C. § 213(a)(1).  The FLSA does not define employment in a "bona fide executive, administrative, or professional capacity", and instead directs the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations." Id.

The Department of Labor's regulations defining the terms of the FLSA executive exemption provides the following four-part test for the FLSA executive exemption:

The term "employee employed in a bona fide executive capacity" . . . shall mean any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  "[T]he Department of Labor's 2004 regulations defining the terms of the FLSA executive exemption

have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute." Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 559 (2d Cir. 2012) (internal quotation marks omitted).

"Because the FLSA is a remedial act, its exemptions, such as the bona fide executive exemption claimed in this case, are to be narrowly construed.  To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." Ramos, 687 F.3d at 558.  Additionally, "an employer bears the burden of proving that its employees fall within an exempted category of the Act." Id.

"The basic overtime provision of the Massachusetts [overtime] statute is essentially identical to the FLSA." Valerio v. Putnam Associates Inc., 173 F.3d 35, 40 (1st Cir. 1999).  Like the FLSA, the MFWL exempts employees who are employed "as a bona fide executive, administrative or professional person" from its requirement that employees who work in excess of 40 hours be compensated at a rate of not less than one and one-half times their regular rate.  Mass. Gen. Laws 151, § 1A(3).  In interpreting the terms "bona fide executive, administrative or professional person", Massachusetts expressly adopts the DOL regulations defining terms in the FLSA: "[t]he

terms 'bona fide executive, or administrative or professional

person' in [Mass. Gen. Laws 151, § 1A(3)] . . . shall have the

same meaning as set forth in 29 CFR Part 541." 455 Code of

Mass. Reg. § 2.02(3). Thus, "[t]he resolution of [the

plaintiffs'] FLSA claim is equally applicable to [their]

Massachusetts statutory claim." Drexler v. Tel Nexx, Inc., No.

13-CV-13009-DPW, 2015 WL 5096466, at *7 (D. Mass. Aug. 28,

2015).

The Connecticut Minimum Wage Act contains provisions that

"parallel the federal overtime pay requirements of the FLSA."

Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544,

559 (D. Conn. 2009). Like the FLSA, the CMWA requires employers

to compensate non-exempt employees for any work over 40 hours a

week "at a rate not less than one and one-half times the regular

rate at which he is employed." Conn. Gen. Stat. § 31-76c.

"[A]n individual employed in a bona fide executive,

administrative or professional capacity as defined in the

regulations of the Labor Commissioner" is excluded from coverage

by this rule. Conn. Gen. Stat. § 31-58(f). "In order to be

qualified for exclusion, an employee must meet all of the

requirements of the exemption. The burden rests on the employer

to establish that the employee comes within the statutory

exemption." Butler v. Hartford Technical Inst., Inc., 243 Conn.

454, 465-66 (1997) (internal citations and quotation marks

omitted).  "The prime factor in the determination whether a person is employed in an executive capacity is the nature of his duties."  Shell Oil Co. v. Ricciuti, 147 Conn. 277, 285, 160 A.2d 257, 261 (1960).  Accord Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544, 559 (D. Conn. 2009).  The Connecticut Department of Labor regulations provide the following "short test" for determining if an employee qualifies as an employee employed in a bona fide executive capacity pursuant to Section 31-58(f):

> An employee who [(1)] is compensated on a salary basis at a rate of not less than four hundred seventy-five dollars per week, exclusive of board, lodging, or other facilities, and [(2)] whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and [(3)] includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.

Conn. Agencies Regs. 31-60-14(a).  As discussed below, the only executive exemption test requirement that is at issue in this case is the ASM's primary duty.  "[T]he Connecticut Supreme Court has indicated that federal precedent can be used to interpret Connecticut laws that are analogous to provisions contained in the FLSA."  Hendricks v. J.P. Morgan Chase Bank, N.A., 677 F. Supp. 2d 544, 560 (D. Conn. 2009) (citing Roto-Rooter Services Co. v. Dep't of Labor, 219 Conn. 520, 528 n. 8, 593 A.2d 1386 (Conn. 1991) ("Because the phrase "commissions on

goods or services" in General Statutes § 31-76i(g)(2) tracks the language of 29 U.S.C. § 207(i), which exempts certain employers from the overtime provisions of the Fair Labor Standards Act, our interpretation of the Connecticut exemption is aided by federal precedent respecting the meaning and scope of the analogous federal exemption.")). Because the formulation of the primary duty requirement for FLSA claims is essentially identical to the formulation for CMWA claims, the resolution of the plaintiffs' FLSA claim is equally applicable to their CMWA claim.

> **1.    Salary Basis, Customarily and Regularly Direct Work of Others, and Authority to Make Hiring and Firing Decisions**

The parties agree that the first, third and fourth requirements of the executive exemption test are satisfied here. The plaintiffs do not dispute that they "customarily and regularly direct the work of two full time employees, that they are paid at least $455 per week and that their recommendations as to hiring or firing are given particular weight."[1] (Plaintiffs' Opposition at 17 n3.)

---

[1] As to the plaintiffs' CMWA claims, the plaintiffs concede that they are paid at least $475 per week, which Ocean State must establish to satisfy the Connecticut short test.  The short test excludes the fourth element of the FLSA executive exemption test.

###    2.   Whether the Plaintiffs' Primary Duty is
            Management

The second requirement of the executive exemption test is that the employee be one "[w]hose <u>primary duty</u> is <u>management</u> of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof."  29 C.F.R. § 541.100(a) (emphasis added).  Ocean State contends that the second requirement is satisfied because the plaintiffs "performed management-related responsibilities as ASMs in their stores, and those management functions were and always have been considered by Ocean State to be the most important role of the ASMs."  (Defendant's Memorandum of Law in Support of Omnibus Motion for Summary Judgment (Doc. No. 241) ("Defendant's Memorandum") at 9.)

"To determine whether an employee's primary duty is management, a court must analyze all the facts in a particular case, looking to the principal, main, major or most important duty that the employee performs."  <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 548 (2d Cir. 2010) (internal quotation marks and citations omitted).  The Department of Labor's regulations defining "primary duty" provide that:

> (a)  To qualify for exemption under this part, an employee's "primary duty" must be the performance of exempt work.  The term "primary duty" means the principal, main, major or most important duty that the employee performs.  <u>Determination of an employee's primary duty must be based on all the facts in a</u>

particular case, with the major emphasis on the <u>character of the employee's job as a whole</u>. Factors to consider when determining the primary duty of an employee <u>include, but are not limited to</u>, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

(b) The amount of time spent performing exempt work can be a useful guide in determining whether exempt work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement. Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work. Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

(c) Thus, for example, assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. <u>However, if such assistant managers are closely supervised and earn little more than the nonexempt employees</u>, the assistant managers generally would not satisfy the primary duty requirement.

29 C.F.R. § 541.700 (emphasis added). "The regulations further provide a non-exclusive list of characteristic management activities to which a court may look to determine whether an employee's primary duty is management." <u>Myers v. Hertz Corp.</u>,

624 F.3d 537, 548 (2d Cir. 2010) (internal quotation marks and citations omitted).  The regulations define "management" as follows:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.

Here, Ocean State has failed to demonstrate the absence of genuine issues of material fact as to whether the management work that ASMs perform is their primary duty, not simply with respect to the character of the plaintiffs' jobs as a whole, but also with respect to each of the non-exclusive enumerated factors in 29 C.F.R. § 541.700.  See Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 558 (2d Cir. 2012) ("[A]n employer bears the burden of proving that its employees fall within an exempted category of the Act.").

-13-

As an initial matter, the plaintiffs contend that the court should disregard much of the Declaration of Richard Portno, which Ocean State filed with its motion, because it is not based on Portno's personal knowledge and therefore it is not admissible as an affidavit or declaration pursuant to Fed. R. Civ. P. 56(c)(4).

Rule 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56.  "The Rule's requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'"  Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 219 (2d Cir. 2004).  The requirement "that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial."  Id.

Portno testified at his deposition that he had "very limited" personal knowledge of the duties performed by ASMs:

> [Plaintiffs' counsel]: Describe for me, if you can, the extent to which you have personal knowledge of the duties that are actually performed on a day-to-day

basis by assistant managers in your 85 to 100 stores
during that period of time. . . .

[Portno]: Very limited personal knowledge described in
that factor. My knowledge is talking to people who
talked to the assistants.

(Deposition of Richard Portno (Doc. No. 248-9) ("Portno

Deposition") at 66.)

Although Portno testified that he has very limited personal

knowledge about some of the items in his declaration, he does

have personal about other items, such as the nature of Ocean

State's business and his personal efforts to stay informed about

federal wage laws.  Thus, the court should not disregard his

entire declaration.  Instead, in ruling on the instant motion,

the court "simply decline[s] to consider those aspects" of the

Portno Declaration that "do not appear to be based on personal

knowledge or are otherwise inadmissible."  Smeraldo v. City of

Jamestown, 512 F. App'x 32, 34 (2d Cir. 2013) (quoting Doe v.

Nat'l Bd. of Podiatric Med. Examiners, No. 03 CIV. 4034 (RWS),

2004 WL 912599, at *4 (S.D.N.Y. Apr. 29, 2004)).

Also, the plaintiffs have produced evidence that Ocean

State has detailed, uniform corporate policies and procedures

that cover many aspects of an ASM's employment.  Thus, although

Ocean State has moved for summary judgment as to each plaintiff

on an individualized basis and identified evidence specific to

each plaintiff, there is a genuine issue as to the extent to

which Ocean State's corporate policies and procedures, and the way in which they have been applied as to other plaintiffs, is material evidence with respect to each plaintiff.

The parties do not dispute that the ASMs performed both management and non-management duties.  The non-management duty to which ASMs devoted most of their time was "pushing freight" or "working out freight", which consisted of "get[ting] merchandise off of the delivery trailer, into the backroom, onto the shelves, and maintain[ing] the shelves according to [Ocean State's] precise standards."  (Plaintiffs' Opposition at 3.) Plaintiff Morrison, for example, testified at his deposition that he devoted most of his workday to such work.  Other examples of non-management duties performed by plaintiffs are "customer service . . . making sure the store was safe, neat, clean, assisting wherever I could", "making signs, answering customer questions, getting carts if I needed to . . . ringing on the register . . . cleaning the bathroom", and "collecting carriages from the parking lot . . . cleaning the bathroom, washing windows, cleaning out the break room . . . ." (Deposition of Selma Cherry (Doc. No. 248-12) at 96; Deposition of Peter Vella (Doc. No. 248-14) at 98; Deposition of Debra Hermans (Doc. No. 248-6) at 79-80.)

ASMs also performed management duties at Ocean State, such as supervising employees, assigning and delegating work to

employees, conducting prescreen interviews of applicants, evaluating employee performance, issuing warnings to and disciplining employees, and acting as manager of the store when the Store Manager is not there.

Although the parties agree that the ASMs performed both management and non-management duties, they produce conflicting evidence as to whether management duties were the plaintiffs' primary duty.

Ocean State produces evidence that it considered management and supervision of subordinates to be the most important function of the ASM position. Indeed, several of the plaintiffs have acknowledged that Ocean State told them during performance evaluations to focus more of their efforts on managerial work, and less on manual work. The plaintiffs, on the other hand, produce evidence that they were told by Ocean State, or they learned through their work experience at Ocean State, that their most important duty was to push freight from the back room to the store floor. Other evidence, such as Ocean State's Annual Evaluation Form for Assistant Managers, reflects that both management and non-management functions are important parts of the ASM position. The form includes the following criteria for scoring ASMs performance:

> Does your [ASM] properly Supervise and Merchandise their assigned portion of the sales floor?

. . . .

Does your [ASM] maintain control of their topstock and backstock?

. . . .

Does your [ASM] achieve a 24-hour freight flow for all merchandise?

. . . .

Does your [ASM] provide direction to their staff effectively and listen to their concerns?

(Annual Evaluation Form - Assistant Managers (Doc. No. 241-14 at 4).)

As to the amount of time the ASMs spent performing exempt work, plaintiffs produce evidence in the form of deposition testimony that the amount of time they actually spent performing managerial duties was substantially outweighed by the time they spent doing non-managerial duties.  For example, plaintiffs Rashid, Vella, Toppins, Main, Gaylord, Dmochowski, Maturo, Hapgood, Bethune, Curtiss, Galasso, Ryan and Mason testified that they spent more than 75% of their time performing non-managerial tasks.  Plaintiff Curtiss testified that he spent 90% of his day pushing freight.  Although the amount of time a plaintiff spent doing non-managerial tasks could weigh in his or her favor, it is not dispositive because "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the

other factors support such a conclusion."  29 C.F.R. §
541.700(b).

As to the ASMs' freedom from direct supervision, as
discussed above, certain plaintiffs acknowledged during their
depositions that they were given autonomy to make business
decisions for Ocean State, such as prescreening job applicants,
and disciplining and training employees.  Ocean State also
produces evidence that ASMs managed store departments and, as
the "Manager on Duty", were responsible for resolving issues
that arose when the Store Managers were not present; certain
plaintiffs also testified that there were occasions when they
were the Manager on Duty even when the Store Manager was
working, such as when the Store Manager was participating in a
conference call.  The plaintiffs, on the other hand, produce
evidence that they had limited discretionary authority as ASMs.
Some plaintiffs testified at their depositions, that their
actions were closely supervised and directed by their Store
Managers, and they were required to follow detailed corporate
policies that limited their ability to make independent
judgments.

The parties also produce conflicting evidence about the
difference between the ASMs' salary and the wages paid to other
Ocean State employees for the kind of nonexempt work performed
by the ASMs.  Ocean State points to a comparison between the

salary of the average ASM, converted to an hourly rate based on certain assumptions, and the wage earned by Department Heads and Sales Associates -- and also to the fact that ASMs were eligible for benefits and an annual bonus.  The plaintiffs produce evidence calling into question the accuracy of Ocean State's assumptions, and evidence that the appropriate position for comparison is the Area Supervisor, all of which weighs against a finding that the primary duty of the ASMs is management.

Thus, because there are genuine issues of material fact as to whether each the plaintiff's primary duty is management, Ocean State's motion for summary judgment on the grounds that the requirements for the executive exemption are satisfied is being denied.

**B.   Statute of Limitations**

Ocean State argues that it is entitled to summary judgment on the FLSA claims brought by plaintiffs Cherry, Curtiss, Hapgood, Hermans and Rashid in Count One, and the Massachusetts MFWL claims brought by plaintiffs Cherry and Main in Count Three because their claims are barred by a two-year statute of limitations.

**1.   FLSA Claims**

FLSA actions for unpaid overtime compensation or liquidated damages are subject to a two-tiered statute of limitations. Such actions "may be commenced within two years after the cause

of action accrued, and every such action shall be forever barred
unless commenced within two years after the cause of action
accrued, except that a cause of action arising out of a willful
violation may be commenced within three years after the cause of
action accrued."  29 U.S.C. § 255(a).

The DOL regulations define "willful" violations of the FLSA
as follows:

> (1) An employer's violation of section 6 or section 7
> of the Act shall be deemed to be "willful" for
> purposes of this section where the employer knew that
> its conduct was prohibited by the Act or showed
> reckless disregard for the requirements of the Act.
> All of the facts and circumstances surrounding the
> violation shall be taken into account in determining
> whether a violation was willful.
>
> (2) For purposes of this section, an employer's
> conduct shall be deemed knowing, among other
> situations, if the employer received advice from a
> responsible official of the Wage and Hour Division to
> the effect that the conduct in question is not lawful.
>
> (3) For purposes of this section, an employer's
> conduct shall be deemed to be in reckless disregard of
> the requirements of the Act, among other situations,
> if the employer should have inquired further into
> whether its conduct was in compliance with the Act,
> and failed to make adequate further inquiry.

29 C.F.R. § 578.3(c).  Thus, to prove a "willful" violation of
the FLSA within the meaning of Section 255(a) "it must be
established that the employer either knew or showed reckless
disregard for the matter of whether its conduct was prohibited
by the statute.  If an employer acts unreasonably, but not
recklessly, in determining its legal obligation, its action

should not be considered willful." Parada v. Banco Indus. De
Venezuela, C.A., 753 F.3d 62, 71 (2d Cir. 2014) (internal
citations and quotation marks omitted).  "The plaintiff bears
the burden of proof on the issue of willfulness for statute of
limitations purposes." Id. (internal quotation marks omitted).

Here, the record shows the following.  Ocean State has
"always . . . classified [ASMs] as exempt from federal overtime
regulations . . . ." (Deposition of Raymond Conforti (Doc. No.
248-2) ("Conforti Deposition") at 25.)  In 2004, the Department
of Labor audited Ocean State and found that another position at
Ocean State -- the District Merchandizer position -- should be
classified as nonexempt.  The parties do not know whether the
DOL also audited the classification of ASMs.  Ocean State then
"[had] HR professionals within [the company] monitor and remain
updated on the appropriateness of [the company's] exemption
classification for all positions, including . . . ASMs." (Portno
Declaration ¶ 44-45.)  Raymond Conforti, a human resources
professional at Ocean State, conducted an internal review of the
ASM position, and concluded that ASMs were properly categorized
as exempt.  However, his review consisted solely of "reviewing
the job descriptions." (Conforti Deposition at 26.)  Regarding
the review of the ASM position, Portno testified "I won't say
that we did exhaustive studies. We didn't. We talked to people
about – people were talked to about the job descriptions and

what they did and that's how we determined that they were exempt
. . . ." (Plaintiffs' Opposition at 38.)  Conforti then made an
oral report of his findings at an operations meeting, where the
classification of ASMs was "one among many things we discussed .
. . . we didn't sit down and here's the formal review." (Portno
Deposition at 56.)  Thus, there was a limited review, for which
no documentation exists.  Portno is "95% sure" that he followed
up on Conforti's report with a 15-minute conversation with
outside counsel to "verify . . . that [Ocean State was] okay or
not okay." (Deposition of Richard T. Portno (Doc. No. 248-9) at
58, 59.)  Ocean State did not ask outside counsel for a detailed
analysis because the company "purposely tell[s] . . . outside
counsel don't confirm this.  Don't write us letters because that
costs too much money. . . . I want to know specifically yes or
no." (Id. at 59.)  Although Ocean State did not reclassify the
ASMs as a result of this review, it continued to monitor the
classification of all positions.  Ocean State's Director of
Recruitment and Training, Donna McLeod, who is responsible for
"ensur[ing] compliance with the [FLSA] [and] any other state
wage and hour law[s] with regard to assistant store managers",
visits Ocean State stores "once to twice a week, at least" to
interview management candidates and "walk the store with
management, [] observe the behavior . . . in the store, [and]
get feedback from the staff in the field . . . ." (Deposition

of Donna McLeod (Doc. No. 241-46) ("McLeod Deposition") at 10,
33, 45.)  Ocean State employs "field trainers" in each region
who review the duties of ASMs.  (Deposition of Royal Greene, Jr.
(Doc. No. 241-47) at 137.)  Ocean State has communicated to
Store Managers and ASMs that "[Ocean State's] expectation [is]
that ASMs are part of the store management team and should
primarily perform the management-related responsibilities with
which they are entrusted."  (Portno Declaration ¶ 47.)  As a
result of its continuing reviews, Ocean State has reclassified
its store auditor and IT personnel as nonexempt employees.
Ocean State has not, however, produced evidence that it ever
systematically collected information about work actually
performed by ASMs and analyzed the classification of ASMs based
on the factors to be considered when determining whether the
primary duty of an employee is management based on to 29 C.F.R.
§ 541.700(a).

     The court concludes that genuine issues of material fact
exist as to whether Ocean State acted with reckless disregard to
the possibility that its classification decision violated the
FLSA.[2]  A reasonable jury could conclude that, particularly in
light of the 2004 DOL audit in which the DOL found that Ocean
State had incorrectly classified another position as nonexempt,

_____

[2] The plaintiffs do not contend that Ocean State violated the
FLSA with respect to the classification of ASMs as exempt
executives with actual knowledge.

-24-

Ocean State classified ASMs as exempt without taking steps that were reasonably calculated to provide Ocean State with an understanding of the character of the ASM job as a whole.

Ocean State does not identify any claims that are barred by the three-year statute of limitations for willful violations of the FLSA.  Thus, Ocean State's motion for summary judgment based on the statute of limitations is being denied as to the FLSA claims brought by plaintiffs Cherry, Curtiss, Hapgood, Hermans and Rashid in Count One.

### 2.   MFWL Claims

Ocean State argues that the MFWL claims brought by plaintiffs Cherry and Main are barred by the Massachusetts statute of limitations.  The plaintiffs do not respond to Ocean State's arguments, and therefore they have abandoned Cherry's and Main's MFWL claims.  See Paul v. Bank of Am., N.A., No. 3:11-CV-0081 JCH, 2011 WL 5570789, at *2 (D. Conn. Nov. 16, 2011) (finding a claim abandoned where the plaintiff failed to address the claim in its motion for summary judgment); Molinari v. Bloomberg, 564 F.3d 587, 609 n.15 (2d Cir. 2009) ("When a party 'offer[s] no response' to its opponent's motion to dismiss a claim, that claim is abandoned.").  Therefore, Ocean State's motion for summary judgment on the MFWL claims brought by plaintiffs Cherry and Main in Count Three is being granted.

### C.    Liquidated Damages

Ocean State argues that the court should exercise its discretion not to award liquidated damages because its acts or omissions giving rise to this action were in good faith and it had reasonable grounds for believing that it was in compliance with the FLSA.

29 U.S.C. § 260 provides in FLSA actions to recover unpaid overtime compensation that:

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.  "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  Id.

Here, the court has found that there are genuine issues of material fact as to whether Ocean State acted with reckless disregard to the possibility that its classification decision violated the FLSA.  In light of that conclusion, the court finds

that there are also genuine issues of material fact as to whether Ocean State acted in good faith in classifying the ASMs as exempt executives.  Therefore, Ocean State's motion for summary judgment on the issue of liquidated damages is being denied.

**IV.  CONCLUSION**

For the reasons set forth above, Defendant's Omnibus Motion for Summary Judgment (Doc. No. 239) is hereby GRANTED in part and DENIED in part.  The motion is granted as to the MFWL claims brought by plaintiffs Cherry and Main in Count Three and denied in all other respects.

It is so ordered.

Dated this 28th day of September 2015, at Hartford, Connecticut.

_____
/s/
Alvin W. Thompson
United States District Judge
