# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

**OMAR MORRISON, CARLI GALASSO and**
**MANUAL TOPPINS, individually and on behalf of**
**other similarly situated Assistant Store Managers,**          **CIVIL ACTION NO.:**

                             **Plaintiffs,**               **3:09-CV-1285 (AWT)**

          **-against-**                        **December 18, 2015**

**OCEAN STATE JOBBERS, INC.,**

                             **Defendant.**
-----------------------------------------------------------------X

## JOINT TRIAL MEMORANDUM

The parties hereby jointly submit this Joint Trial Memorandum in accordance

with the order of the Court.

> **1.  Trial Counsel:**

          For Plaintiffs:    Richard E. Hayber, Erick Diaz and Anthony J. Pantuso, III
                             Hayber Law Firm, LLC
                             221 Main Street, Suite 502
                             Hartford, CT  06106
                             (860) 522-8888

                             Shannon Liss-Riordan
                             Lichten & Liss-Riordan
                             729 Boylston Street, Suite 2000
                             Boston, MA 02116
                             (617) 994-5800

          For Defendant:    Michael C. Schmidt and Jonathan Cavalier
                             Cozen O'Connor
                             277 Park Avenue
                             New York, NY  10172
                             (212) 453-3937

Sherwin M. Yoder
Carmody Torrance Sandal & Hennessey LLP
195 Church Street
New Haven, CT 06509
(203) 784-3107

**2.  Jurisdiction:**

Federal Question, 28 U.S.C. Section 1331 and 29 U.S.C. Section 216(b).

**3.  Jury / Non-Jury:**

Jury.

**4.  Nature of Case:**

This is a collective action under the federal Fair Labor Standards Act
(FLSA) (Count I) for unpaid overtime wages, liquidated damages, attorneys'
fees and costs.

It is also a claim for unpaid overtime wages under the state laws of
Connecticut (Count II) and Massachusetts (Count III) for damages, liquidated
damages, attorneys' fees and costs.

**5.  Stipulations of Fact and Law:**

i.      For purposes of this lawsuit, Plaintiffs were employed by
        Defendant and Defendant was Plaintiffs' employer.

ii.     Defendant is subject to the FLSA, the Connecticut Minimum Wage
        Act and the Massachusetts Minimum Fair Wage Law.

iii.    Each of the Plaintiffs worked as an Assistant Store Manager for at
        least a portion of their employment with Defendant.

iv.     During the time that they worked as Assistant Store Managers,
        Defendant classified Plaintiffs as exempt under the "Executive

Exemption" contained in the FLSA, and Connecticut and Massachusetts laws, and did not pay overtime wages when Plaintiffs worked more than 40 hours per week because of that exempt classification, nor was their salary reduced for working fewer than 40 hours in a week.

v.      Plaintiffs each were paid at least $475 per week during the period of their claims, and therefore met the minimum salary requirement under the Executive Exemption.

vi.     Plaintiffs each customarily and regularly directed the work of two or more full-time employees during the period of their claims.

vii.    Plaintiffs each had the authority to hire or fire other employees, or their suggestions and recommendations as to the hiring, firing, advancement,  promotion or any other change of status of other employees were given particular weight during the period of their claims.

viii.   No specific "time study" was ever performed by Defendant to document the relative amount of time Assistant Store Managers spend performing exempt versus non-exempt work.

6. **Plaintiffs' Contentions:**

  i. Plaintiffs contends that their primary duty was not management and that accordingly they were improperly classified as exempt executives.

  ii. Plaintiffs contend that they worked more than 40 hours per week during the period of their claim and that they are entitled to unpaid overtime wages calculated by dividing their salary by 40 and paying that resulting regular hourly rate by 1.5.

  iii. Connecticut Plaintiffs further contend that they are entitled to interest under the Connecticut Minimum Wage Act calculated at 12% per annum for each overtime dollar earned from the date that it became due.

  iv. Plaintiffs further contend that Defendant did not make a good faith effort to comply with the FLSA as to them and that accordingly they are entitled to liquidated damages in an amount equal to their unpaid overtime wages.

  v. Plaintiffs further content that Defendant acted willfully in misclassifying them as exempt executives under the FLSA and that accordingly they are entitled to recover for a period starting three years prior to the date they opted into this litigation, or the date Mr. Morrison filed his Motion for Conditional Certification, whichever is earlier.

vi.   Connecticut Plaintiffs further contend that Defendant did not make a good faith effort to comply with the Connecticut Minimum Wage Act and that accordingly they are entitled to penalty damages in an amount equal to their unpaid overtime wages plus interest.

vii.   Massachusetts Plaintiffs further contend that they are entitled to liquidated damages in an amount equal to twice the amount of their back overtime wages due.

viii.   Plaintiffs further contend that they are entitled to an award of attorneys' fees and costs if they prevail, pursuant to the FLSA, the CMWA and the MMFWA.

## 7.  Defendant's Contentions:

Defendant contends that Plaintiffs are not entitled to recover any damages or other relief requested in Count One, Count Two, or Count Three of their Sixth Amended Complaint because each of the Plaintiffs was properly classified as "exempt" under the applicable Executive Exemption tests set forth in the FLSA, Connecticut law, and Massachusetts law.

In the alternative, and in the event that any or all of the Plaintiffs are determined to have been incorrectly classified as "exempt" and, therefore, were entitled to additional overtime wages in any workweek, Plaintiffs' request for damages should be limited because (1) any violation under the FLSA was not willful, and therefore the limitations period under the FLSA is only two years after the cause of action accrued; (2) discretionary liquidated damages should not be awarded under the FLSA or Connecticut law.

8. **Legal Issues:**

   i.   Whether or not Plaintiffs' primary duty as Assistant Store Managers was
        the performance of management duties?

   ii.  Whether or not Defendant acted in good faith in classifying Plaintiffs as
        exempt executives under the FLSA?

   iii. Whether or not Defendant acted in good faith in classifying Plaintiffs as
        exempt executives under the CMWA?

   iv.  Whether or not Defendant acted willfully in classifying Plaintiffs as
        exempt executives under the FLSA?

   v.   Whether or not this case should still proceed as a collective action for
        purposes of the FLSA claim?

   vi.  Whether or not Connecticut Public Act 15-86 applies retroactively, so that
        Plaintiffs need not prove that Defendant's actions were "arbitrary,
        unreasonable or in bad faith" in order to recover penalty damages
        under the Connecticut Minimum Wage Act, and instead imposes a
        burden upon Defendant similar to the FLSA to prove good faith in
        order to avoid such penalty damages?

9. **Voir Dire Questions (in addition to the non-case specific questions):**

   i.   How many of you believe that employees who accepted a job for a fixed
        salary are bound by that arrangement and cannot later sue for overtime if it
        turns out that their exempt classification was incorrect?  Why do you believe
        this?

ii.    Have any of you had any experiences where you were treated or

accused of treating an employee unfairly in the workplace?  Can

you describe that experience and any strong opinions or feelings

that you have formed as a result?

iii.   Have any of you ever worked in a management function in the

retail industry?  As a result have formed strong opinions about

compensation policies in the retail industry?  Have you had

occasion to act on those strongly held beliefs?

iv.    Have you had any experiences involving claims for overtime pay

either made by you or against you or your company which caused

you to form strong opinions or feelings about that topic?  Have any

of your friends or members of your family been in such a

situation? Please explain.

v.     Please describe any experience you've had in your life which has

given you exposure to the issue of overtime law and describe any

opinions you formed as a result of that experience?

vi.    How many of you feel that lawsuits are overused and are

sometimes illegitimate and sometimes involve people making

claims just to get money out of a big company? Please explain why

you feel this way including a description of any experiences

you've had in your life which have caused you to feel this way.

vii    Some people believe that overtime laws are a burden to businesses

who are trying to be profitable.  How many of you feel this way,

even a little bit, and why? Have you had an experiences which

have made you feel this way?

    viii.    Do you know anyone who has had a dispute with his or her

employer regarding unpaid compensation? If so, please explain the

circumstances.

    ix.    Do you watch any television shows with a law-related theme? If

so, which ones?

    x.    Have you or an immediate family member ever been a party to a

lawsuit? If so, please explain the circumstances.

    xi.    Do you believe that a corporation is entitled to be treated as

equally as an individual when the individual (or a group of

individuals) has filed a lawsuit against a corporation?

    xii.    Do you think you would have a tendency to award a person

damages just because a corporation might be able to afford to pay

them?

    xiii.    If you were a party involved in a lawsuit, and a potential juror had

experiences similar to yours, would you be comfortable having that

juror decide your case? Please explain.

**10. List of Witnesses:**

**A. Plaintiffs' Witnesses:** Plaintiffs will call witnesses from the following list.

Plaintiffs do not intend to call all of these witnesses.

    i.    Omar Morrison, 226 Park Avenue, East Hartford, CT  06108.  He

will testify regarding the duties that he performed while as an

assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

ii.     Carli Galasso, 2018 East Avenue, Q-6, Palmdale, CA 93550.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

iii.    Manuel Toppins, 44 Unit Street, Providence, RI 02909.  He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

iv.     James Bethune, 629 Winthrop Avenue, New Haven, CT  06511. He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

v.      Virginia Bisson, 12 Pine Street, East Hampton, MA  01027.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

vi.     William Britt, 273 Lower Hyde Park, White River Junction, VT 05001.  He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

vii.    Sandra Carnelli, 7 Briar Hill Drive, Old Lyme, CT  06371.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

viii.   Selma Cherry, 1664 State Road, Plymouth, MA  02360.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours

per week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

ix.     Eric Curtiss, 86 White Street, Manchester, CT  06042.  He will

testify regarding the duties that he performed while as an assistant

manager, that his primary duty was performance of non-

management duties, that he was scheduled for at least 50 hours per

week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

x.      Donna Dmochowski, 11 South Buckboard Lane, Marlborough, CT

06447.  She will testify regarding the duties that she performed

while as an assistant manager, that her primary duty was

performance of non-management duties, that she was scheduled

for at least 50 hours per week and worked at least 50 hours per

week and was not paid overtime premiums for hours worked in

excess of 40 each week.

xi.     Linda Dodge, 14564 SW 35th Terrace Road, Ocala, FL  34473.

She will testify regarding the duties that she performed while as an

assistant manager, that her primary duty was performance of non-

management duties, that she was scheduled for at least 50 hours

per week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

xii.    Christopher Dubriske, 454 Elm Street, Keene, NH  03431.  He will

testify regarding the duties that he performed while as an assistant

manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xiii.   Stephen Dynder, 55 Sylvan Valley Road, Meriden, CT  06451.  He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xiv.   Donna Gaudette, P.O. Box 12, Groveton, NH  03581.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xv.   Susan Gaylord, 97 Romance Lane, Newbury, VT  06051.  She will testify regarding the duties that she performed while as an assistant manager, that her primary duty was performance of non-management duties, that she was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xvi.   Wendy Hapgood, 21 Dey Street, Apt. C, Jewett City, CT  06351.
She will testify regarding the duties that she performed while as an
assistant manager, that her primary duty was performance of non-
management duties, that she was scheduled for at least 50 hours
per week and worked at least 50 hours per week and was not paid
overtime premiums for hours worked in excess of 40 each week.

xvii.   Debra Hermans, 26122 Marguerite Parkway #298, Mission Viejo,
CA  92692.  She will testify regarding the duties that she
performed while as an assistant manager, that her primary duty
was performance of non-management duties, that she was
scheduled for at least 50 hours per week and worked at least 50
hours per week and was not paid overtime premiums for hours
worked in excess of 40 each week.

xviii.  Paula Krafft, 209 Norwich Avenue, Taftville, CT  06380.  She will
testify regarding the duties that she performed while as an assistant
manager, that her primary duty was performance of non-
management duties, that she was scheduled for at least 50 hours
per week and worked at least 50 hours per week and was not paid
overtime premiums for hours worked in excess of 40 each week.

xix.   Norman Langevin, 170 Oak Street, Indian Orchard, MA  01151.
He will testify regarding the duties that he performed while as an
assistant manager, that he primary duty was performance of non-
management duties, that he was scheduled for at least 50 hours per

13

week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

xx.     Richard Main, 127 Collincote Street, Stoneham, MA 02180.  He

will testify regarding the duties that he performed while as an

assistant manager, that his primary duty was performance of non-

management duties, that he was scheduled for at least 50 hours per

week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

xxi.    Jeremy Mason, 8 Greenland Street, Windsor Locks, CT  06096.

He will testify regarding the duties that he performed while as an

assistant manager, that his primary duty was performance of non-

management duties, that he was scheduled for at least 50 hours per

week and worked at least 50 hours per week and was not paid

overtime premiums for hours worked in excess of 40 each week.

xxii.   Kristen Maturo, 409 East Street, 2nd Floor, New Britain, CT

06051.  She will testify regarding the duties that she performed

while as an assistant manager, that her primary duty was

performance of non-management duties, that she was scheduled

for at least 50 hours per week and worked at least 50 hours per

week and was not paid overtime premiums for hours worked in

excess of 40 each week.

xxiii.  Mohammed Rashid, 43 Burnham Street, East Hartford, CT 06108.

He will testify regarding the duties that he performed while as an

assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xxiv.  Robert Ryan, 19 Meredith Street, Springfield, MA  01108.  He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xxv.  Pete Vella, 29 Carriage Path N, Milford, CT  06460.  He will testify regarding the duties that he performed while as an assistant manager, that his primary duty was performance of non-management duties, that he was scheduled for at least 50 hours per week and worked at least 50 hours per week and was not paid overtime premiums for hours worked in excess of 40 each week.

xxvi.  Richard T. Portno, c/o Defendant.  Mr. Portno is expected to testify consistent with his deposition, including but not limited to the following topics: the extent to which Defendant attempted to comply with state and federal overtime laws, if at all.

xxvii.  Donna McLeod, c/o Defendant.  Ms. McLeod will testify consistent with her deposition, including but not limited to the following topics: the extent to which Assistant Managers are

trained to follow detailed corporate policies and procedures in the performance of their jobs.

xxviii. Royal Green, Jr., c/o Defendant. Mr. Green is expected to testify consistent with his deposition, including but not limited to the following topics: the compensation and responsibilities of store managers, assistant managers and area supervisors, the use of position descriptions and company policies and procedures, time worked and the use of attendance sheets. Green will also testify about the limited efforts by Defendant to learn and comply with the overtime laws with regard to the plaintiffs.

xxix. Raymond D. Conforti, c/o Defendant. Mr. Conforti is expected to testify consistent with his deposition, including but not limited to the following topics: the limited efforts, if any, by Defendant to learn and comply with overtime laws as to the plaintiffs.

xxx. Glen M. Boulay, c/o Defendant. Mr. Boulay is expected to testify consistent with his deposition, including but not limited to the following topics: the role played by District Managers and Store Managers in the supervision of Assistant Managers, including store visits, to-do lists, inspections, adherence to corporate policies, etc.

Plaintiffs reserve the right to call any of Defendant's witnesses, and call rebuttal witnesses, and to supplement this witness list with reasonable notice.

**B.** .**Defendant's witnesses:** Defendant will call witnesses from the following list in its case-in-chief. Defendant does not necessarily intend to call all of these witnesses.

    i.    Omar Morrison, c/o Plaintiffs' counsel.  Morrison is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

    ii.    Carli Galasso, c/o Plaintiffs' counsel.  Galasso is expected to testify primarily about her job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning her wages and hours as an Assistant Store Manager, and her motivation for participating in this lawsuit.

    iii.    Manuel Toppins, c/o Plaintiffs' counsel.  Toppins is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and

hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

iv.    Virginia Bisson, c/o Plaintiffs' counsel.  Bisson is expected to testify primarily about her job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning her wages and hours as an Assistant Store Manager, and her motivation for participating in this lawsuit.

v.     William Britt, c/o Plaintiffs' counsel.  Britt is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

vi.    Sandra Carnelli c/o Plaintiffs' counsel. Carnelli is expected to testify primarily about her job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning her wages and hours as an Assistant Store Manager, and her motivation for participating in this lawsuit.

vii.   Selma Cherry, c/o Plaintiffs' counsel.  Cherry is expected to testify primarily about her job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning her wages and hours as an Assistant Store Manager, and her motivation for participating in this lawsuit.

viii.  Eric Curtiss, c/o Plaintiffs' counsel.  Curtiss is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

ix.   Linda Dodge, c/o Plaintiffs' counsel.  Dodge is expected to testify primarily about her job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning her wages and hours as an Assistant Store Manager, and her motivation for participating in this lawsuit.

x.   Stephen Dynder, c/o Plaintiffs' counsel.  Dynder is expected to testify primarily about his job duties and performance as an

Assistant Store Manager (individually and relative to other

positions), Ocean State's expectations about the job duties of an

Assistant Store Manager, discussions concerning his wages and

hours as an Assistant Store Manager, and his motivation for

participating in this lawsuit.

xi.     Susan Gaylord, c/o Plaintiffs' counsel.  Gaylord is expected to

testify primarily about her job duties and performance as an

Assistant Store Manager (individually and relative to other

positions), Ocean State's expectations about the job duties of an

Assistant Store Manager, discussions concerning her wages and

hours as an Assistant Store Manager, and her motivation for

participating in this lawsuit.

xii.    Paula Krafft c/o Plaintiffs' counsel.  Krafft is expected to testify

primarily about her job duties and performance as an Assistant

Store Manager (individually and relative to other positions), Ocean

State's expectations about the job duties of an Assistant Store

Manager, discussions concerning her wages and hours as an

Assistant Store Manager, and her motivation for participating in

this lawsuit.

xiii.   Norman Langevin, c/o Plaintiffs' counsel.  Langevin is expected to

testify primarily about his job duties and performance as an

Assistant Store Manager (individually and relative to other

positions), Ocean State's expectations about the job duties of an

Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

xiv.   Richard Main, c/o Plaintiffs' counsel. Main is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

xv.   Peter Vella, c/o Plaintiffs' counsel.  Vella is expected to testify primarily about his job duties and performance as an Assistant Store Manager (individually and relative to other positions), Ocean State's expectations about the job duties of an Assistant Store Manager, discussions concerning his wages and hours as an Assistant Store Manager, and his motivation for participating in this lawsuit.

xvi.   Linda Silvia, c/o Defendant's counsel.  Silvia is expected to testify primarily about the job duties and performance of an Assistant Store Manager, and Ocean State's expectations about the job duties of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store

21

Manager", meaning Assistant Store Managers generally, this testimony is objectionable. This case is about 25 specific assistant store managers that have joined this action. Testimony about the position generally is irrelevant. If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xvii.   Darren Lynn, c/o Defendant's counsel. Lynn is expected to testify primarily about the job duties and performance of an Assistant Store Manager, and Ocean State's expectations about the job duties of an Assistant Store Manager.

Objection: To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store Manager", meaning Assistant Store Managers generally, this testimony is objectionable. This case is about 25 specific assistant store managers that have joined this action. Testimony about the position generally is irrelevant. If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xviii.  Elsa Westgate, c/o Defendant's counsel. Westgate is expected to testify primarily about the job duties and performance of an Assistant Store Manager, and Ocean State's expectations about the job duties of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store Manager", meaning Assistant Store Managers generally, this testimony is objectionable.  This case is about 25 specific assistant store managers that have joined this action.  Testimony about the position generally is irrelevant.  If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xix.   David Roach, c/o Defendant's Counsel. Roach is expected to testify primarily about the job duties and performance of an Assistant Store Manager, and Ocean State's expectations about the job duties of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store Manager", meaning Assistant Store Managers generally, this testimony is objectionable.  This case is about 25 specific assistant store managers that have joined this action.  Testimony about the position generally is irrelevant.  If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xx.   Linda Bowen, c/o Defendant's counsel.  Bowen is expected to
testify primarily about the job duties and performance of an
Assistant Store Manager, and Ocean State's expectations about the
job duties of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify
about the job duties and performance of "an Assistant Store
Manager", meaning Assistant Store Managers generally, this
testimony is objectionable.  This case is about 25 specific assistant
store managers that have joined this action.  Testimony about the
position generally is irrelevant.  If this witness has personal
knowledge of the duties performed by the 25 plaintiffs in this case
there will be no objection to that testimony.

xxi.   Eric Cartier, c/o Defendant's counsel.  Cartier is expected to testify
primarily about the job duties and performance of an Assistant
Store Manager, and Ocean State's expectations about the job duties
of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify
about the job duties and performance of "an Assistant Store
Manager", meaning Assistant Store Managers generally, this
testimony is objectionable.  This case is about 25 specific assistant
store managers that have joined this action.  Testimony about the
position generally is irrelevant.  If this witness has personal

knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xxii.  Marc Perlman, c/o Defendant's counsel. Perlman is expected to testify primarily about the nature of Ocean State's business and business model, and Ocean State's treatment of its management team.

xxiii.  Richard Portno, c/o Defendant's counsel. Portno is expected to testify primarily about the nature of Ocean State's in-store management team, Ocean State's expectations about the job duties and exemption classification of an Assistant Store Manager, Ocean State's treatment of its management team, store budgeting issues, and communications about wage classification issues.

xxiv.  Donna McLeod, c/o Defendant's counsel.  McLeod is expected to testify primarily about Ocean State's expectations about the job duties and exemption classification of an Assistant Store Manager, and the training of Assistant Store Managers.

xxv.  Christine Taylor, c/o Defendant's counsel. Taylor is expected to testify primarily about Ocean State's expectations about the job duties of an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store Manager", meaning Assistant Store Managers generally, this testimony is objectionable.  This case is about 25 specific assistant

store managers that have joined this action.  Testimony about the position generally is irrelevant.  If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xxvi.  Roger LeFleur, c/o Defendant's counsel.  LeFleur is expected to testify primarily about Ocean State's expectations about the job duties of an Assistant Store Manager, and the job duties and performance of Toppins as an Assistant Store Manager.

Objection:  To the extent that this witness will be called to testify about the job duties and performance of "an Assistant Store Manager", meaning Assistant Store Managers generally, this testimony is objectionable.  This case is about 25 specific assistant store managers that have joined this action.  Testimony about the position generally is irrelevant.  If this witness has personal knowledge of the duties performed by the 25 plaintiffs in this case there will be no objection to that testimony.

xxvii.  Jim Rowley, c/o Defendant's counsel. Rowley is expected to testify primarily about Ocean State's expectations about the job duties of an Assistant Store Manager, and the job duties and performance of Morrison as an Assistant Store Manager.

xxviii.  Ed Van Allen, c/o Defendant's counsel. Van Allen is expected to testify primarily about Ocean State's expectations about the job

duties of an Assistant Store Manager, and his interactions with

Assistant Store Managers as part of the in-store management team.

Defendant reserves the right to call any of Plaintiffs' witnesses, and call rebuttal witnesses, and to supplement this witness list with reasonable notice.

**11. Exhibits:**

**Note:  The parties hereby list exhibits that they intend to use at trial in their respective cases-in-chief, but reserve the right to add or remove exhibits from this list going forward as becomes reasonably appropriate. Further, the parties reserve the right to object to these exhibits pursuant to the Trial Memorandum Order (Doc. #268) and will do so by April 15, 2016 (three days prior to jury selection).**

**Plaintiff's Exhibits:**

1.  Job Description for the positions of Store Manager / Assistant Store Manager (D00001-3)

2.  Job Description for the position of Assistant Manager (D0004-5).

3.  Job Description for Area Supervisor.

4.  Ocean State Job Lot Management Training and Development Guide

5.  Time Records of Omar Morrison.

6.  Payroll Records for Omar Morrison.

7.  Time Records for James Bethune.

8.  Payroll Records for James Bethune.

9.  Time Records for Virginia Bisson.

10. Payroll Records for Virginia Bisson.

11. Time Records for William Britt.

12. Payroll Records for William Britt.

13. Time Records for Sandra Carnelli.

14. Payroll Records for Sandra Carnelli.

15. Time Records for Selma Cherry.

16. Payroll Records for Selma Cherry.

17. Time Records for Eric Curtiss.

18. Payroll Records for Eric Curtiss.

19. Time Records for Donna Dmochowski.

20. Payroll Records for Donna Dmochowski.

21. Time Records for Linda Dodge.

22. Payroll Records for Linda Dodge.

23. Time Records for Christopher Dubriske.

24. Payroll Records for Christopher Dubriske.

25. Time Records for Stephen Dynder.

26. Payroll Records for Stephen Dynder.

27. Time Records for Carli Galasso.

28. Payroll Records for Carli Galasso.

29. Time Records for Donna Gaudette.

30. Payroll Records for Donna Gaudette.

31. Time Records for Susan Gaylord.

32. Payroll Records for Susan Gaylord.

33. Time Records for Wendy Hapgood.

34. Payroll Records for Wendy Hapgood.

35. Time Records for Debra Hermans.

36. Payroll Records for Debra Hermans.

37. Time Records for Paula Krafft.

38. Payroll Records for Paula Krafft.

39. Time Records for Normand Langevin.

40. Payroll Records for Norman Langevin.

41. Time Records for Richard Main.

42. Payroll Records for Richard Main.

43. Time Records for Jeremy Mason.

44. Payroll Records for Jeremy Mason.

45. Time Records for Kristen Maturo.

46. Payroll Records for Kristen Maturo.

47. Time Records for Mohammed Rashid.

48. Payroll Records for Mohammed Rashid.

49. Time Records for Robert Ryan.

50. Payroll Records for Robert Ryan.

51. Time Records for Manuel Toppins

52. Payroll Records for Manuel Toppins.

53. Time Records for Pete Vella.

54. Payroll Records for Pete Vella.

55. August 19, 1994 memo (CPP #16) re Management Attendance (Doc. 19.5).

56. Photo of interior of Ocean State Job Lot store with female shopper.

57. Photo of interior of Ocean State Job Lot store (shelf on left).

58. Photo of interior of Ocean State Job Lot store (service desk and pet food signs).

59. Photo of U-boat.

**Defendant's Exhibits:**

Defendant may introduce the following exhibits in its case-in-chief:

1.  Assistant Store Manager job description (Def. Gen. Depo. Ex. D)

2.  Operations Assistant Store Manager job description (Def. Gen. Depo. Ex. E)

3.  Bisson answers to first set of interrogatories

4.  Bisson answers to second set of interrogatories

5.  Documents prepared and/or signed by Bisson (Bisson Depo. Ex. B)

6.  Documents prepared and/or signed by Bisson (Bisson Depo. Ex. C)

7.  Documents prepared and/or signed by Bisson (Bisson Depo. Ex. D)

8.  Documents prepared and/or signed by Bisson (Bisson Depo. Ex. E)

9.  Documents prepared and/or signed by Bisson (Bisson Depo. Ex. F)

10. Documents prepared and/or signed by Bisson (Bisson Depo. Ex. G)

11. Bisson 2006 performance evaluation

12. Bisson 2007 performance evaluation

13. Bisson 2008 performance evaluation (Bisson Depo. Ex. K)

14. Bisson 2008 performance evaluation (Bisson Depo. Ex. L)

15. Bisson 2009 performance evaluation

16. Britt answers to first set of interrogatories

17. Britt 2007 performance evaluation (Britt Depo. Ex. B)

18. Britt 2007 performance evaluation (Britt Depo. Ex. C)

19. Britt 2008 performance evaluation

20. Documents prepared and/or signed by Britt (Britt Depo. Ex. E)

21. Documents prepared and/or signed by Britt (Britt Depo. Ex. F)

22. Documents prepared and/or signed by Britt (Britt Depo. Ex. G)

23. Documents prepared and/or signed by Britt (Britt Depo. Ex. H)

24. Documents prepared and/or signed by Britt (Britt Depo. Ex. I)

25. Documents prepared and/or signed by Britt (Britt Depo. Ex. J)

26. Carnelli answers to first set of interrogatories

27. Carnelli answers to second set of interrogatories

28. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. B)

29. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. C)

30. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. D)

31. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. E)

32. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. F)

33. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. G)

34. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. H)

35. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. I)

36. Documents prepared and/or signed by Carnelli (Carnelli Depo. Ex. J)

37. Carnelli 2006 performance evaluation (Carnelli Depo. Ex. K)

38. Carnelli 2006 performance evaluation (Carnelli Depo. Ex. L)

39. Carnelli 2007 performance evaluation (Carnelli Depo. Ex. M)

40. Carnelli 2007 performance evaluation (Carnelli Depo. Ex. N)

41. Carnelli 2008 performance evaluation

42. Cherry answers to first set of interrogatories

43. Cherry answers to second set of interrogatories

44. Cherry resume

45. Documents prepared and/or signed by Cherry (Cherry Depo. Ex. D)

46. Documents prepared and/or signed by Cherry (Cherry Depo. Ex. E)

47. Documents prepared and/or signed by Cherry (Cherry Depo. Ex. F)

48. Documents prepared and/or signed by Cherry (Cherry Depo. Ex. G)

49. Documents prepared and/or signed by Cherry (Cherry Depo. Ex. H)

50. Cherry 2005 performance evaluation

51. Cherry 2006 performance evaluation (Cherry Depo. Ex. J)

52. Cherry 2006 performance evaluation (Cherry Depo. Ex. K)

53. Cherry 2007 performance evaluation

54. Curtiss answers to first set of interrogatories

55. Curtiss answers to second set of interrogatories

56. Curtiss resume

57. Documents prepared and/or signed by Curtiss (Curtiss Depo. Ex. D)

58. Documents prepared and/or signed by Curtiss (Curtiss Depo. Ex. E)

59. Documents prepared and/or signed by Curtiss (Curtiss Depo. Ex. F)

60. Documents prepared and/or signed by Curtiss (Curtiss Depo. Ex. G)

61. Curtiss 2006 performance evaluation

62. Curtiss 2007 performance evaluation (Curtiss Depo. Ex. I)

63. Curtiss 2007 performance evaluation (Curtiss Depo. Ex. J)

64. Curtiss final pay document (Curtiss Depo. Ex. K)

65. Dodge answers to first set of interrogatories

66. Dodge answers to second set of interrogatories

67. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. B)

68. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. C)

69. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. D)

70. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. E)

71. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. F)

72. Documents prepared and/or signed by Dodge (Dodge Depo. Ex. G)

73. Dodge final pay document (Dodge Depo. Ex. I)

74. Dodge 2008 performance evaluation

75. Dynder answers to first set of interrogatories

76. Dynder answers to second set of interrogatories

77. Dynder resume

78. Documents prepared and/or signed by Dynder (Dynder Depo. Ex. C)

79. Documents prepared and/or signed by Dynder (Dynder Depo. Ex. D)

80. Documents prepared and/or signed by Dynder (Dynder Depo. Ex. K)

81. Documents prepared and/or signed by Dynder (Dynder Depo. Ex. L)

82. Dynder final pay document (Dynder Depo. Ex. E)

83. Dynder 2002 performance evaluation

84. Dynder 2007 performance evaluation (Dynder Depo. Ex. G)

85. Dynder 2007 performance evaluation (Dynder Depo. Ex. H)

86. Dynder 2008 performance evaluation

87. Dynder discussion report (Dynder Depo. Ex. J)

88. Galasso answers to first set of interrogatories

89. Galasso answers to second set of interrogatories

90. Galasso resume

91. Galasso letter (Galasso Depo. Ex. C)

92. Documents prepared and/or signed by Galasso (Galasso Depo. Ex. D)

93. Galasso 2008 performance evaluation (Galasso Depo. Ex. E)

94. Galasso 2008 performance evaluation (Galasso Depo. Ex. F)

95. Gaylord resume

96. Gaylord answers to first set of interrogatories

97. Gaylord 2007 performance evaluation (Gaylord Depo. Ex. C)

98. Gaylord 2007 performance evaluation (Gaylord Depo. Ex. D)

99. Gaylord 2008 performance evaluations (Gaylord Depo. Ex. E)

100.    Gaylord 2008 performance (Gaylord Depo. Ex. F)

101.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. G)

102.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. H)

103.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. I)

104.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. J)

105.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. K)

106.    Documents prepared and/or signed by Gaylord (Gaylord Depo. Ex. L)

107.    Documents prepared and/or signed by Gaylord (Gaylord (Depo. Ex. M)

108.    Documents prepared and/or signed by Krafft (Krafft Depo. Ex. A)

109.    Krafft answers to first set of interrogatories

110.    Krafft 2007 performance evaluation

111.    Krafft performance notice (Krafft Depo. Ex. E)

112.    Documents prepared and/or signed by Krafft (Krafft Depo. Ex. F)

113.    Documents prepared and/or signed by Krafft

114.    Langevin answers to first set of interrogatories

115.    Langevin answers to second set of interrogatories

116.    Langevin resume

117.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. C)

118.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. D)

119.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. E)

120.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. F)

121.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. H)

122.    Documents prepared and/or signed by Langevin (Langevin Depo. Ex. I)

123.    Langevin 2006 Performance Evaluation

124.    Langevin 2007 Performance Evaluation (Langevin Depo. Ex. K)

125.    Langevin 2007 Performance Evaluation (Langevin Depo. Ex. L)

126.    Main answers to first set of interrogatories

127.    Main answers to second set of interrogatories

128.    Main final pay document (Main Depo. Ex. B)

129.    Main resume

130.    Documents prepared and/or signed by Main (Main Depo. Ex. F)

131.    Documents prepared and/or signed by Main (Main Depo. Ex. G)

132.    Documents prepared and/or signed by Main (Main Depo. Ex. H)

133.    Documents prepared and/or signed by Main (Main Depo. Ex. I)

134.    Main 2007 performance evaluation

135.    Main 2008 performance evaluation

136.    Morrison employment application

137.    Documents prepared and/or signed by Morrison (Morrison Depo. Ex. B)

138.    Documents prepared and/or signed by Morrison (Morrison Depo. Ex. C)

139.    Documents prepared and/or signed by Morrison (Morrison Depo. Ex. D)

140.    Documents prepared and/or signed by Morrison (Morrison Depo. Ex. G)

141.    Documents prepared and/or signed by Morrison (Morrison Depo. Ex. H)

142.    Morrison 2009 performance evaluation

143.    Morrison notes (Morrison Depo. Ex. K)

144.    Morrison calendar/notes (Morrison Depo. Ex. L)

145.    Morrison answers to first set of interrogatories

146.    Morrison answers to second set of interrogatories

147.    Morrison resume

148.    Morrison declaration

149.    Toppins answers to first set of interrogatories

150.    Toppins answers to second set of interrogatories

151.    Documents prepared and/or signed by Toppins (Toppins Depo. Ex. B)

152.    Documents prepared and/or signed by Toppins (Toppins Depo. Ex. C)

153.    Documents prepared and/or signed by Toppins (Toppins Depo. Ex. D)

154.    Documents prepared and/or signed by Toppins (Toppins Depo. Ex. E)

155.    Documents prepared and/or signed by Toppins (Toppins Depo. Ex. F)

156.    Toppins 2006 performance evaluation

157.    Toppins 2007 performance evaluation (Toppins Depo. Ex. I)

158.    Toppins 2007 performance evaluation (Toppins Depo. Ex. J)

159.    Toppins 2008 performance evaluation

160.    Vella answers to first set of interrogatories

161.    Vella answers to second set of interrogatories

162.    Vella resume

163.    Documents prepared and/or signed by Vella (Vella Depo. Ex. D)

164.    Documents prepared and/or signed by Vella (Vella Depo. Ex. E)

165.    Documents prepared and/or signed by Vella (Vella Depo. Ex. F)

166.    Documents prepared and/or signed by Vella (Vella Depo. Ex. G)

167.    Documents prepared and/or signed by Vella (Vella Depo. Ex. H)

168.    Vella 2006 performance evaluation

169.    Vella 2007 performance evaluation (Vella Depo. Ex. K)

170.    Vella 2007 performance evaluation (Vella Depo. Ex. L)

171.    Vella 2008 performance evaluation

**12. Deposition Testimony:**

The parties do not intend to offer testimony via deposition transcripts in their

cases-in chief.

**13. Requests for Jury Instructions:**

See Attachment A.

**14. Anticipated Evidentiary Problems:**

    a.   The parties have not agreed as to whether or not the federal FLSA

           claim dates back from the date of each opt-in consent form or from the

           date that Plaintiffs filed their motion for conditional certification on

           November 25, 2009.  The parties propose that the Court resolve this

           issue, which asks whether or not the claims of the class should be

           equitably tolled, prior to trial.

    b.   Plaintiff intends to object to the testimony of any assistant manager

           who is not in the class unless they have personal knowledge of the

           duties performed by the 25 plaintiffs.  Plaintiff will object to any

           testimony by non-party assistant managers or other witnesses about

           their experiences as assistant managers.

**15. Proposed Findings and Conclusions:**

    Not applicable because this is a jury trial.

**16. Trial Time:**

    Following a telephone conference with the parties, the Court has set aside the

weeks of April 18, 2016, April 25, 2016, and May 2, 2016 for trial, inclusive

of opening statements and closing arguments.

**17. Courtroom Technology:**

Ocean State may require the use of courtroom technology during trial. If such technology will be required, Ocean State will submit a request for such technology on the Court's Request for Courtroom Technology Form at least two weeks prior to the scheduled trial date.

**18. Further Proceedings:**

The parties believe that there should be a hearing regarding motions *in limine* prior to the commencement of trial.

**19. Election for Trial by Magistrate:**

The parties do not agree to try this case before a United States Magistrate Judge.

Respectfully submitted,

Plaintiffs, Omar Morrison, Carli Galasso,
Manuel Toppins, Individually and on Behalf
of Others Similarly Situated


By: _/s/ Richard E. Hayber_____
      Richard E. Hayber, Esq.
      The Hayber Law Firm, LLC
      Fed No.: ct11629
      221 Main Street, Suite 502
      Hartford, CT 06106
      Phone: (860) 522-8888
      Fax:    (860) 218-9555
      rhayber@hayberlawfirm.com



Defendant Ocean State Jobbers, Inc.

By:     _Michael C. Schmidt_____
      Michael C. Schmidt, Esq.
      Cozen O'Connor
      277 Park Avenue
      New York, New York 10172
      Phone: (212) 453-3937
      Fax:    (866) 736-3682
      mschmidt@cozen.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on December 18, 2015, a copy of this Joint Trial Memorandum was filed electronically [and service made by mail to anyone unable to accept electronic filing].  Notice of this filing will be sent by email to all parties by operation of the Courts electronic filing system [or by mail for anyone unable to accept electronic filing].  Parties may access this filing through the Courts system.

<u>*/s/ Richard E. Hayber*</u>
Richard E. Hayber

<u>**ATTACHMENT A**</u>

**13.** <u>**Requests for Jury Instructions (other than non-case specific instructions).**</u>

## 1. CORPORATE PARTY

In this case, the defendant Ocean State Jobbers, Inc. is a corporation. The mere fact that one of the parties is a corporation does not mean it is entitled to any lesser or greater consideration by you. All litigants are equal before the law, and corporations, big or small, are entitled to the same fair consideration as you would give any other individual party. A corporation is a creation of state law and acts through its agents – that is, its employees, officers, or authorized representatives.[1]

---

[1]     Based upon *Perkins v. Southern New England Tel. Co.,* 2011 WL 5077837 (D. Conn. 10/21/2011) ("*Perkins*").

**2a.      BURDEN OF PROOF (DEFENDANT'S PROPOSED CHARGE)**

In a civil case such as this, the plaintiffs have the burden of proving each element of their claims by a preponderance of the evidence. The parties have stipulated, that is, agreed, that the plaintiffs meet this burden. The defendant has raised a special defense to each claim – that is, the federal claim and the state claims – that would exempt the plaintiffs from being entitled to overtime pay. The defendant has the burden of proving that special defense by a preponderance of the evidence. In determining whether a party has satisfied its burden, bear in mind that you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them.

To prove a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. Therefore, a party who has the burden must prove more than simple equality of evidence. If, after considering all of the evidence and testimony on the issue of exemption, you find that both sides of the issue are equally probable, then the defendant has failed to sustain its burden, and you must return a verdict for the plaintiffs.

However, when the burden is a preponderance of the evidence, the party need prove no more than a preponderance. As I indicated, a preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. So long as you find that the scales tip, however slightly, in favor of the defendant on the exemption under the FLSA, Connecticut or Massachusetts law, then that exemption will have been proven by a preponderance of the evidence, and you must return a verdict for the defendant.

You may have heard the phrase "proof beyond a reasonable doubt" in another setting. That standard is the proper standard of proof in a criminal trial. However, the case before you is a civil case, and the "reasonable doubt" standard does not apply to a civil case. Therefore, you should not consider the criminal burden of proof in this case.

Throughout these instructions to you, I may use the word "prove" from time to time, with reference to the burden of proof. I may also speak of your "finding" various facts as to elements of the exemption. You are to understand my use of the word "prove" to mean "prove by a preponderance of the evidence," even if I do not always repeat all these exact words. Similarly, when I say that you must "find" a fact, you must find that fact to have been proven by a preponderance of the evidence, even if I simply use the word "find." [2]

---

[2]  Based upon *Perkins*.

**2b.     BURDEN OF PROOF (PLAINTIFFS' PROPOSED CHARGE)**

In a civil case such as this, the parties have the burden of proving each element of their case by a preponderance of the evidence.  In this case, the parties have stipulated, or agreed, that the plaintiffs have established the elements of their claims.  You must therefore treat these facts as having been proven for purposes of this case.  However, Ocean State has raised a defense to each of the Plaintiffs' claims that would exempt the Plaintiffs from being entitled to overtime pay.  It is Ocean State's burden to prove their exemption defense by a preponderance of the evidence.

In determining whether a party has satisfied its burden, bear in mind that you may consider the testimony of all of the witnesses, regardless of who may have called them, and all exhibits entered into evidence, regardless of who may have introduced them.

To prove a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. Therefore, a party who has the burden must prove more than simple equality of evidence. If, after considering all of the evidence and testimony on the issue of exemption, you find either that ocean State has failed to prove by a preponderance of the evidence that Plaintiffs plainly and unmistakably fall within the coverage of the exemption under the FLSA, Connecticut or Massachusetts law, or that both sides of the issue are equally probable, then the defendant has failed to sustain its burden, and you must return a verdict for the plaintiffs.

However, when the burden is a preponderance of the evidence, the party need prove no more than a preponderance. As I indicated, a preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. So long as you find that the scales tip, however slightly, in favor of the defendant on the issue of whether or not the Plaintiffs plainly and unmistakably fall within the exemption under the FLSA, Connecticut or Massachusetts law, then that exemption will have been proven by a preponderance of the evidence, and you must return a verdict for the defendant.

You may have heard the phrase "proof beyond a reasonable doubt" in another setting. That standard is the proper standard of proof in a criminal trial. However, the case before you is a civil case, and the "reasonable doubt" standard does not apply to a civil case. Therefore, you should not consider the criminal burden of proof in this case.

Throughout these instructions to you, I may use the word "prove" from time to time, with reference to the burden of proof. I may also speak of your "finding" various facts as to elements of the exemption. You are to understand my use of the word "prove" to mean "prove by a preponderance of the evidence," even if I do not always repeat all these exact words. Similarly, when I say that you must "find" a fact, you must find that fact to have been proven by a preponderance of the evidence, even if I simply use the word "find."[3]

---

[3]  *Perkins v. SNET*, Case No. 3:07-cv-00967 (JCH); *Graves v. Chubb & Son*, Case No. 3:12-cv-00568 (JCH); *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Ruggeri v. Boeringer Ingelheim Pharmaceuticals, Inc.*, 585 F.Supp.2d 254, 261 (D.Conn. 2008) (citing *Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).

### 3.     NATURE OF THE CASE

This case arises under the Fair Labor Standards Act (the FLSA), and Connecticut and Massachusetts state wage and hour laws. The FLSA and Connecticut and Massachusetts state laws require employers to pay employees overtime compensation for working more than 40 hours per week unless one of the legal exemptions applies. Each plaintiff in this case claims that Ocean State did not pay him or her for overtime worked, as required by the FLSA, and certain plaintiffs claim that they were not paid for overtime worked under Connecticut or Massachusetts law. Plaintiffs claim entitlement to their back overtime wages, as well as liquidated damages and penalty damages.

Ocean State maintains that each plaintiff was covered by the exemption and was not eligible for overtime pay under the applicable federal or state laws.

For purposes of the federal FLSA claims, certain of the plaintiffs – Omar Morrison, Carli Galasso, and Manuel Toppins – bring this case as a collective action. A collective action allows one or more employees to pursue an action in a representative capacity on behalf of others who have joined the case and may have similar claims. This procedure enables the Court and you, as the jury, to resolve common factual and legal questions collectively on the basis of evidence that is representative of the entire group of Assistant Store Managers who seek overtime in this case. This means that, for the federal FLSA claims, these three plaintiffs are acting on behalf of themselves, and also on behalf of a group of individuals who claim to be similarly situated to those plaintiffs.

Ocean State contends that the three representative plaintiffs are not representative of other individuals and are not entitled to overtime because they are covered by the exemption to the overtime requirement. The representative plaintiffs claim that Ocean State has improperly denied them overtime by incorrectly classifying their jobs as exempt. In this case, you, as the jury, must determine whether Ocean State has proved its defense that the three representative plaintiffs are not entitled to overtime compensation under federal or state law because they are covered by the exemption [4]

---

[4]      Based upon *Perkins.*

### 4.      FEDERAL LAW CLAIMS

One of the claims before you is based on a federal law known as the Fair Labor Standards Act, or the FLSA. This statute provides in part that:

> "[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Thus, the FLSA prohibits employees from working more than 40 hours in a work week, unless the employee is paid compensation for hours that exceed 40 hours, at a rate that is at least one and one-half times the regular rate at which the employee is paid. However, an employer is not required to pay overtime under the FLSA to "any employee employed in a bona fide executive . . . position." ("Bona fide" is a Latin phrase meaning "in good faith.").[5]

---

[5]      Based upon *Perkins*.

5.        **CONNECTICUT LAW CLAIMS**

In addition, some of the plaintiffs also assert a claim under the Connecticut General Statues §31-76c.

Section 31-76c provides that:

"No employer . . . shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Connecticut General Statues §31-58 defines an "employee" as "any individual employed or permitted to work by an employer," but does not include "an individual employed in a bona fide executive . . . capacity."[6]

---

[6]  Connecticut General Statures Section 31-58 and 31-76c

6.      **MASSACHUSETTS LAW CLAIMS**

Some of the plaintiffs worked in Massachusetts, and thus assert claims under Massachusetts General Laws Chapter 151, Section 1A.  This law provides in part: "No employer . . . shall employ any of his employees . . . for a work week longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one half times the regular rate at which he is employed."  This section does not apply to someone employed as a bona fide executive.[7]

---

[7]  Massachusetts General Laws Chapter 151, Section 1A.

**7.      PURPOSE OF THE LAW (PLAINTIFFS' PROPOSED CHARGE)**

The purpose of the Fair Labor Standards Act and the state law is twofold: first, to protect workers from substandard wages and oppressive working hours by establishing minimum standards of living necessary for the health, efficiency, and general well-being of workers, and second, to protect competition in the marketplace by eliminating any competitive advantage enjoyed by companies that produce goods or services under substandard working conditions. [8]

**Defendant objects to the inclusion of this charge.**

---

[8] *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981)

*Perkins v. SNET*, Case No. 3:07-CV-00967 (JCH), Document 568

**8.      PRESUMPTION OF OVERTIME (PLAINTIFFS' PROPOSED CHARGE)**

Both federal and state law contain a presumption that an employee is entitled to be paid overtime compensation of one and one half times their regular rate for all hours worked over forty hours in a given week.  By presumption, I mean that it is not the plaintiffs' responsibility to prove that they are entitled to overtime: you must assume that is the case.  Instead, it is Ocean State's burden to overcome the presumption that employees are not exempt, and to prove that the plaintiffs qualify for a category that exempts them from overtime.

You should consider the exemptions from overtime that Ocean State asserts as narrow exemptions from the presumption that plaintiffs are entitled to overtime compensation.  That is, these exemptions are limited to employment positions which plainly and unmistakably come within the terms and spirit of the federal and state law.  If you find that Ocean State has not proven that the plaintiffs fall within the specific terms of the exemption as I describe them, you must find that plaintiffs are entitled to overtime compensation.  If, however, you find that Ocean State has overcome this presumption and proven that the plaintiffs fall within the specific terms of the exemption as I describe them, you must find that the plaintiffs are not entitled to overtime compensation.

This presumption applies even where an employee receives a salary, as plaintiffs do in this case, and even if you consider their salary to be a "high" salary.  Similarly, the presumption applies regardless of the employee's job title.  Further, an employee may not waive his or her right to overtime compensation.  Even if you think that an employee understood that he or she would not receive overtime, he or she must still be paid overtime wages for working more than forty hours per week if he or she is not exempt.

Let me now describe the elements of the FLSA and State law claims.[9]

**Defendant objects to the inclusion of this charge.**

---

[9] *Perkins v. SNET*, Case No. 3:07-CV-00967 (JCH), Document 568

*Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)

*Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002)

9.    **ELEMENTS OF THE CLAIMS**

A.  <u>FLSA</u>

Under the federal FLSA, the plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

First, that plaintiffs were employees of the defendant;

Second, that plaintiffs were employees engaged in commerce or the production of goods for commerce (or employed by an enterprise engaged in commerce or in the production of goods for commerce);

Third, that plaintiffs worked in excess of forty hours per week on at least one occasion; and

Fourth, that the defendant did not pay the plaintiffs overtime compensation.

B.  <u>Connecticut and Massachusetts Law</u>

Under Connecticut and Massachusetts law, the plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

First, that Ocean State is an employer covered by Connecticut law;

Second, that the plaintiffs worked in excess of forty hours per week on at least one occasion; and

Third, that the plaintiffs did not receive overtime compensation.

C.  <u>Stipulation</u>

In this case, the parties have stipulated, or agreed, that the plaintiffs have established the four elements for the FLSA claim, and the elements of the Connecticut and Massachusetts law claims. You must therefore treat these facts as having been proven for purposes of this case.[10]

---

[10]      Based upon *Perkins*.

**10a.    EXEMPTION GENERALLY (DEFENDANT'S PROPOSED CHARGE)**

However, although the parties agree that the plaintiffs can prove the elements of their claims as I just described (see page ___) under the FLSA and Connecticut and Massachusetts law, Ocean State contends that the plaintiffs are not entitled to receive overtime compensation because of an exemption from this requirement included in the FLSA and included in Connecticut and Massachusetts law.

Under the FLSA and under Connecticut and Massachusetts law, the exemption claimed by Ocean State is called the "executive exemption." In order to receive the benefit of an exemption under the applicable law, Ocean State has the burden of proving that that exemption applies by a preponderance of the evidence.[11]

---

[11]    Based upon *Perkins*.

**10b.   EXEMPTION GENERALLY (PLAINTIFFS' PROPOSED CHARGE)**

However, although the parties agree that the plaintiffs can prove the elements of their claims as I just described (see page \_\_\_) under the FLSA and Connecticut and Massachusetts law, Ocean State contends that the plaintiffs are not entitled to receive overtime compensation because of an exemption from this requirement included in the FLSA and included in Connecticut and Massachusetts law.

Under the FLSA and under Connecticut and Massachusetts law, the exemption claimed by Ocean State is called the "executive exemption." In order to receive the benefit of an exemption under the applicable law, Ocean State has the burden of proving that that exemption applies plainly and unmistakably based on the evidence.  Exemptions such as this must be strictly and narrowly construed against the employer seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'[12]

---

[12]      Based upon *Perkins* and *Graves v. Chubb & Sons, Inc.*; *Martin v. Indiana Michigan Power Co.,*, 381 F.3d 574, 578 (6th Cir. 2004) *(citing Douglas v. Argo-Tech Corp.,* 113 F.3d 67, 70 (6th Cir. 1996) *(quoting Arnold,* 361 U.S. at 392, 80 S. Ct. 453, 4 L. Ed. 2d 393)).

## 11.     JOB TITLES

A job title alone is insufficient to establish the exempt status of an employee. The fact that a company calls an employee a "manager" does not make that employee a manager under the law governing the  exemptions. Further, job descriptions that you find were written by the company are also insufficient to establish the exempt status of an employee.

The exempt or nonexempt status of any particular employee must be determined based on whether the employee's duties meet the elements of the FLSA exemption, the state law exemption, or both. The plaintiffs' job title or Ocean State's job description is entitled to little, if any, weight when you are considering whether the defendant has proven that a particular exemption applies to the plaintiffs.[13]

---

[13]     Based upon *Perkins*.

## 12.    FLSA AND MASACHUSETTS EXEMPTIONS

Ocean State contends that it was not required to pay overtime to the plaintiffs because the plaintiffs fall under the exemption in the FLSA and Massachusetts law.  The burden is on the defendant to prove by a preponderance of the evidence that the plaintiff class falls within this exemption.

Whether the plaintiffs were exempt is a question of fact for you to decide.  In order to carry its burden of proof that the plaintiffs are exempt under the FLSA, Ocean State must prove four things:

First, that the plaintiffs were compensated on a salary basis at a rate of at least $455 per week;

Second, that the plaintiffs' primary duty was management of the enterprise or a department or subdivision of the enterprise;

Third, that the plaintiffs customarily and regularly directed the work of two or more employees; and

Fourth, that the plaintiffs either had the authority to hire and fire other employees, or had the authority to make suggestions and recommendations as to the hiring, firing, advancement, promotion, or other changes of status of other employees and these suggestions or recommendations were given particular weight.  You should understand "other changes of status" to mean a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits or significant reduction in pay.[14]

---

[14]    Based upon *Perkins;* 29 C.F.R. Sec 541.100(a); 455 Code of Mass. Reg. § 2.02(3).

13.      **CONNECTICUT LAW EXEMPTION**

Ocean State also contends that it was not required to pay overtime to the Connecticut plaintiffs because those plaintiffs fall under the Connecticut state law exemption.

The burden is on Ocean State to prove by a preponderance of the evidence that the Connecticut law plaintiffs fall within this exemption. To prove the Connecticut exemption, defendant must prove:

First, that the Connecticut plaintiffs were compensated at a rate of not less than $475 per week;

Second, that the Connecticut plaintiffs' primary duty consists of management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; and

Third, that the Connecticut plaintiffs' duties include the customary or regular direction of the work of two or more other employees.[15]

---

[15]      Based upon *Perkins*; Regs. Conn. State Agencies Sec 31-60-14(a).

14.   **THE FIRST, THIRD, AND FOURTH ELEMENTS OF THE EXEMPTIONS**

In order to qualify for the exemptions, employees must be paid a salary of at least $455 per week under federal and Massachusetts law, and $475 per week under Connecticut law.  The parties have stipulated that the plaintiffs were paid more than the required salary levels for the exemptions under federal, Connecticut and Massachusetts law.  You must therefore treat these elements (Element 1 of the federal and state law claims) as having been proved by Ocean State for the purpose of this case.  Likewise, the parties have stipulated that the plaintiffs' duties include the customary or regular direction of the work of two or more employees and that the Plaintiffs suggestions and recommendations regarding hiring and firing were given particular weight. Thus, you must treat these elements (Elements 3 and 4 of the FLSA and Massachusetts law, and Element 3 of Connecticut law) as having been proved by Ocean State for the purpose of this case.

This means that the only element of the exemption that you need to consider in deciding this case is the second: whether Plaintiffs' primary duty is management of the enterprise, or of a customarily recognized department or subdivision of the enterprise, in which the Plaintiffs are employed.[16]

---

[16]     Based upon *Perkins*;

**15a.    THE SECOND ELEMENT OF THE EXEMPTION: PRIMARY DUTY (FLSA AND CONNECTICUT/MASSACHUSETTS LAW) (DEFENDANT'S PROPOSED CHARGE)**

The second element of the FLSA exemption and the Connecticut and Massachusetts exemptions is whether plaintiffs' primary duty is management of the enterprise, or of a customarily recognized department or subdivision of the enterprise, in which the plaintiffs are employed. The term "primary duty" means the main, major, or most important duty performed by the employee. In determining what duty is an employee's primary duty, you should consider all of the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Among the factors to consider when determining the primary duty of an employee include, but are not limited to,

(1) the relative importance of the management duties as compared with other types of duties;

(2) the amount of time spent performing management work;

(3) the employee's relative freedom from direct supervision; and

(4) the relationship between the employee's salary and the wages paid to other employees for the kind of non-management work performed by the employee.

Primary duty does not mean the most time-consuming duty; instead, it connotes the main or major – meaning the most important – duty performed by the employee. The amount of time performing management work can be a useful guide in determining whether management work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing management work will generally satisfy the primary duty requirement. However, time alone is not the sole test, and nothing requires that exempt employees spend more than 50 percent of their time performing management work. Employees who do not spend more than 50 percent of their time performing management duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

An exempt executive may sometimes perform non-management duties along with his or her management duties. The law expressly states that an assistant manager in a retail establishment may perform work such as serving customers, stocking shelves and cleaning the establishment, but performance of those duties does not preclude the exemption if the assistant manager's primary duty is management. Likewise, an assistant manager can simultaneously supervise employees and serve customers, and simultaneously direct the work of other employees and stock shelves, without losing the exemption, if the assistant manager's primary duty is management.

Similarly, the fact that employees may be required to follow certain standards and guidelines in the course of their work does not make them lose their exempt status if you

otherwise conclude that plaintiffs' primary duty is the performance of management duties in the operation of their stores. The fact that regional or other upper-level managers may visit and/or generally supervise an assistant store manager, or that the assistant manager does not always have the final say on certain management duties, also does not necessarily make them lose their exempt status.

The phrase "a customarily recognized department or subdivision" is meant to distinguish, on the one hand, between a mere collection of employees assigned from time to time to a specific job or series of jobs and, on the other hand, a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and continuing function. An employee who works in more than one location may meet this requirement if the factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization. Supervisors may co-manage the same department or subdivision, so long as each supervisor customarily and regularly directs the work of two or more employees.[17]

---

[17]    Based upon *Perkins*; 29 C.F.R. Sections 541.700(a), 541.106(a), (b); *Donovan v. Burger King Corp.,* 675 F.2d 516, 521-22 (2d Cir. 1982); *Jackson v. Advance Auto Parts, Inc.,* 362 F. Supp.2d 1323, 1335 (N.D. Ga. 2005); *Scott v. SSP Am., Inc.,* 2011 WL 1204406, * 13 (E.D.N.Y. 3/29/11); *Yesmin v. Rite Aid of New York, Inc.,* 2012 WL 3871735, * 6 (E.D.N.Y. 9/6/12); *Murray v. Stuckey's, Inc.,* 939 F.2d 614 (8th Cir. 1991); *Phillips v. Tacala, LLC,* 883 F. Supp.2d 1138, 1154 (N.D. Ala. 2012).

**15b.   THE SECOND ELEMENT OF THE EXEMPTION: PRIMARY DUTY (FLSA AND CONNECTICUT/MASSACHUSETTS LAW) (PLAINTIFFS' PROPOSED CHARGE)**

The second element of the FLSA exemption and the Connecticut and Massachusetts exemptions is whether plaintiffs' primary duty is management of the enterprise, or of a customarily recognized department or subdivision of the enterprise, in which the plaintiffs are employed. The term "primary duty" means the main, major, or most important duty performed by the employee. In determining what duty is an employee's primary duty, you should consider all of the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Among the factors to consider when determining the primary duty of an employee include, but are not limited to,

(1)      the relative importance of the management duties as compared with other types of duties. Factors you may consider on this element include the types of duties performed by the Plaintiffs, what they were told by their superiors, and whether or not the particular tasks were essential to the functioning of the store;

(2) the amount of time spent performing management work. Factors you may consider include what duties the Plaintiffs actually were performing;

(3) the employee's relative freedom from direct supervision. Factors you may consider on this element include whether or not Plaintiffs were required to adhere to strict and detailed corporate policies, and whether or not there were other employees above them who supervised them on a daily basis; and

(4) the relationship between the employee's salary and the wages paid to other employees for the kind of non-management work performed by the employee. Factors you may consider on this element include what a subordinate employee would have been paid for working the same number of hours as the Plaintiffs.

Primary connotes the main or major – meaning the most important – duty performed by the employee. The amount of time performing management work can be a useful guide in determining whether management work is the primary duty of an employee. Thus, employees who spend more than 50 percent of their time performing management work will generally satisfy the primary duty requirement. However, time alone is not the sole test, and nothing requires that exempt employees spend more than 50 percent of their time performing management work. Employees who do not spend more than 50 percent of their time performing management duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion.

However, if such assistant managers are closely supervised and earn little more than the non-exempt employees, the assistant managers generally would not satisfy the primary duty requirement. (C.F.R. Section 541.700(b)).

An exempt executive may sometimes perform non-management duties along with his or her management duties. The law expressly states that an assistant manager in a retail establishment may perform work such as serving customers, stocking shelves and cleaning the establishment, but performance of those duties does not preclude the exemption if the assistant manager's primary duty is management. Likewise, an assistant manager can simultaneously supervise employees and serve customers, and simultaneously direct the work of other employees and stock shelves, without losing the exemption, if the assistant manager's primary duty is management.

But it is not enough if Ocean State merely proves that it assigned management responsibilities to the Plaintiffs. It must instead prove that they in fact were performing management tasks while they were performing non-management tasks. If the assistant manager's supervisory role is being overwhelmed by his non-management tasks, you may refuse to find that he is simultaneously managing.

If instead, most of the assistant managers' hours were exclusively devoted to non-exempt work, this would suggest that management is not their primary duty.

However, in such circumstance, for the employee to be exempt, the defendant must prove by a preponderance of the evidence that the non-managerial duties are not his primary duty. In other words, Ocean State must prove that the management duties are the plaintiffs' primary duty.

Similarly, the fact that employees may be required to follow certain standards and guidelines in the course of their work does not make them lose their exempt status if you otherwise conclude that plaintiffs' primary duty is the performance of management duties in the operation of their stores. The fact that regional or other upper-level managers may visit and/or generally supervise an assistant store manager, or that the assistant manager does not always have the final say on certain management duties, also does not necessarily make them lose their exempt status.

However, if you conclude that the Plaintiffs' non-management tasks were of equal or greater importance as their management tasks, you must find in favor of the Plaintiffs.

The phrase "a customarily recognized department or subdivision" is meant to distinguish, on the one hand, between a mere collection of employees assigned from time to time to a specific job or series of jobs and, on the other hand, a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and continuing function. An employee who works in more than one location may meet this requirement if the factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization. Supervisors may co-manage the same department or subdivision, so long as each supervisor customarily and regularly directs the work of two or more employees.[18]

_____

[18]    Based upon *Perkins*; 29 C.F.R. Sections 541.700(a), 541.106(a), (b); *Donovan v. Burger King Corp.,* 675 F.2d 516, 521-22 (2d Cir. 1982); *Jackson v. Advance Auto Parts, Inc.,* 362 F. Supp.2d 1323, 1335 (N.D. Ga. 2005); *Scott v. SSP Am., Inc.,* 2011 WL 1204406, * 13 (E.D.N.Y. 3/29/11); *Yesmin v. Rite Aid of New York, Inc.,* 2012 WL 3871735, * 6 (E.D.N.Y. 9/6/12); *Murray v. Stuckey's, Inc.,* 939 F.2d 614 (8th Cir. 1991); *Phillips v. Tacala, LLC,* 883 F. Supp.2d 1138, 1154 (N.D. Ala. 2012); *Mullins v. City of New York*, 653 F.3d 104, 118 (2d Cir. 2011); *Ruggles v. Wellpoint, Inc.*, 272 F.R.D. 320-329-330 (N.D.N.Y. 2011); *Marzuq v. Cadete Enterprises, Inc.*, # 14-1744, ___ F.3d. ___, slip op. at 18-21, 23, 32 (1st Cir. Dec. 9, 2015) (citing  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1270 (11th Cir. 2008); *Johnson v. Big Lots Stores, Inc*., 604 F. Supp. 2d 903, 916 (E.D. La. 2009); *Cooke v. General Dynamics Corp*., 993 F. Supp. 56, 61 (D. Conn. 1997); *Costello v. Home Depot USA, Inc.*, 928 F. Supp. 2d 473, 495 (D. Conn. 2013).

**16.    THE SECOND ELEMENT: MANAGEMENT DUTIES (FLSA AND CONNECTICUT/MASSACHUSETTS LAW)**

Under the FLSA, and Connecticut and Massachusetts law, management activities include, but are not limited to:

- Interviewing, selecting, and training employees
- Setting and adjusting rates of pay and hours of work
- Directing the work of employees
- Maintaining production or sales records for use in supervision or control
- Appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status
- Handling employee complaints and grievances
- Disciplining employees
- Planning the work
- Determining the techniques to be used
- Apportioning the work among employees
- Determining the type of materials, supplies, machinery, equipment, or tools to be used or merchandise to be bought, stocked, and sold
- Controlling the flow and distribution of materials or merchandise and supplies
- Providing for the safety and security of the employees or the property
- Planning and controlling the budget
- Monitoring or implementing legal compliance measures

This is not an exhaustive list. You may also consider as management activities other activities which are of a similar nature to those I have listed. Nor do plaintiffs have to perform every one of the functions in this list or perform them to the same level for them to be considered as performing management duties.

In considering whether Ocean State has proven that plaintiffs' primary duty is management of the enterprise, or of a customarily recognized department or subdivision of the enterprise in which plaintiffs are employed, work that is "directly and closely related" to the performance of management work is also considered management work. The phrase "directly and closely related" means tasks that are related to management duties and that contribute to, or facilitate performance of, management work. Thus, "directly and closely related" work may include physical tasks and menial tasks that arise out of management duties, and the routine work without which the employee's management work cannot be performed properly. Work "directly and closely related" to the performance of management duties may also include recordkeeping; monitoring and adjusting machinery; taking notes; using the computer to create documents or presentations, opening the mail for the purpose of reading it and making decisions, and using a photocopier or fax machine. Work is not "directly and closely related" if the work is remotely related or completely unrelated to duties that are management.

If you find that Ocean State has failed to prove that the plaintiffs' primary duty is the management of the enterprise, or a customarily recognized department or subdivision, then Ocean State has not proved the second element of the FLSA or Connecticut or Massachusetts exemptions, and you should return a verdict in favor of the plaintiffs on their FLSA claim, the Connecticut plaintiffs under Connecticut law, and the Massachusetts plaintiffs under Massachusetts law.

However, if you find that Ocean State has proven by a preponderance of the evidence that the plaintiffs' primary duty is the management of the enterprise, or of a customarily recognized department or subdivision of the enterprise, then Ocean State has met its burden of proving the second element of the exemptions.[19]

*                        *                        *

If you find that Ocean State has proven the required elements of the exemption, you should return a verdict in favor of Ocean State with regard to the exemptions and stop there. If you find that Ocean State has failed to prove any of the elements of the exemption, you should return a verdict in favor of the plaintiffs. In that case, you must then consider whether Ocean State acted willfully in misclassifying the plaintiffs as exempt.

---

[19]     Based upon *Perkins*; 29 C.F.R. Section 541.102; *Sturm v. TOC Retail, Inc.,* 864 F. Supp. 1346, 1350 (M.D. Ga. 1994); *Buechler v. Davco Restaurants, Inc.,* 2009 WL 3833999, * 4 (D. Md. 11/16/09); *Itterly v. Family Dollar Stores, Inc,* 2014 WL 348638, *4 (E.D. Pa. 1/30/14); *Phillips v. Tacala, LLC,* 883 F. Supp.2d 1138, 1153 (N.D. Ala. 2012).

**17a.    FLSA EXEMPTION: WILLFULNESS (DEFENDANT'S PROPOSED CHARGE)**

In this case, it is not up to you to determine the amount of damages, if any, to which the plaintiffs are entitled. That will be decided later. However, if you find that Ocean State has failed to prove that the FLSA exemption applies, you must then determine if Ocean State acted willfully in misclassifying the plaintiffs as exempt. You should not consider this issue if Ocean State has proven that the FLSA exemption applies.

The term "willful" has a specific legal meaning. It refers to conduct that is not merely negligent or accidental. An employer acts willfully if it knew, or showed reckless disregard for whether its conduct was prohibited by the FLSA. An employer acts with reckless disregard when it acts, or fails to act, with a conscious lack of concern for the consequences. That means that Ocean State knew, or had reason to know, of facts that would lead a reasonable person to believe that it was violating the law.

Conduct is not willful if the employer acted reasonably and in good faith in determining its legal obligations and honestly believed that it was not required to pay overtime compensation to the plaintiff collective group.

If you find that Ocean State has failed to prove that the exemption applied to the plaintiffs, it is then the plaintiffs' burden to prove to you by a preponderance of the evidence that Ocean State acted willfully in improperly classifying the plaintiffs as exempt. If you find that the plaintiffs have met this burden, you should indicate "yes" on the jury interrogatory form. However, if you find that Ocean State did not know that the law applied, or knew only that the law was potentially applicable, or did not act in reckless disregard as to whether its conduct was prohibited by the law, even if it acted negligently, then its conduct was not willful and you should indicate "no" on the jury interrogatory form.[20]

---

[20]    Based upon *Perkins*.

**17b.    FLSA EXEMPTION: WILLFULNESS (PLAINTIFFS' PROPOSED CHARGE)**

In this case, it is not up to you to determine the amount of damages, if any, to which the plaintiffs are entitled. That will be decided later. However, if you find that Ocean State has failed to prove that the FLSA exemption applies, you must then determine if Ocean State acted willfully in misclassifying the plaintiffs as exempt. You should not consider this issue if Ocean State has proven that the FLSA exemption applies.

The term "willful" has a specific legal meaning. It refers to conduct that is not merely negligent or accidental. An employer acts willfully if it knew, or showed reckless disregard for whether its conduct was prohibited by the FLSA. An employer acts with reckless disregard when it acts, or fails to act, with a conscious lack of concern for the consequences. That means that Ocean State knew, or had reason to know, of facts that would lead a reasonable person to believe that it was violating the law. For example, failure to make adequate inquiry into whether a given conduct is in compliance with the law constitutes reckless disregard of the FLSA.

Conduct is not willful if the employer acted reasonably and in good faith in determining its legal obligations and honestly believed that it was not required to pay overtime compensation to the plaintiff collective group.

If you find that Ocean State has failed to prove that the exemption applied to the plaintiffs, it is then the plaintiffs' burden to prove to you by a preponderance of the evidence that Ocean State acted willfully in improperly classifying the plaintiffs as exempt. If you find that the plaintiffs have met this burden, you should indicate "yes" on the jury interrogatory form. However, if you find that Ocean State did not know that the law applied, or knew only that the law was potentially applicable, or did not act in reckless disregard as to whether its conduct was prohibited by the law, even if it acted negligently, then its conduct was not willful and you should indicate "no" on the jury interrogatory form.

In determining whether Defendant showed reckless disregard for Plaintiff's rights under the FLSA, you may consider the following:
1)    Whether Defendant knew that it was subject to the FLSA.
2)    Whether the Defendant took any steps to determine the lawfulness of deeming the Plaintiff an "exempt" employee;
3)    Whether or not there is evidence that the Defendant inquired of the Department of Labor or of its Attorneys as to whether its exemption classification met the requirements of the FLSA;
4)    Whether Defendant knew or that Plaintiff was likely working more than 40 hours per week.
5)    Whether Defendant knew that Plaintiff was not being paid overtime.
6)    Whether Defendant had the knowledge or resources to keep up with the law.

67

7)      Whether Defendant knew or should have known of specific cases or rules that applied to Plaintiff.

8)      Whether Defendant was aware of the duties that Plaintiff performed.[21]

---

[21]     Based upon *Perkins; Brock v. Willamowsky*, 833 F.2d at 18; 5 CFR 551.104.

**18a.    CONNECTICUT STATE LAW EXEMPTION: UNREASONABLENESS (DEFENDANT'S PROPOSED CHARGE)**

If you find that Ocean State has failed to prove that the Connecticut law exemption applies, you must consider whether, given all the circumstances, Ocean State acted unreasonably, arbitrarily, or with bad faith in classifying the plaintiffs as exempt employees. You should not consider this issue if Ocean State has proven that the Connecticut law exemption applies to the Connecticut Plaintiffs. The burden of proving unreasonableness, arbitrariness, or bad faith, is on the plaintiffs.

In this context, to act "unreasonably" or "arbitrarily" means to act without a reasoned basis for one's actions. To act with "bad faith" means to act with dishonest belief or a dishonest purpose or to wilfully disregard one's obligations. If you find that the plaintiffs have proven that Ocean State acted unreasonably, arbitrarily, or with bad faith in classifying the Connecticut plaintiffs as exempt employees, indicate "yes" on the jury interrogatory form. If you find that the plaintiffs have failed to prove that Ocean State acted unreasonably, arbitrarily, or with bad faith in classifying the plaintiffs as exempt employees, indicate "no" on the jury interrogatory form.[22]

---

[22] Based upon *Perkins*.

**18b.    GOOD FAITH (PLAINTIFFS' PROPOSED CHARGE)**

If you find that Ocean State has failed to prove the executive exemption, you must then determine whether or not Ocean State acted in good faith when it classified the Plaintiffs as exempt executives.  The burden of proof is on Ocean State to prove that it acted in subjective good faith and that it had objectively reasonable grounds for believing that its classification of the Plaintiffs as exempt executives did not violate the FLSA.

To establish good faith, Ocean State must produce plain and substantial evidence of at least an honest intention to ascertain what the FLSA and **Connecticut law** required and to comply with it.  Ocean State must show that it took active steps to ascertain the dictates of the FLSA and then acted to comply with them.[23]

---

[23] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)

*Reich v. SNET*, 121 F.3d 58, 71 (2d Cir. 1997)

Conn. Gen. Stat. 31-68, as amended by Conn. P.A. 15-86 (effective 10/1/15).

19.     **HOURS WORKED PER WEEK (PLAINTIFFS' PROPOSED CHARGE)**

If you find that Ocean State has failed to prove the executive exemption, you must then determine how many hours Plaintiffs worked per week. "Hours worked" means all time spent by an employee that was primarily for the benefit of an employer or the employer's business, even if those hours were not specifically requested.

As long as the employee knows or has reason to believe that the work is being performed, it must count the time as hours worked. The term "reason to believe" means that the employer must inquire and make an effort to determine precisely how many hours an employee has worked.

The law requires employers to keep records of the number of hours actually worked by its employees subject to the FLSA. The law requires those records to show the number of hours worked each work day and the total hours worked each work week. If an employer fails to maintain accurate or adequate records which show the number of hours worked each work day, and the total hours worked each week, a plaintiff may prove the amount and extent of his hours of work as a matter of a just and reasonable inference that may be drawn from testimony or documents. If an employee does so, the burden then shifts to the defendant to come forward with evidence of the precise amount of work performed each workweek, or with evidence to negate the reasonableness of the inferences to be drawn from the Plaintiffs' evidence. Should Ocean State fail to come forward with either, you must draw whatever reasonable inference from Plaintiffs' evidence as to the amount of hours worked to which they were not compensated, even though the result may only be approximate.

The plaintiffs' sufficient evidence may be nothing more than their credible sworn testimony. A defendant that failed to maintain complete and accurate records cannot complain that the plaintiff may not be able to provide an exact amount of overtime hours worked.

Having considered the evidence, you may base your findings regarding total hours worked upon the sum of the approximations of the number of hours worked in each

workweek, provided it constitutes a fair and just approximation under the facts presented.[24]

**Defendant objects to the inclusion of this charge.**

---

[24] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)
*Reich v. SNET*, 121 F.3d 58, 66-68 (2d Cir. 1997)
*Perkins v. SNET*, Case No. 3:07-CV-00967 (JCH),