UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
-------------------------------------------------------------------------X
OMAR MORRISON, CARLI GALASSO and
MANUEL TOPPINS, individually and on behalf of
other similarly situated Assistant Store Managers,

                             Plaintiffs,

             -against-                                3:09-CV-1285 (AWT)

OCEAN STATE JOBBERS, INC.,

                             Defendant.
-------------------------------------------------------------------------X

## DEFENDANT'S OPPOSITION TO
## PLAINTIFFS' MOTION IN LIMINE

# TABLE OF CONTENTS

POINT I.    EVIDENCE OF MORRISON'S PENDING DISCRIMINATION LAWSUIT AND HIS PARTICIPATION IN MULTIPLE FLSA MISCLASSIFICATION SUITS AGAINST PRIOR EMPLOYERS IS RELEVANT AND ADMISSIBLE .................................................................................................... 3

    A.    Evidentiary Standards Under Rule 404(b) ..................................................... 4

    B.    Evidence of Morrison's Pending Discrimination Lawsuit is Relevant and Admissible as it Relates to the Reason for His  Termination for Failing to Perform His Management Duties Adequately ............................ 6

    C.    Evidence of Morrison's Prior Identical FLSA Lawsuits is Relevant and Admissible to Show That Morrison was Very  Familiar with FLSA Exemption Criteria, but Never  Complained to Management About His Exempt Status ...................................................................................................... 8

POINT II.    THE VALUE OF BENEFITS PAID TO OCEAN STATE ASMs ..................... 11

POINT III.    TESTIMONY AND EVIDENCE CONCERNING THE JOB DUTIES OF OCEAN STATE ASMs FROM NON-OPT-IN ASMs AND OTHER EMPLOYEES IS RELEVANT AND ADMISSIBLE .......................................... 16

POINT IV.    THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO ALLOW PLAINTIFFS WITH INDIVIDUAL STATE LAW CLAIMS TO  RECOVER ON THOSE CLAIMS WITHOUT TESTIFYING AT TRIAL ............................ 18

POINT V.    THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO GIVE THE CWMA RETROACTIVE EFFECT IN ORDER TO SHIFT  THE BURDEN OF GOOD FAITH TO OCEAN STATE ............................................ 20

POINT VI.    THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO EQUITABLY TOLL THE FLSA COLLECTIVE MEMBERS' LIMITATIONS PERIOD .................................................................................. 22

# TABLE OF AUTHORITIES

*Amash v. Home Depot U.S.A., Inc.*,
    2014 WL 2465265 (N.D.N.Y. Jun. 3, 2014)..........................................................................13

*Bower v. Cycle Gear, Inc.*,
    2015 WL 2198461 (N.D. Cal. May 11, 2015) ......................................................................25

*Brillas v. Bennett Auto Supply, Inc.*,
    675 F. Supp. 2d 1164 (S.D. Fla. 2009) ...............................................................................13

*Command Cinema Corp. v. VCA Labs, Inc.*,
    464 F. Supp. 2d 191 (S.D.N.Y. 2006)..............................................................................1, 9

*Costello v. Home Depot USA, Inc.*,
    928 F. Supp. 2d 473 (D. Conn. 2013) .................................................................................14

*In re: Family Dollar FLSA Litigation*,
    637 F.3d 508 (4th Cir. 2011) ..............................................................................................14

*Fetrow-Fix v. Harrah's Entertainment, Inc.*,
    2011 WL 5827199 (D. Nev. Nov. 18, 2011) .......................................................................6

*Fulco v. Norwich Roman Catholic Diocesan Corp.*,
    609 A.2d 1034 (Conn. App. 1992) ...............................................................................20, 21

*Gastineau v. Fleet Mortg. Corp.*,
    137 F.3d 490 (7th Cir. 1998) ...........................................................................................5, 10

*Goodman v. Port Auth. Of New York and New Jersey*,
    850 F. Supp. 2d 363 (S.D.N.Y. 2012).................................................................................23

*Hintergerger v. Catholic Health Sys.*,
    2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ...................................................................24

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d (1990)...............................................................22

*Longcrier v. HL-A Co.*,
    595 F. Supp. 2d 1218 (S.D. Ala. 2008)...............................................................................25

*Love v. Phillips Oil, Inc.*,
    2008 WL 5157677 (N.D. Fla. Dec. 9, 2008) ......................................................................24

*Lusardi v. Xerox*,
    118 F.R.D. 351 (D.N.J. 1987)..............................................................................................19

*McKnight v. D. Houston, Inc.*,
  756 F. Supp. 2d 794 (S.D. Tex. 2010) ...................................................................24

*Moore v. Tractor Supply Co.*,
  352 F. Supp. 2d 1268 (S.D. Fla. 2004), *aff'd*, 140 Fed. Appx. 168 (11th Cir.
  2005) ......................................................................................................................13

*Morrison v. Ocean State Jobbers, Inc.*,
  290 F.R.D. 347 (D. Conn. 2013)..............................................................8, 11, 22

*Onions Etc., Inc. v. Z&S Fresh, Inc.*,
  2015 WL 9319427 (E.D. Cal. Dec. 23, 2015) ...................................................5, 7

*Otto v. Commerce Street Capital*,
  2013 WL 2357623 (E.D. Pa. May 29, 2013) ..........................................................5

*Outley v. City of New York*,
  837 F.2d 587 (2d Cir. 1988)....................................................................................5

*Pendlebury v. Starbucks Coffee Co.*,
  2008 WL 700174 (S.D. Fla. Mar. 13, 2008) .........................................................24

*Powell v. Gardner*,
  891 F.2d 1039 (2d Cir. 1989)...................................................................................9

*Ruggeri v. Boehringer Ingelheim Pharm., Inc.*,
  585 F. Supp. 2d 308 (D. Conn. 2008)......................................................................4

*Stein v J.C. Penney Co.*,
  557 F. Supp. 398 (W.D. Tenn. 1983).......................................................................6

*Taylor v. Autozone, Inc.*,
  2012 WL 254238 (D. Ariz. Jan. 27, 2012), *rev'd on other grounds*, 572 Fed.
  Appx. 515 (9th Cir. 2014)........................................................................................6

*Thomas v. Speedway America, LLC*,
  506 F.3d 496 (6th Cir. 2007) .................................................................................14

*Tidd v. Adecco USA, Inc.*,
  2008 WL 4286512 (D. Mass. Sept. 17, 2008) .......................................................24

*Titchenell v. Apria Healthcare Inc.*,
  2012 WL 3731341 (E.D. Pa. Aug. 29, 2012) ........................................................25

*Tomaino v. O'Brien*,
  315 Fed. Appx. 359 (2d Cir. 2009)...............................................................5, 7, 10

*TVT Records v. Island Def Jam Music Group,*
    250 F. Supp. 2d 341 (S.D.N.Y. 2003)....................................................................9

*U.S. v. City of New York,*
    2011 WL 2680474 (E.D.N.Y. Jul. 8, 2011)..........................................................19

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338, 131 S.Ct. 2541 (2011)...................................................................19

*Williamson v. Cook Composites Co.,*
    2009 WL 4730887 (C.D. Cal. Dec. 7, 2009) .........................................................4

## INTRODUCTION

Plaintiffs want everything. They want to claim a broad scope of alleged misclassification claims on behalf of as many former and current Assistant Store Managers ("ASMs") as they can get, yet have this Court force Ocean State to as tiny a sampling of ASM testimony as possible (and despite this Court previously rejecting class certification because of the differences in ASM experiences). Now, on the heels of Plaintiffs' more-recent attempted (and rejected) procedural gamesmanship, they have filed a motion *in limine* that asks the Court to preclude as a matter of law – and prior to the Court being able to determine appropriate context at trial – evidence that is unquestionably material, relevant and admissible in light of Plaintiffs' specific misclassification claims in this case, and which, if precluded, would cripple and unfairly prejudice Ocean State's ability to defend those claims.

Plaintiffs may not like the evidence that they seek to hide from the jury, but that does not mean the jury should not get to see and weigh the evidence themselves. For the reasons discussed below, Ocean State respectfully requests that the Court deny Plaintiffs' motion, or, at a minimum, reserve decision until the proposed evidence has context at the time of trial.[1]

Plaintiffs' motion seeks to exclude three categories of admissible, relevant evidence from trial, as well as another grouping of orders relating to three non-evidentiary issues even more inappropriate for resolution at this stage of the case.  Specifically, with regard to the former, Plaintiffs seek to exclude evidence of (1) prior, identical FLSA lawsuits against former employers and a pending discrimination lawsuit against Ocean State filed by Plaintiff Omar Morrison ("Morrison"); (2) the monetary value of the benefits provided to ASMs by Ocean State in relation

---

[1]  "[C]ourts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context. *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006).

to the value of the benefits provided to non-management, hourly associates at Ocean State, and (3) the job duties of the ASM position from non-opt-in ASMs and other Ocean State employees familiar with the position, notwithstanding that Plaintiffs have already advised that they intend to call their own witnesses to testify (as purported "representatives") about the day-to-day activities of other ASMs.  Plaintiffs' motion should be denied as to these categories of evidence because, as explained below, such evidence is relevant and admissible at trial.

Plaintiffs also seek separate orders relating to three non-evidentiary issues: (1) eliminating the need for each of the Plaintiffs asserting their own individual state law claims to testify in order to support their own claims; (2) applying the recently-enacted amendment to the Connecticut Minimum Wage Act *retroactively* so as to impose the threat of additional monetary penalties for behavior that allegedly occurred prior to the law's enactment and shift the burden to Ocean State to prove good faith compliance to avoid double damages; and (3) equitably tolling the statute of limitations for the 25 Plaintiffs during the six month period that their Motion for Conditional Certification was pending.  As a threshold matter, these issues, which have the potential to change the scope of this trial, the witnesses to be called, the applicable burdens on the respective parties and the amount of potential damages at issue, some of which could have been raised by Plaintiffs at any prior point in this six-and-a-half year old case, and should not be considered just three weeks from the trial in this matter. Their delay in raising these issues, which in light of Plaintiffs penchant for procedural gamesmanship, appears tactical in nature and calculated to frustrate Ocean State's ability to prepare for trial, and is grounds alone for the denial of Plaintiffs' motion.  Beyond this delay, and as explained in detail below, each of the pre-trial rulings requested by Plaintiff are inappropriate under the circumstances, against the weight of the case law, and unsupported by the facts.

In short, Plaintiffs' Motion *in Limine* should be denied in its entirety.

## ARGUMENT

### POINT I.

#### EVIDENCE OF MORRISON'S PENDING DISCRIMINATION LAWSUIT AND HIS PARTICIPATION IN MULTIPLE FLSA MISCLASSIFICATION SUITS AGAINST PRIOR EMPLOYERS IS RELEVANT AND ADMISSIBLE

In addition to being the first named-Plaintiff in this exemption misclassification case, Morrison has also sued Ocean State in a separate pending lawsuit in which he has claimed that his employment at Ocean State was terminated due to his race. Morrison has also been a plaintiff in at least two other exemption misclassification lawsuits against employers prior to Ocean State, in which he apparently became educated on what work needed to be performed for a manager to be properly classified as exempt under the Fair Labor Standards Act (and applicable state law).

Plaintiffs attempt at this stage to bar Ocean State from introducing all evidence of these lawsuits at trial based solely on their supposition that Ocean State intends to use such evidence merely to show the jury that Morrison is a "perpetual litigant" or "professional plaintiff." Plaintiffs are incorrect. Rather, as explained below, the jury is entitled to hear evidence of Morrison's pending discrimination lawsuit so that it can determine, as the trier-of-fact, that Morrison's claim that he spent 90% of his time on non-management tasks at the direction of Ocean State is not credible and contradicted by his own statements and legal positions, and that Morrison was actually terminated not because of his race, but specifically because he continually (and, Ocean State will argue, intentionally) failed to perform the very management duties that made him exempt in the first place, all so that he can set up Ocean State for a lawsuit as he did in the two identical lawsuits against his prior employers. Moreover, Morrison came to Ocean State and presumably touted his prior managerial experience to get a position in Ocean State management, yet failing to advise

Ocean State that he "really" didn't believe he was a manager at his prior employers so much so that he sued them and claimed that he was not a manager there.

Likewise, the jury is entitled to consider and weigh evidence of Morrison's prior FLSA lawsuits – not merely for the point that Morrison filed multiple lawsuits, but to show that Morrison had intimate and extensive knowledge about the FLSA exemption requirements, and that despite this knowledge, he never complained to his superiors about his exempt status. Instead, the jury is entitled to consider whether Morrison laid the grounds for this FLSA lawsuit (his third) by intentionally refusing to perform requested management responsibilities he knew he had to perform to properly be classified as exempt. Ocean State also expects to use evidence of these prior FLSA actions to oppose Morrison's request for increased damages due to Ocean State's allegedly "willful" misclassification.

None of the cases cited by Plaintiffs exclude evidence of prior lawsuits used for Ocean State's anticipated purposes, and Plaintiffs' motion offers no basis in fact or law to justify the exclusion of such prior lawsuits when used for purposes other than merely demonstrating that a party is a "perpetual litigant." That is especially true where, as here, a central issue to the case is the employer's reasonable expectations for the job deemed exempt. *See, e.g., Ruggeri v. Boehringer Ingelheim Pharm., Inc.*, 585 F. Supp. 2d 308, 313-14 (D. Conn. 2008) (the determination of whether an exemption was proper requires "an examination into the realistic requirements of the job"); *see also Williamson v. Cook Composites Co.*, 2009 WL 4730887, *8 (C.D. Cal. Dec. 7, 2009) (employer's realistic expectations are an important factor in determining the appropriateness of an exemption).

A.   **Evidentiary Standards Under Rule 404(b)**.

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act

is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  However, such evidence *is* admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." *Id.* In fact, where the evidence of "other acts" concerns prior lawsuits filed by a party, and where those claims are substantially similar to the present suit, such evidence is sufficiently probative to be admissible at trial. *See, e.g.,* MCCORMICK ON EVIDENCE § 196 (7th ed); *Tomaino v. O'Brien*, 315 Fed. Appx. 359, 361 (2d Cir. 2009) (trial court properly admitted evidence of six similar prior lawsuits filed by plaintiff as impeachment/credibility evidence); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494-96 (7th Cir. 1998) (trial court properly admitted evidence of plaintiff's similar lawsuits against prior employers when offered by defendant to impeach plaintiff's credibility and to oppose plaintiff's claim for damages); *Onions Etc., Inc. v. Z&S Fresh, Inc.*, 2015 WL 9319427, *2 (E.D. Cal. Dec. 23, 2015) (admitting evidence of prior lawsuit to show, based on the similarity of suits, plaintiffs' credibility, motive and/or plan).

Likewise, lawsuits offered to impeach the credibility of a party with his own inconsistent factual assertions or legal positions are admissible for that purpose.  *See Outley v. City of New York*, 837 F.2d 587, 593 (2d Cir. 1988) (cited by Plaintiffs, yet noting that "Impeachment has been recognized as one of the 'other purposes' for which evidence of prior acts may be admissible").[2]

---

[2]     When offered for other purposes, such as impeachment, any potential prejudice to Plaintiffs by the admission of evidence concerning prior lawsuits can be prevented by a limiting instruction, if necessary. *See, e.g., Otto v. Commerce Street Capital*, 2013 WL 2357623, *3 (E.D. Pa. May 29, 2013).

**B.     Evidence of Morrison's Pending Discrimination Lawsuit is
Relevant and Admissible as it Relates to the Reason for His
<u>Termination for Failing to Perform His Management Duties Adequately</u>.**

Ocean State has asserted that Morrison was tasked with the performance of primarily managerial duties in his role as an ASM, and that when he continually failed to perform such duties despite repeated instruction and discipline from Ocean State, he was terminated. Ocean State expects to demonstrate that, notwithstanding the failings of an ASM like Morrison, *its expectations* were that the ASMs like Morrison were to primarily perform management duties. *See, e.g., Stein v J.C. Penney Co.,* 557 F. Supp. 398 (W.D. Tenn. 1983) (looking at employer expectations for the job, notwithstanding plaintiffs' inability to do the management tasks and his immediate supervisor's personality and management style). As the court in *Stein* aptly stated: "[T]o the extent plaintiff did perform non-exempt duties it was largely a problem of his own creation." *Id.* at 402. *See also Fetrow-Fix v. Harrah's Entertainment, Inc.,* 2011 WL 5827199 (D. Nev. Nov. 18, 2011); *Taylor v. Autozone, Inc.,* 2012 WL 254238 (D. Ariz. Jan. 27, 2012), *rev'd on other grounds,* 572 Fed. Appx. 515 (9th Cir. 2014).

In other words, Morrison was terminated *specifically* for failing to sufficiently perform his management duties – the very duties which make him exempt under the FLSA – and a significant focus at trial will be on the reasons why Morrison chose not to perform managerial functions as he now claims. Since Ocean State specifically cited Morrison's refusal to sufficiently perform his management duties as the legitimate business reason for his termination (as opposed to purported race discrimination), there can be no greater connection to this case where Morrison's misclassification case hinges on whether he primarily performed management duties and, if not, why not.

One day prior to filing this FLSA action against Ocean State, Morrison filed a complaint

of discrimination with the Connecticut Commission on Human Rights and Opportunities, alleging that he was terminated not because he failed to perform the management duties that Ocean State required he perform as an ASM, but because of his race.  Thus, his claims of discrimination go to the very heart of why Morrison, as he now claims, was not performing the management duties as instructed by Ocean State.  *See, e.g., Tomaino,* 315 Fed. Appx. at 361 (lawsuits admissible as impeachment/credibility evidence); *Onions Etc.,* 2015 WL 9319427 at *2 (admitting evidence of other lawsuit to show motive and/or plan).  Again, Morrison's other lawsuits are not being introduced solely because they are other lawsuits; they are relevant and admissible, at a minimum, to show Morrison's "motive, plan and/or knowledge."  It is premature at this juncture to determine this issue until the appropriate context can be established at trial.

The inherently inconsistent nature of Plaintiffs' argument should not be lost.  When it suits his interest in the context of this FLSA action, Morrison alleges that the reason he was not performing predominantly management duties was because Ocean State directed and wanted **him and other ASMs** to perform menial tasks as a core function of the ASM role.  In other words, according to Morrison, Ocean State desired and knew that he and the other ASMs were performing largely menial tasks as the primary functions of their jobs.  But in the context of his discrimination lawsuit, when it suits his differing interests there, Morrison alleges that he was directed to perform non-management tasks and physical labor because Ocean State was discriminating against him individually, and that he was **singled out** for these menial roles for a discriminatory reason.   In other words, according to Morrison, he and others should have been performing managerial duties as an ASM, but Ocean State intentionally discriminated against him by assigning him menial tasks that were not part of his job description.

In short, Morrison has attempted to have it both ways in claiming that the reason he was

performing non-management work was because (1) such menial work is typically the predominant

function of an ASM at Ocean State, but also because (2) such work is not typically the predominant

function of an ASM at Ocean State, but that Ocean State was singling him out for such work on

the basis of his race.  These claims, made in sworn pleadings as part of this lawsuit and Morrison's

discrimination suit, cannot be credibly reconciled, and the jury should be permitted to consider

them both in evaluating Morrison's credibility and in determining the actual reasons that he failed

to perform the management duties that Ocean State ASMs are required to perform, and for which

he was ultimately terminated.[3]

> **C.  Evidence of Morrison's Prior Identical FLSA Lawsuits is Relevant and Admissible to Show That Morrison was Very Familiar with FLSA Exemption Criteria, but Never Complained to Management About His Exempt Status.**

Morrison was a plaintiff in at least two prior FLSA misclassification lawsuits against his

employers for whom he worked prior to commencing employment with Ocean State.  In those

suits, he asserted exactly the same type of claims -- that he had been wrongfully classified as

exempt -- that form the basis of his instant lawsuit against Ocean State.  Given that he made

identical claims against two former employers in lawsuits in which he claimed that he was not

performing sufficient managerial duties to warrant exemption, and that those lawsuits proceeded

to the point that Morrison received monetary settlements in both, Morrison clearly became very

familiar with and knowledgeable about the FLSA, its exemption classifications and criteria, and

---

[3]       Defendant notes that in a typical case, the *Defendant* would be the party likely to move to bar evidence of a Plaintiff's separate discrimination lawsuit against it, as evidence that Defendant has been accused of racial discrimination could prejudice the Defendant in the eyes of the jury.  Defendant finds the fact that *Morrison* is moving to bar evidence of his own discrimination lawsuit from this trial quite telling, and as a tacit acknowledgement of the credibility and consistency problems these divergent allegations create for him at trial.  But the mere fact that this evidence is harmful to his credibility does not mean that it is unduly prejudicial under Rule 403.

the requirements for establishing that an exemption was proper or improper based on the primary duties of the job.

When one couples that knowledge and experience in asserting the exemption claim, on the one hand, with the fact that Ocean State terminated Morrison's employment because of its belief that Morrison was intentionally refusing to sufficiently perform management duties, on the other hand, the jury is absolutely entitled to weigh the evidence and make its own determination as the trier-of-fact that Morrison set up Ocean State for a lawsuit by purposefully not performing management duties that the company wanted and expect him to perform, and by not complaining to Ocean State and giving the company an opportunity to remedy a situation if Morrison truly believed at the time (based on his knowledge coming into the job) that his position should not have been classified as exempt. *See Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989) ("the matter of whose version [of events] to believe was within the province of the jury, not of the court"); *Command Cinema Corp. v. VCA Labs, Inc.,* 464 F. Supp. 2d 191, 200 (S.D.N.Y. 2006) ("The Federal Rules of Evidence favor the admission of all relevant evidence" and a "District court will exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds"); *TVT Records v. Island Def Jam Music Group*, 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003) (improper to employ motions *in limine* as "preemptive weapons with which they endeavor to strike in shotgun fashion at whole topics and sources of prospective evidence, out of context and before any specific objection against its proper backdrop is raised [as this] would effectively serve as a form of advance trial of substantive portions of the case").

And, yet, despite this familiarity with the FLSA and what had to be performed in order to properly be classified as an exempt manager as Ocean State expected, Morrison applied for, accepted, and continued to work in a job as an Ocean State ASM knowing that the position was

classified as exempt, and yet continuing in the job as ASM for over a year while purportedly spending "90% of his time" pushing freight (a non-managerial task), without ever complaining to anyone at Ocean State about his exempt status or that the company is not properly classifying at least his position. As noted above, he also took the job at Ocean State in the first place presumably showcasing his prior managerial experience, without advising Ocean State in the beginning that he was suing his prior employers because he did not really believe he was getting managerial experience.

To be clear again, Ocean State does not intend to introduce the other lawsuits merely because they are other lawsuits. The jury is entitled to determine whether Morrison's allegations about the work he performed are credible given the fact that he knew full well the difference between exempt and non-exempt work. If Morrison is able to persuade the jury that he actually did spend 90% of his time on non-exempt work, the jury should be able to consider whether Morrison intended to perform such non-exempt work for over a year, and in spite of Ocean State's written and oral instruction that he should focus more on management, in order to manufacture and support this lawsuit against Ocean State and to maximize his damages. *See, e.g., Tomaino,* 315 Fed. Appx. at 361 (evidence of plaintiff's prior lawsuits could allow the jury to infer that plaintiff's testimony in support of his current suit "was not credible," and that evidence regarding these prior suits was not "particularly inflammatory or misleading"); *see also Gastineau,* 137 F.3d at 496 (evidence of prior similar lawsuits against employers admissible to show that plaintiff acted to manufacture a lawsuit against current employer).

Evidence of Morrison's silence for over a year despite the knowledge gained from these prior lawsuits is admissible to counter Plaintiffs' contention that Ocean State acted willfully in misclassifying ASMs as exempt and in illustrating Morrison's failure to mitigate his own damages

in his own "willful" manner. Morrison is attempting to collect liquidated damages under the FLSA and double damages under the CMWA by alleging that Ocean State acted willfully, and as such, the jury should be able to consider whether Morrison should receive liquidated/double damages for the entire period that he worked at Ocean State despite his knowledge of FLSA exemptions and the fact that he never complained about his exempt status or the duties that he was allegedly performing. His failure to attempt to mitigate his damages by raising these issues is a question for the jury to consider, and the jury should be privy to the evidence of his prior lawsuits in confronting that question.

Morrison's prior lawsuits are the best evidence of his knowledge about the FLSA, and as such, any prejudicial effect on Morrison (and Plaintiffs' point to no specific prejudice that Morrison would suffer) is outweighed by the substantial probative value of this highly relevant evidence. As Ocean State will use this evidence not to portray Morrison as a "perpetual litigant," but for valid "other purposes" under Rule 404, it should be admitted at trial.[4]

## POINT II.

### THE VALUE OF BENEFITS PAID TO OCEAN STATE ASMS IS RELEVANT AND ADMISSIBLE

Although Plaintiffs acknowledge – as they must – that Ocean State is entitled to demonstrate at trial that exempt ASMs were treated better financially (and cost more to the

---

[4]     Plaintiffs' statement that "[t]his Court has already recognized the irrelevance of these other lawsuits" and selective quotation from the Court's decision on class certification is strikingly disingenuous. Pl.'s Mot. in Limine at p.4. This Court did not decide the issue of whether these prior FLSA suits were relevant to the ultimate issues in the case, but rather that "[T]he defendant points to the mere fact that Morrison has brought the same type of lawsuit against at least two prior employers. That fact alone is not a sufficient basis to conclude that Morrison would not be perceived as credible by an impartial fact finder [for purposes of adequately representing the class." *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 355 (D. Conn. 2013). Thus, this Court clearly addressed the issue in the context of a procedural class certification motion, and not as a determination of admissibility at trial as Plaintiffs now try to suggest.

company) than the non-exempt hourly associates, Plaintiffs nevertheless ask this Court to cut off one leg of Ocean State's argument here too by arbitrarily asking the Court to limit the evidence that Ocean State can rely on for that point. Specifically, Plaintiffs argue that Ocean State should be prohibited from introducing at trial evidence of the benefits received by ASMs in addition to their salary which non-exempt associates do not. The primary basis of Plaintiffs' objection is that, based on the FLSA's regulations defining "salary," Ocean State is constrained to offering only evidence of Plaintiffs' literal salaries in its effort to show that ASMs were treated as managers by Ocean State. Plaintiffs' argument misses the mark for several reasons.

First, Plaintiffs have attempted to cast this case as one in which a large, corporate employer games the system and takes advantage of its assistant managers by unfairly robbing them of overtime compensation through willful misclassification. Plaintiffs are expected to continue that assault at trial, and are expected to attempt to convince the jury that "Defendant did not make a good faith effort to comply with the FLSA" and that "Defendant acted willfully in misclassifying them as exempt executives under the FLSA." *See* Joint Trial Mem. at 4. Certainly, evidence that Ocean State not only treated its exempt employees well, with substantially higher salaries and substantially greater benefits than its hourly workers, but that the cost of an exempt employee was markedly higher than that of a non-exempt employee, is relevant to Ocean State's defense of Plaintiffs' allegations.

Ocean State will introduce evidence that the ASM Plaintiffs received overall compensation/benefits packages that were substantially higher than those provided to non-management, hourly associates. In addition to the substantial comparative hourly rate/salary disparity between the two classifications, Ocean State will show that ASMs received annual bonuses based on their respective stores' overall profitability, significantly upgraded health, life

and long term disability insurance benefits, company-paid tuition assistance and more generous paid time off. None of these benefits were available to hourly, non-exempt employees.

Ocean State will provide credible evidence that these additional benefits had a cash equivalent value during the relevant period that was higher than what was received by non-exempt hourly associates. Not only would the jury be entitled to conclude from this type of evidence that Ocean State does not "abuse" its ASMs (a contention of Plaintiffs), but that Ocean State does not even have an incentive to misclassify its ASMs (a contention of Plaintiffs) because of, among other things, the costs to the company in salary *and* benefits for those that it classified as exempt ASMs. Plaintiffs' instant motion *in limine* attempts to prejudice and strip Ocean State of its ability to put all evidence in front of the jury in response to Plaintiffs' very claims. Ocean State should be allowed to put in front of the jury the entire cost of and compensation to ASMs so that the jury can engage in its fact-finding role and consider all ***non-exclusive factors*** to determine whether management is the ASMs primary duty.

These added benefits beyond salary are directly relevant to rebut Plaintiffs' contention that ASMs are no different than non-management, hourly associates and are given the ASM title solely so that Ocean State can avoid paying overtime, and, therefore, is relevant, admissible evidence that the Court should not bar as an evidentiary matter before the trial even starts. *See, e.g., Amash v. Home Depot U.S.A., Inc.,* 2014 WL 2465265, *7 (N.D.N.Y. Jun. 3, 2014) ("Based on these calculations as well as the stock options and possible bonus, a reasonable fact finder could only conclude that Plaintiff's wages were greater than those earned by her subordinates"); *Brillas v. Bennett Auto Supply, Inc.,* 675 F. Supp. 2d 1164, 1168 (S.D. Fla. 2009) ("Plaintiff was paid significantly more than his subordinates and was paid a bonus structure to award his effective management of the store . . ., thereby indicating that Plaintiff was a manager when he worked at

13

each of those positions"); *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1278-79 (S.D. Fla. 2004), *aff'd*, 140 Fed. Appx. 168 (11th Cir. 2005) (considering bonuses tied to store performance as indicative of management as primary duty); *Thomas v. Speedway America, LLC,* 506 F.3d 496 (6th Cir. 2007) (among other notable factors, exempt manager was eligible to participate in manager bonus program); *In re: Family Dollar FLSA Litigation,* 637 F.3d 508 (4th Cir. 2011) (viewing company salary <u>and</u> whether manager bonuses were available to non-exempt employees).

The cases cited by Plaintiffs do not compel exclusion of this evidence.  Indeed, Plaintiffs' own cases clearly show that substantial bonus payments to managers which were not available to exempt employees are proper evidence in an FLSA misclassification action.  For instance, in *Costello v. Home Depot USA, Inc.*, 928 F. Supp. 2d 473, 495 (D. Conn. 2013), the court considered the evidence relating to bonuses to be a factual matter inappropriate as the basis for dismissing plaintiffs' claims at summary judgment.  As the court noted, "it is not clear in which party's favor this factor weighs" – in other words, the weight of such evidence is not to be resolved by the court at summary judgment, but by the factfinder at trial.

Second, Plaintiffs' argument that all evidence of the benefits paid to Plaintiffs should be excluded merely because some of these benefits could amount to double counting, or that some of the benefits were allegedly infrequently utilized by plaintiffs, is a factual issue properly argued to and resolved by the jury.  If Plaintiffs believe that the benefits Ocean State pays to its ASMs are captured by the ASMs salary, they can certainly make that point, either via their own witnesses or on cross examination. And if Plaintiffs believe that a benefit is worthless simply because they chose not to use it, their own witnesses can testify to that effect and Plaintiffs can argue that to the jury as well. But this issue is not one that is appropriate for outright preclusion prior to trial.  The fact remains that the determination of the value of the many benefits Ocean State provided to its

ASMs (and not to its hourly associates), and of whether those benefits establish that the ASMs were properly classified as exempt, is for the jury to evaluate and determine. It is an indispensable component if the jury is to be in a position to compare what one group (managers) got that another group (non-managers) did not get.

## POINT III.

### TESTIMONY AND EVIDENCE CONCERNING THE JOB DUTIES OF OCEAN STATE ASMS FROM NON-OPT-IN ASMS AND OTHER EMPLOYEES IS RELEVANT AND ADMISSIBLE

This portion of Plaintiffs' motion *in limine* is, perhaps, the most remarkable. On this point, Plaintiffs ask the Court to approve a wholly inconsistent and unfair trial plan: let Plaintiffs call witnesses to act as surrogates to testify about the ASM position in a way that must also apply to other ASMs about whom the testifying ASMs have zero knowledge, but preclude Ocean State from calling witnesses to testify about the ASM position simply because they may not have first-hand knowledge about the other ASMs. Plaintiffs cannot have it both ways.

Plaintiffs have moved to exclude testimony from ASMs and other identified witnesses who may not have first-hand knowledge of the job duties of the 25 ASMs who opted into this case. While understandable that Plaintiffs would want a trial consisting entirely of their own self-serving witnesses' testimony concerning the job duties of an ASM, Plaintiffs have failed to cite a single case (and Ocean State has found none) in which such a drastic exclusion of relevant evidence was ordered by a trial court in an FLSA action. Even more critically, none of the ASMs that Plaintiffs have identified as trial witnesses are expected to have first-hand knowledge of the day-to-day activities of the other ASMs either, but Plaintiffs will likely ask the Court to have the jury accept *their* testimony to nevertheless apply to other non-testifying ASMs. Even with the representative nature of an FLSA case, why should Plaintiffs get that benefit and Ocean State should not?

Ocean State has named as witnesses several non-opt-in ASMs and Store Managers who have familiarity, through many years of experience, with the job duties of an ASM and, specifically, the kinds of managerial functions that Ocean State wants and expects its ASMs to perform. A few of these witnesses were or are presently ASMs for Ocean State, and were part of

the very class that Plaintiffs were attempting to represent in this action through its initial certification motion.  It is the height of irony that Plaintiffs now claim that these other ASMs are not "similarly situated" enough to the opt-in Plaintiffs to offer relevant testimony about the job in question, when Plaintiffs themselves argued repeatedly that each and every ASM employed by Ocean State was "similarly situated" enough with respect to their job duties so as to make class action resolution of their claims appropriate.

Given Plaintiffs' claims that they spent the predominance of their working time on non-exempt duties, and their obvious financial interest in testifying to that effect, Ocean State is entitled to offer testimony that other ASMs who did not opt into this action and who, by virtue of not opting in, disagree with Plaintiffs' assertions, spent the predominance of their working time on management. Purely and simply, Plaintiffs will be asking the jury to conclude that Ocean State ASMs should not be classified as exempt because they do not primarily perform management duties and that Ocean State willfully misclassified its ASMs. Plaintiffs do not, however, get to seat a few ASMs in the witness chair to talk about the ASM experience as it should apply to all of the 25 ASMs they know nothing about, and not allow Ocean State to have witnesses present to the jury as well what they believe Ocean State wanted and expected ASMs to perform, and what ASMs do perform.

In addition to rebutting Plaintiffs' testimony about how they spent their working time, this evidence is also relevant to show that if Plaintiffs' actually spent the majority of their time "pushing freight," they did so without the knowledge or blessing of Ocean State and in contravention to Ocean State's expectations.  To the extent that testimony from non-opt-in ASMs, store managers and other witnesses regarding the job duties of an ASM and the expectations of ASMs on the part of Ocean State differs with that of the opt-in Plaintiffs concerning their own work, the resulting

questions of credibility and of fact concerning the duties that Plaintiffs actually performed, and why, are for the jury to decide.

## POINT IV.

### THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO ALLOW PLAINTIFFS WITH INDIVIDUAL STATE LAW CLAIMS TO RECOVER ON THOSE CLAIMS WITHOUT TESTIFYING AT TRIAL

Plaintiffs are also requesting that this Court enable some Plaintiffs in this action to hold Ocean State liable under state law, and to collect (in some instances) double damages against Ocean State, without testifying or providing any evidence to support their individual claims. Unsurprisingly, Plaintiffs have failed to cite even a single instance in which a trial court allowed plaintiffs in an FLSA collective action to recover by proxy on their state law claims, and offer no support for such an unprecedented order.

While Plaintiffs are correct that collateral estoppel may generally bar *relitigation* of issues of fact or law actually litigated in a federal FLSA case from being litigated again in a subsequent state law case involving identical issues and parties, Plaintiffs ignore the fact that the issue in question must first be "actually litigated" and that the defendant must be provided with a "full and fair opportunity" to defend itself.  For an individual (non-Rule 23 class) claim under the CWMA or the MFWL to be "actually litigated," the plaintiff asserting such a claim must attempt to prove his case. In other words, he must testify and offer evidence from which a jury could find in his favor on those state law claims. To allow Plaintiffs with state law claims to recover without actually proving their claims would deprive Ocean State of a "full and fair" opportunity to litigate those claims, as it would be deprived of its ability to confront the witnesses against it and be subject to heightened damages under state law without Plaintiffs having established the underlying liability.

If Plaintiffs were allowed to do so in this case, then in every 216(b) FLSA collective action, plaintiffs would be able to obtain the benefits of Rule 23 standards on representational testimony and liability without satisfying the requisite Rule 23 standards.  Plaintiffs attempted to have the state law claims certified as a Rule 23 class action and failed.  This Court should not permit them to backdoor their way to a similar result with respect to the opt-in Plaintiffs via the unprecedented relief they now seek.  "[A] litigant may not convert an individual question into a common question by concocting a method of classwide proof that subverts rights created by the underlying substantive law." *U.S. v. City of New York*, 2011 WL 2680474, *13 (E.D.N.Y. Jul. 8, 2011) (rejecting a method of classwide proof that "removes the individual claimants' burden to prove that they suffered actual injury and the magnitude of that injury, and replaces it with a measure of damages presumed merely from the [defendant]'s violation of the law, unmoored from any measure of actual loss suffered by a particular claimant"). *See also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541 (2011) (rejecting "trial by formula" because defendant may not be denied its "entitle[ment] to litigate its statutory defenses to individual claims"); *Lusardi v. Xerox*, 118 F.R.D. 351, 370-71 (D.N.J. 1987) (defendant would be deprived of due process if defendant was not permitted "to raise at the liability stage of trial each and every defense available to it").

## POINT V.

### THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO GIVE THE CWMA RETROACTIVE EFFECT IN ORDER TO SHIFT THE BURDEN OF GOOD FAITH TO OCEAN STATE

Plaintiffs next claim that the six-month old changes to the CWMA should apply retroactively to this six-and-a-half year old case in order to shift the burden of proving good faith to Ocean State. Plaintiffs are incorrect.

In support of their argument that as a "remedial statute," the new provisions of the CWMA should be given retroactive effect, Plaintiffs cite a variety of cases in which *other* laws were applied retroactively, but none giving retroactive application to any of the past or present changes to the CWMA. For example, in *Fulco v. Norwich Roman Catholic Diocesan Corp.*, 609 A.2d 1034 (Conn. App. 1992), the Appellate Court of Connecticut considered squarely the issue of whether changes to the CWMA should be given retroactive effect, and found that because the statute affected the substantive rights of the parties, it could not be applied retroactively.

According to the Appellate Court of Connecticut:

> On June 23, 1989, the effective date of the plaintiff's discharge, General Statutes (Rev. to 1989) § 31–72 provided in pertinent part: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31–71a to 31–71i ... such employee ... may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court...." Public Acts 1990, No. 90–55, which took effect on July 1, 1990, amended § 31–72 by providing for double damages "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31–71a to 31–71i ... or fails to compensate an employee in accordance with section 31–76k...." General Statutes § 31–76k provides that an employer shall pay an employee accrued fringe benefits, including vacation pay, upon the employee's discharge.
>
> . . .
>
> The plaintiff argues that Public Act No. 90–55 applies

20

> retrospectively because it does not create a substantive right, but
> merely clarifies the legislature's intent that the term "wages" in
> § 31–72 be construed to include vacation pay.

*Id.* at 803.

In other words, the plaintiff in *Fulco* made the same argument about the same law that Plaintiffs now make – an argument which was roundly rejected by the Appellate Court:

> General Statutes § 55–3 provides that "[n]o provision of the general
> statutes, not previously contained in the statutes of the state, which
> imposes any new obligation on any person or corporation, shall be
> construed to have a retrospective effect." 'The "obligations"
> referred to in the statute are those of substantive law'; and
> '[l]egislation which limits or increases statutory liability has
> generally been held to be substantive in nature.''[W]e have
> uniformly interpreted § 55–3 as a rule of presumed legislative intent
> that statutes affecting substantive rights shall apply prospectively
> only.' The legislature only rebuts this presumption when it "clearly
> and unequivocally" expresses its intent that the legislation shall
> apply retrospectively.

*Id.* (internal citations omitted).  Accordingly,

> The plain language of § 31–72 and Public Act No. 90–55 clearly
> indicates that the term "wages" in § 31–72 does not include vacation
> pay. Thus, Public Act No. 90–55, which authorizes double damages
> for the nonpayment of vacation pay in addition to double damages
> for the nonpayment of wages, creates new substantive rights and
> corresponding liabilities. Because nothing in the language of the
> Public Act suggests a clear legislative intent that it be applied
> retrospectively, the trial court properly refused to apply it to the facts
> of this case.

*Id.* at 805.

Just as the Court in *Falco* refused to apply the 1990 changes to the CWMA retroactively to a claim which accrued a year prior, so should this Court refuse to apply the 2015 changes to the CWMA to a case that began some six years before the changes were implemented.  The shifting of the burden to the defendant to avoid double damages certainly limits the substantive rights of a

defendant, and Plaintiffs should not be entitled to reap the benefit of a 2015 law that arguably imposes greater punishment to behavior that arguably took place years before that. *Id.* at 805 ("Legislation which limits or increases statutory liability has generally been held to be substantive in nature") citing *Little v. Ives*, 158 Conn. 452, 457, 262 A.2d 174 (1969).

Plaintiffs' request for retroactive application of the shifted burden of proof in the CWMA should be denied.

## POINT VI.

## THIS COURT SHOULD DECLINE PLAINTIFFS' INVITATION TO EQUITABLY TOLL THE FLSA COLLECTIVE MEMBERS' LIMITATIONS PERIOD

Plaintiffs' argument on this point conflates several points, and ultimately should be rejected. As Plaintiffs correctly note in their motion, equitable tolling of the collective's limitations period is appropriate only where (1) the party seeking equitable tolling "has acted with reasonable diligence during the time period she seeks to have tolled," <u>and</u> (2) "has proved the circumstances are *so extraordinary* that the doctrine should apply." Pls.' Mot. in Limine at p.19 (emphasis added). Indeed, equitable tolling is generally appropriate only where the potential plaintiff "actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where [he] has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d (1990). As there is nothing *extraordinary* about the procedural history of this case – let alone any extraordinary misconduct on the part of *Ocean State* – during the period that the Plaintiffs seek tolling, this Court should decline to grant this extreme remedy.

As a threshold matter, Plaintiffs have again asked this Court for an extraordinary remedy on the eve of trial. Plaintiffs have known with exacting specificity each of the facts on which it

now relies to assert equitable tolling – the date Plaintiffs filed for conditional certification, the time

that Plaintiffs believe it took for this Court to rule on that motion, and the dates that the members

of the collective opted-in – for at least five-and-a-half years.  Plaintiffs could have moved this

Court for equitable tolling at any point during that window or at the time that their Motion for

Collective Certification was filed, but instead, waited inexplicably until three weeks before trial to

raise the issue.

In an FLSA collective action, an unnamed plaintiff's claim commences, by statute, when

his written consent to opt-in is filed with the court. 29 U.S.C. § 256. There are absolutely no

circumstances presented in Plaintiffs' submission – by factual affidavit or otherwise – that even

remotely support a finding as a matter of law before trial that the required egregious conduct to

warrant equitable tolling exists.  Put simply, Plaintiffs do not even attempt to suggest that Ocean

State did *anything* from a conduct standpoint that would warrant equitable tolling, and nothing is

presented in their moving papers to warrant this Court to ignore the statutory requirement that an

individual only has a claim under the FLSA when he or she files his or her opt-in notice.

Ocean State has directed its litigation strategy and its trial preparation to date based on the

established, black letter principle that the statutes of limitations for FLSA collective action

plaintiffs continue to run until opt-ins were filed, and in the absence of any reason to think

otherwise, have relied on this notion since the opt-ins were filed.  Plaintiffs' efforts to expand

Ocean State's potential liability on the eve of trial, without basis much less good reason for waiting

to do so, would unfairly prejudice Ocean State. Given that equitable tolling is a "doctrine of

fairness" which should apply only where plaintiff "has acted with reasonable diligence," *Goodman*

*v. Port Auth. Of New York and New Jersey*, 850 F. Supp. 2d 363, 375 (S.D.N.Y. 2012), applying

it here in light of Plaintiffs' inexcusable delay in requesting it would be particularly inappropriate.[5]

Furthermore, Plaintiffs assertion that they are entitled to equitable tolling simply because this Court required six months to resolve the motion for conditional certification is baseless. Despite Plaintiffs' suggestion that the Court took too long, six months to determine a conditional certification motion in these kinds of cases is far from uncommon.  In any event, Courts will not grant a request for equitable tolling based on routine litigation delays:

> Unfortunately, the time for consideration of the conditional certification and related motions is reflective of an increasing caseload in this District and does not constitute an extraordinary circumstance for tolling purposes. ***Equitable tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."*** *Wallace v. Kato*, 549 U.S. 384, 396, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). For the reasons stated, I find Plaintiffs have not met their burden of demonstrating the existence of circumstances warranting equitable tolling and their motion is denied.

*Hintergerger v. Catholic Health Sys.*, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (emphasis added). *See also McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010) (rejecting plaintiffs' request for equitable tolling during the pendency of the conditional certification motion); *Pendlebury v. Starbucks Coffee Co.*, 2008 WL 700174, *4 (S.D. Fla. Mar. 13, 2008) (rejecting plaintiffs' argument for equitable tolling where "the Court took six months to rule on Plaintiffs' motion to issue notice . . . four months to approve the notice and consent forms . . . and because Defendant exercised its right to challenge and oppose Plaintiffs' motions"); *Love v. Phillips Oil, Inc.*, 2008 WL 5157677, at *1 (N.D. Fla. Dec. 9, 2008) (refusing to apply equitable tolling due to nine month delay in certification); *Tidd v. Adecco USA, Inc.*, 2008 WL 4286512, at *5 (D. Mass. Sept. 17, 2008) ("the circumstances of this case [involving litigation delays] are not

---

[5]    None of the cases cited by Plaintiffs in which equitable tolling was granted involve a Plaintiff moving for such relief in limine on the eve of trial.

substantially different from other FLSA cases, and acceptance of the plaintiffs' argument would essentially mean that equitable tolling should occur in every FLSA collective action, changing the principle of equitable tolling from the exception to the norm").

In short, "in the average case in which the delay is attributable to the normal litigation process, courts have held that equitable tolling is not appropriate." *Titchenell v. Apria Healthcare Inc.,* 2012 WL 3731341, at *7 (E.D. Pa. Aug. 29, 2012) (collecting cases denying equitable tolling based on routine litigation delays). Indeed, Plaintiffs notably admit that the litigation delays faced by this Court in deciding the motion for conditional certification were nothing more than "**usual litigation delays faced by this Court**." Pls.' Mot. in Limine at p.20 (emphasis added). "Usual litigation delays," by definition, cannot be the kind of "extraordinary circumstance" required for equitable tolling. "To hold otherwise would be to opine that equitable tolling should be granted in every § 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one." *Longcrier v. HL-A Co.,* 595 F. Supp. 2d 1218, 1244 (S.D. Ala. 2008) (denying equitable tolling during the pendency of motion for conditional certification).[6]

---

[6] Plaintiffs' argument that without equitable tolling, "Plaintiffs stand to lose thousands of dollars in potential recovery" is likewise unavailing. "The inability to recover damages cannot, on its own, be enough to warrant the extraordinary remedy of equitable tolling. By definition, there is no reason to seek tolling of the statute of limitations unless *not* tolling would result in some plaintiffs losing out on their ability to recover damages. In other words, this factor is present in every case." *Bower v. Cycle Gear, Inc.,* 2015 WL 2198461, at *2 (N.D. Cal. May 11, 2015).

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court deny Plaintiffs'

motion *in limine* in its entirety, and grant Defendant such other and further relief as the Court

deems just and proper.

Dated:  New York, New York
          March 25, 2016

COZEN O'CONNOR
Counsel for Defendant

By: _____

Michael C. Schmidt
Jonathan R. Cavalier
277 Park Avenue
New York, New York 10172
(212) 453-3937

CARMODY TORRANCE SANDAK
  & HENNESSEY LLP
Local Counsel for Defendant
195 Church Street
Post Office Box 1950
New Haven, Connecticut 06509-1950

## Certificate of Service

I hereby certify that on March 25, 2016, a copy of the foregoing Opposition to Plaintiffs' Motion in Limine was filed electronically and served by mail on all counsel and pro se parties, including anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

COZEN O'CONNOR
Counsel for Defendant

By: _____

Michael C. Schmidt
277 Park Avenue
New York, New York 10172
(212) 453-3937