UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OMAR MORRISON, CARLI GALASSO and MANUEL TOPPINS, individually and on behalf of other similarly situated Assistant Store Managers, | CIVIL ACTION NO.: |
| | 3:09 CV 1285 (AWT) |
| Plaintiffs, | |
| v. | |
| OCEAN STATE JOBBERS, INC., | APRIL 5, 2017 |
| Defendant | |

ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT

## I.  INTRODUCTION

Plaintiffs are current and former employees of Defendant who have worked as Assistant Store Managers ("ASMs") in Defendant's stores.  They allege that Defendant violated the Fair Labor Standards Act ("FLSA") and state labor laws by failing to pay ASMs one-and-one-half times their regular rate for all hours worked over 40 hours per week.  After engaging in extensive discovery, motion practice, and completing two trials, each resulting in a hung jury, the Parties engaged in a full day of mediation which resulted in the proposed Class Action Settlement Agreement ("Settlement Agreement"), attached here as Exhibit A.

In order to effectuate this settlement and solely for settlement purposes, Plaintiffs now respectfully request that the court enter an Order:

(1) consolidating *Scribner v. Ocean State Jobbers, Inc.*, No. 1:14-cv-11633 (D. Conn.), with this case;

(2) granting Plaintiffs' unopposed request for leave to file Seventh Amended Complaint (attached here as Exhibit B) to include the *Scribner* class and the named plaintiffs and class members of four additional class actions against Defendant currently pending in the state courts of New York, Rhode Island, Massachusetts and Connecticut, as well as class claims against Defendant, alleging violations of the wage and hour laws of Maine, New Jersey, New Hampshire and Vermont;

(3) granting preliminary approval of the Settlement Agreement (proposed order attached here as Exhibit C);

(4)  provisionally certifying the proposed class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes;

(5) appointing The Hayber Law Firm, LLC, and Lichten & Liss-Riordan, P.C., as Class Counsel;

(6) approving the proposed Notice of Class and Collective Action Settlement (attached here as Exhibit D) and directing its distribution to the class; and

(7) scheduling a hearing for final settlement approval in July 2017.

## II.  BACKGROUND

### A.  The Overtime Litigation and Settlement Negotiation

On August 18, 2009, Plaintiff Omar Morrison filed a class and collective action in the United States District Court for the District of Connecticut, asserting claims on behalf of current and former ASMs at Ocean State in which he claimed that Defendant misclassified them as exempt "executives" in violation of the FLSA and state wage laws.  On April 2, 2014, Michael Scribner filed a similar class and collective action lawsuit in the United States District Court for

the District of Massachusetts, captioned *Scribner v. Ocean State Jobbers, Inc.* ("*Scribner*").  That

case was transferred to this Court on October 9, 2014.

In addition to these two federal court lawsuits, Ocean State ASMs who have worked in

Massachusetts, New York, Rhode Island, and Connecticut filed additional cases in state courts

alleging that they had been improperly denied overtime pay in violation of state law.  *Newton v.*

*Ocean State Job Lot Stores of MA, Inc. C.A. No. 15-4823 ("Newton")*, was filed in the Superior

Court of the State of Massachusetts on June 30, 2015.  *Munson v. Ocean State Job Lot of New*

*York, Inc., No. 610345/2015 ("Munson")*, was filed in the Supreme Court of the State of New

York on September 29, 2015.  *Owens v. Ocean State Job Lot Stores of Rhode Island, PC-2015-*

*4252 ("Owens")*, was filed in the Superior Court of the State of Rhode Island on September 30,

2015.  *Hanscome v. Ocean State Jobbers, Inc., HHD-CV-16-607081-S ("Hanscome")*, was filed

in the Superior Court of the State of Connecticut on August 26, 2016.  Each of the Rule 23 State

Cases remains pending.  Defendant has denied and continues to deny all of the allegations and

claims in the *Morrison*, *Scribner,* and Rule 23 State Cases that are all pending.

On April 19, 2016, the *Morrison* case proceeded to trial, but the jury was unable to reach

a unanimous verdict.  *Morrison* was retried on September 20, 2016, once again to a hung jury.

Thereafter, the parties met for a full day of mediation on December 21, 2016, and with the

assistance of a professional mediator (and following additional discussions assisted by the

mediator after the mediation) reached a comprehensive settlement for all pending litigation, as

well as claims of all ASMs who worked for Defendant in any state, in the amount of $1,915,000.

**B. The Settlement Agreement**

Under the Settlement Agreement, Ocean State has agreed to pay a total gross amount of $1,915,000. The entire amount of this fund will be paid out to plaintiffs and class members, and used to pay attorneys' fees and costs (in the total amount of $730,000), as described below. This settlement is non-reversionary; no portion of it will revert to Ocean State.

In the settlement notice to be distributed to the class, class members will be asked to submit a claim form, which they will need to return in order to receive a share of the settlement fund. Following deduction of attorneys' fees and incentive payments for lead plaintiffs and testifying plaintiffs (described further below), the settlement fund will be distributed in proportion to the number of workweeks each claiming class member worked within the applicable class period[1], with the following proposed[2] adjustments:

---

[1] The class period for each plaintiff who opted in to the <u>Morrison</u> or <u>Scribner</u> cases will be three years prior to the date that plaintiff opted in until preliminary approval (unless an earlier date would apply under the state class periods set forth below). The class period for each class member who worked in the following states (unless an earlier date would apply, based upon the class member having opted into <u>Morrison</u> or <u>Scribner</u>) is as follows:

<u>Massachusetts</u>: August 21, 2011, until the date of preliminary approval

<u>New York</u>: September 29, 2009, until the date of preliminary approval

<u>Rhode Island</u>: September 30, 2013, until the date of preliminary approval

<u>Connecticut</u>: August 26, 2014, until the date of preliminary approval

<u>Vermont, Maine, New Jersey and New Hampshire</u>: December 21, 2014, until the date of preliminary approval

[2] The parties have not compiled and calculated class wide data and so the formula will be finalized after receipt of the class wide data. It is the intention of the parties to weight Massachusetts share more heavily because of that state's mandatory triple damage rule and to weight the shares of those who have already opted in because those class members do not share the risk of being excluded from the case as the putative Rule 23 class members.

4

i.   Class members who have not opted in and do not work in Massachusetts will receive a single share (x) for each week they were employed during the class period.[3]

ii.   Class members who have not opted in and work in Massachusetts will receive a ____ share (a x) for each week they were employed in Massachusetts during the class period.

iii.   Class members who have opted in will receive ____ shares (b x) for every week they worked during the class period in states other than Massachusetts and _____ (c x) for every week they worked during the class period in Massachusetts.

Class members who do not submit claim forms will receive reminder notices, both before the final approval hearing, and again after the initial distribution of funds, encouraging them to submit claims in order to participate in the settlement. A portion of the settlement fund will be held back from the initial distribution to account for anticipated late claims. Approximately four months after the initial distribution of funds, there will be a final distribution of funds of all remaining funds, which will be distributed to all class members who have submitted claims, in proportion to their initial distribution of class funds (but not including any class members for whom the residual distribution would be less than $50).[4]

Plaintiffs' counsel (Lichten & Liss-Riordan, P.C.) will administer the settlement, including sending notices to class members, collecting claim forms, sending reminder notices, and providing calculations to Defendants regarding amounts to be paid to class members in each distribution.

---

[3]   Class members outside of Massachusetts would have had the possibility of recovering double damages under federal law or state law. This one-and-a-half times credit for Massachusetts class members will be in addition to the double credit that class members will receive if they opted in to the <u>Morrison</u> or <u>Scribner</u> cases (i.e. class members who opted in will receive triple credit).

[4]   This residual fund will also be used to pay late-filed claims and can also be used to resolve any disputes that may arise regarding the proper allocation of the settlement funds.

All class members who do not opt out of the settlement will be held to have released their state law claims for unpaid overtime, pursuant to Rule 23. All class members who submit claim forms to participate in the settlement will also be held to have released their federal claim for overtime, pursuant to the FLSA.

Under the agreement, subject to the Court's approval, one-third of the Settlement Fund will be allocated for attorneys' fees.[5] In addition, Plaintiffs' counsel would be reimbursed out of the settlement funds for their actual litigation costs and expenses in litigating these cases.

From the settlement, Plaintiffs will also apply for service awards of $20,000 for Named Plaintiff Morrison and $15,000 for Named Plaintiff Toppins due to their substantial participation in this litigation; $5,000 each for Carli Galasso, Michael Scribner, and Kelly Watts; $2,500 each for George Owens, Kristen Hanscome, Michael Munson, Lynne Newton and David Povilaitis for serving as named plaintiffs; $2,500 each for opt-in plaintiffs Sandra Carnelli, Eric Curtis, Normand Langevin, Stephen Dynder, and William Britt because of their participation in the litigation including testimony at trial; and an additional $1,000 each for all other opt-in plaintiffs who were deposed. These service awards are well in line with amounts that have been routinely approved in class cases.

---

[5]     Courts in the Second Circuit regularly award counsel fees based upon one-third of the settlement. *See, e.g., Macedonia Church v. Lancaster Hotel, LP*, 05 Civ. 153, 2011 U.S. Dist. LEXIS 62063, *at 35-36 (D. Conn. June 9, 2011) ("Class Counsel's request for 33-1/3% of the Settlement Fund is typical in class action settlements in the Second Circuit.") (collecting cases); *Beckman v. KeyBank, N.A.*, 85 Fed. R. Serv. 3d (West) 593, at *8 (S.D.N.Y. 2013) ("Class Counsel's request for 33% of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) ("Class and Plaintiff's Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 U.S. Dist. LEXIS 105775, at *39 (S.D.N.Y. Sept. 16, 2011) ("A fee of 33% of the Settlement Fund is reasonable and consistent with the norms of class litigation in this circuit.") (citation and internal quotation marks omitted).

Service awards, or incentive payments have been routinely approved by the courts in class and collective action settlements as a way of compensating representatives who have lent their names, reputations, and efforts to the prosecution of litigation on behalf of others. Courts have also recognized that such payments can serve an important function in promoting class and collective action settlements. *See Sheppard v. Consolidated Edison Company of New York, Inc.*, 2002 WL 2003206, *5-6 (E.D. N.Y. 2002) (collecting cases approving incentive payments); *see also In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where, as here, the named Plaintiff participated actively in the litigation") (internal quotation omitted).[6]

### III.   *SCRIBNER* SHOULD BE CONSOLIDATED WITH THIS ACTION AND THE COURT SHOULD APPROVE AN AMENDED COMPLAINT THAT CONTAINS ALL THE STATE LAW CLAIMS CONTAINED IN THE RELATED CASES THAT WILL BE RESOLVED AS PART OF THIS SETTLEMENT

The Court should consolidate this case and *Scribner* because they raise identical legal issues, and doing so would facilitate evaluation of the settlement. Federal Rule of Civil Procedure 42(a) permits a court to consolidate two or more actions involving "a common question of law or fact." Fed. R. Civ. P. 42(a). *See Devlin v. Transportation Communs. Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

---

[6]   It is not uncommon for courts to approve incentive payments in the range of that requested in this case, and in even higher amounts. *See, e.g., Matamoros et al v. Starbucks Corporation*, Civ. A. No. 08-10772, Doc. 169 (D. Mass. Aug. 16, 2013) (approving $25,000 incentive payments for lead plaintiff in wage action); *In Re Publ'n Paper Antitrust Litig.*, 2009 WL 2351724, *1 (D. Conn. July 30, 2009) (approving incentive award of $20,000 for named plaintiff); *Sheppard*, 2002 WL 2003206, *5-6 (approving incentive awards of up to $29,000 for named plaintiffs); *Yap v. Sumintomo Corp. of America*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiff).

This case and *Scribner* involve almost identical issues of law and fact. Both cases raise unpaid overtime claims on behalf of the same category of workers, ASMs. The central factual issue, namely, Defendant's policy and procedure of not paying its ASMs overtime, is the same in both cases. The legal issue, whether Defendant improperly classified ASMs as exempt from overtime requirements, is also the same.

In addition to the common issues of law and fact, the fact that the Parties negotiated a settlement which includes this action and *Scribner* weighs in favor of consolidating *Scribner* with this case. Consolidation would streamline judicial evaluation of the fairness of the settlement as well as approval of the class notice and claims procedures. Federal Rule of Civil Procedure 42(a) and Local Rule 42(a) allow for the consolidation of *Scribner* with this case.

The Court should grant Plaintiffs' uncontested motion to amend the complaint to include additional plaintiffs and their state law claims. "Leave to file an amended complaint 'shall be freely given when justice so requires,' Fed. R. Civ. P. 15(a), and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Here, Defendant consents to the amendment for purposes of effectuating this settlement. Furthermore, the state law overtime claims that the additional plaintiffs seek to bring in the proposed amended complaint are similar to the FLSA claims already at issue in this action and most of them have already been asserted against Defendant in the pending Rule 23 cases.

## IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, class action settlements are subject to court approval, which may be granted after a hearing and upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). The decision of whether to

approve a proposed class action settlement rests within the discretion of the trial court. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). In making its determination, "courts should give proper deference to the private consensual decisions of the parties . . ." and should be mindful of "the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . ." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 U.S. Dist. LEXIS 108736, at *13-14 (S.D.N.Y. Nov. 17, 2009) (internal quotations omitted).

Court approval of class action settlements "generally involves a two-step process: preliminary approval and a subsequent 'fairness hearing.'" *In re Initial Public Offering Securities Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). During the preliminary phase of the process, the court "must review the proposed terms of the settlement and make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms." *Id.* at 87. At this initial stage, the court evaluates "the fairness of the proposed settlement on the basis of written submissions and informal presentation by the settling parties." *Clark*, 2009 U.S. Dist. LEXIS 108736, at *14-15 (citing Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* *("Newberg")* § 11.25 (4th ed. 2002)). *See, e.g., Hernandez v. Merill Lynch & Co.*, No. 11 Civ. 8472, 2012 U.S. Dist. LEXIS 165771, at *-6 (S.D.N.Y. Nov. 15, 2012) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. Civ. 4030, 2012 U.S. Dist. LEXIS 41886, at *2-3 (S.D.N.Y. Mar. 12, 2012) (same); *Alli*, 2011 U.S. Dist. LEXIS 143303, at *10 (same).

Granting preliminary approval "simply allows notice to issue to the class and for class members to object to or opt-out of the settlement." *Clark*, 2009 U.S. Dist. LEXIS 108736, at *14. As the Second Circuit has explained, preliminary approval constitutes "a determination that

9

there is what might be termed "probable cause" to submit the proposal to class members and

hold a full-scale hearing as to its fairness." *In re Traffic Executive Association – Eastern*

*Railroads*, 627 F.2d 631, 634 (2d Cir. 1980).  At the formal fairness hearing, the Court will have

a second opportunity to review and evaluate the settlement, this time "with the benefit of the

class members' input." *Clark*, 2009 U.S. Dist. LEXIS 108736, at *14.  Accordingly, "[w]here

the proposed settlement appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

class representatives or segments of the class and falls within the range of possible approval,"

preliminary approval is warranted.  *O'Connor v. AR Res., Inc.*, No. 3:08-cv-01703 (VLB), 2010

U.S. Dist. LEXIS 30345, at *7 (D. Conn. March 30, 2010);  *In re Initial Public Offering*

*Securities Litig.*, 243 F.R.D. at 87.

## A. The Settlement is Fair, Reasonable and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the

nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)

("*Grinnell*").  Although the Court's task on a motion for preliminary approval is merely to

perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls

within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is

useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of

discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;  (7) the ability of the defendant to

withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of

the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

### 1. Litigation Would Be Complex, Costly and Long (*Grinnell* Factor 1).

By reaching a favorable settlement prior to the resolution of dispositive motions or a third trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also O'Connor v. AR Res., Inc.*, 08 Civ. 1703, 2012 U.S. Dist. LEXIS 861, at *10 (D. Conn. Jan. 4, 2012) (finding first factor weighed in favor of approving settlement, although case was "not particularly legally or factually complex, [because] there would still be a significant amount of work and effort to prepare for trial"). This case is no exception, with approximately 400 Class Members and claims under federal and multiple state laws.

Further litigation would cause additional expense and delay. Additional trials would be lengthy and complex and would consume tremendous time and resources for the Parties and the Court. Any judgment would likely be appealed, further extending the litigation. The settlement, on the other hand, promptly and efficiently makes monetary relief available to Class Members. Therefore, the first *Grinnell* factor weighs in favor of approval.

**2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2).**

Notice of the settlement and its details has not yet issued to the class. The Court may more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object. Nonetheless, so far, counsel have received universally positive feedback from those named and opt-in plaintiffs who are aware of the settlement.

**3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3).**

In order for a court to approve a proposed settlement, "the parties [must] have engaged in sufficient investigation of the facts to enable the Court to "intelligently make . . . an appraisal" of the Settlement." *In re Austrian*, 80 F. Supp. 2d at 176 (internal citations omitted). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *Id.* (citation and internal quotation marks omitted).

The Parties have completed ample discovery to recommend settlement and in fact have conducted two trials, both of which have resulted in hung juries. *See In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145, 2013 U.S. Dist. LEXIS 63065, at *16 (S.D.N.Y. Apr. 30, 2013) (finding, in case where significant discovery had occurred, that "Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims"); *Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 U.S. Dist. LEXIS 11931, at *8-9 (S.D.N.Y. Jan. 21, 2011) (same). Accordingly, this factor favors preliminary approval.

4. **Plaintiffs Would Face Real Risks of Establishing Liability by Proceeding to Trial (*Grinnell* Factor 4).**

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *18-19 (S.D.N.Y. June 25, 2007).

A third trial on the merits would involve significant risks for Plaintiffs as to liability. Two juries have failed to return a verdict in Plaintiffs' favor. While Plaintiffs believe that they could ultimately establish both liability and damages, this may require significant factual development at trial. Plaintiffs' Counsel are experienced and realistic and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. Therefore, this factor weighs in favor of approval.

5. **Plaintiffs Would Face Real Risks of Establishing Damages by Proceeding to Trial (*Grinnell* Factor 5).**

For the same reasons set forth in the above section establishing the risks involved in establishing liability, *Grinnell* factor 5 weighs in favor of approval.

6. **Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6).**

There also exists a risk of obtaining class certification and maintaining it through trial. The Court has already denied Plaintiffs' motion for Rule 23 class certification in the *Morrison* case. While Plaintiffs believe that the record they would present in new Rule 23 motions would be different and would prove that class certification is appropriate, such process inherently

13

involves risk, expense, and delay, all of which Settlement would eliminate.  (Hayber Decl. ¶¶ 24-25).  As such, this factor weighs in favor of approval.

### 7. Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7).

There is no evidence pertaining to whether Defendant could withstand a greater judgment. (Hayber Decl. ¶ 28).  In recent years, however, even some of the largest institutions have failed, leaving the class with no recourse.  *See, e.g.*, *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 446-51 (S.D.N.Y. 2010) (finding plaintiffs' wage and hour claims against Washington Mutual's successors in interest to be barred).  Other companies in Defendant's' industry, the grocery store industry, have filed for bankruptcy, *see In re Great Atl. & Pac. Tea Co.*, 472 B.R. 666, 668-69 (S.D.N.Y. 2012).  Even if Defendant could withstand a greater judgment, a "defendant['s] ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. at 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9).  Therefore, the ability or lack thereof of Defendant to withstand a greater judgment does not preclude the Court from granting preliminary approval.

### 8. The Settlement Fund is Substantial in Light of the Best Possible Recovery (*Grinnell* Factor 8).

In preparation for the December 16, 2016, mediation, Plaintiffs calculated their estimate of damages for the Rule 23 Class Members based on data provided by Defendant on December 9, 2016, and additional dates.  Based on Plaintiffs' counsel's calculations, single damages for the Rule 23 Class Members would come to approximately $3,800,000 dollars.

Defendant has agreed to settle this case for $1,915,000, which is approximately half of Plaintiffs' calculation of the class' full single damages.  Although recovery could be greater if

Plaintiffs attained class certification, overcame motions to decertify the class or collective action, succeeded on all claims at trial, and survived an appeal, the determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178).[7] "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 U.S. Dist. LEXIS 11450, at *9-10 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." It represents a substantial recovery for Class Members, particularly in light of the risks of litigation. Settlement eliminates risks such as denial of class certification, decertification of the collective action, loss on the merits, and loss on appeal, as well as the risk of Defendant prevailing on its exemption arguments. The Parties have agreed to a settlement amount that is reasonable and

---

[7]      In addition, the class could be entitled to liquidated damages. However, other than in Massachusetts, Defendant could avoid such enhanced damages by showing that it acted in good faith in determining that the class members were exempt from overtime. Given evidence that came out during the second trial regarding a prior audit by the Department of Labor on which Defendant would claim it relied in determining that ASMs were appropriately classified as exempt, the class may have faced a greater challenge in obtaining liquidated damages.

gives appropriate weight to the benefits of settlement and the concomitant risks of litigation.

### 9. The Settlement Fund Is Substantial in Light of All the Attendant Risks of Litigation (*Grinnell* Factor 9).

For the same reasons set forth in the above section establishing that the settlement fund is substantial in light of the best possible recovery, *Grinnell* factor 9 weighs in favor of approval.

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination prior to final approval.  Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

### V. PROVISIONAL CERTIFICATION SHOULD BE GRANTED

Plaintiffs respectfully request that the Court provisionally certify the following Rule 23 classes (collectively, the "Settlement Class") under Federal Rule of Civil Procedure 23(e) for the purpose of effectuating settlement:

> All persons employed by Defendant as Assistant Store Managers who worked in Massachusetts at any time from August 21, 2011, until the date of preliminary approval of the Settlement; in New York at any time from September 29, 2009 until the date of preliminary approval of the Settlement; in Rhode Island at any time from September 30, 2013, until the date of preliminary approval of the Settlement; in Connecticut at any time from August 26, 2014, until the date of preliminary approval of the Settlement; in Maine at any time from December 21, 2014, until the date of preliminary approval of the Settlement; in New Jersey at any time from December 21, 2014, until the date of preliminary approval of the Settlement; in New Hampshire at any time from December 21, 2014, until the date of preliminary approval of the Settlement; in Vermont at any time from December 21, 2014, until the date of preliminary approval of the Settlement.

As discussed below, the Settlement Class meets all of the requirements for class certification for settlement purposes, and Defendant does not oppose provisional certification for settlement

purposes only. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds*, 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the terms of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790-92 (3d Cir. 1995) (noting practical purposes of provisionally certifying settlement class); *In re Penthouse*, 2013 U.S. Dist. LEXIS 63065, at *4 (conditionally certifying wage and hour settlement class and granting preliminary approval of settlement).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

(1)    the class is so numerous that joinder of all members is impracticable;

(2)    there are questions of law or fact common to the class;

(3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

### A. Plaintiffs meet the Requirements of Rule 23(a).

#### 1. Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs satisfy this requirement in each of the states where Rule 23 certification is sought (Massachusetts, Rhode Island, New York, Connecticut,Maine, New Hampshire, New Jersey and Vermont ) because there are approximately 40 or more class members in each of these states.

#### 2. Commonality

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues. Plaintiffs and Class Members all bring the identical claims that Defendant failed to pay them overtime wages in violation of state wage and hour laws. *See Morris*, 859 F. Supp. 2d at 615-16 (commonality satisfied where, among other

allegations, plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Alli*, 2011 U.S. Dist. LEXIS 143303, at *6 (common questions included whether "class members were properly classified as exempt from overtime requirements"); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *14-15 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek; and . . . whether [defendant] maintained accurate time records of the hours [p]laintiffs and the state settlement [c]lass [m]embers worked")).

### 3. Typicality

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotations omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.*, No. 05 Civ. 4116, 2007 U.S. Dist. LEXIS 2914, at *15 (S.D.N.Y. Jan. 12, 2007) (quoting *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996)).

Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Class Members' claims. Defendant paid all Plaintiffs and Class Members using the same method pursuant to the same company policy and pattern or practice. Plaintiffs also claim the

same injuries as do Class Members, that Defendant failed to properly pay them for overtime hours worked.  Accordingly, Plaintiffs satisfy the typicality requirement.  *See Hernandez*, 2012 U.S. Dist. LEXIS 165771, at *9 (typicality satisfied where "[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same); *Alli*, 2011 U.S. Dist. LEXIS 143303, at *6 (same).

### 4.  Adequacy of Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'"  *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)).  Plaintiffs meet the adequacy requirement because there is no evidence that Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  *See Morris*, 859 F. Supp. 2d at 616 (no evidence that named plaintiffs' and class members' interests were at odds); *Alli*, 2011 U.S. Dist. LEXIS 143303, at *6-7 (same).  Plaintiffs' Counsel also meet the adequacy requirement of Rule 23(a)(4).[8]

---

[8]      HLF lawyers are experienced in prosecuting wage and hour class and collective actions and have been appointed class counsel numerous times based on that experience.  *See, e.g.*, *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 U.S. Dist. LEXIS 104429, at *19 (D. Conn. July 26, 2012) (HLF consists of "experienced employment lawyers with good reputations among the employment law bar.  They have prosecuted and favorably settled many employment law class actions, including wage and hour class actions."); *Alli v. Boston Mkt. Corp.*, 10 Civ. 4, 2012 U.S. Dist. LEXIS 54695 at *6 (D. Conn. April 17, 2012) (appointing Richard E. Hayber of the HLF as class counsel; finding counsel to be "experienced").
       Lichten & Liss-Riordan, P.C. is also experienced and well-versed in wage and hour law and class action law.  *See, e.g.*, *O'Connor v. Uber Techs.*, No. C-13-3826 EMC, 2015 U.S. Dist. LEXIS 116482, at *132-33 (N.D.Cal. Sept. 1, 2015) (appointing Attorney Shannon Liss-Riordan as class counsel and stating

**B. Plaintiffs meet Rule 23(b)(3).**

**1. Common Questions Predominate**

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Id.* at 139. Simply because a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (internal quotations omitted). Where plaintiffs are "unified by a common legal theory" and common facts, the predominance requirement is satisfied. *McBean v. The City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

The "key consideration" is whether or not one instance of conduct by the defendant "affected the putative class members at the same time…, as opposed to numerous instances of [conduct] over time." *Macedonia Church v. Lancaster Hotel Limited Partnership*, 270 F.R.D. 107, 121 (D. Conn. 2010). In *Perkins v. Southern New England Telephone Co.,* 669 F. Supp. 2d 212, 224-25 (D. Conn. 2009), the court found predominance because there was evidence that "despite some dissimilarities, the potential class members performed similar non-exempt duties, and exercised similar

---

that "she is a leading practitioner in the field of employment misclassification both in this District and beyond."). *See also Ahlquist v. Bimbo Foods Bakeries Distrib., Inc.*, No.3:12-cv-1272, 2013 U.S. Dist. LEXIS 87919, at *8 (D.Conn. June 24, 2013) (appointing Lichten & Liss-Riordan, P.C., as class counsel).

amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification by SNET." *See also Scott v. Aetna Services, Inc.*, 210 F.R.D. 261, 267-68 (D. Conn. 2002) (finding predominance because each "class member performed the work of a systems engineer as defined by Aetna…"). Here, all members of the class are unified by common facts – that all assistant managers have the same material duties and that Ocean State classified them all as exempt at one time by one decision.

They are also unified by a common legal theory in that Plaintiffs alleged that Ocean State's exempt classification of all ASMs violates the similar wage and hour laws of the various states at issue here. *Iglesias-Mendoza v. La Belle Farm*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding that the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 398-99 (C.D. Cal. 2008) ("When the claim is that an employer's policy and practices violated labor law, the key question for class certification is whether there is a consistent employer practice that could be a basis for consistent liability. Class certification is usually appropriate where liability turns on an employer's uniform policy that is uniformly implemented, since in that situation predominance is easily established"); *Campbell v. PricewaterhouseCoopers, LLP*, 235 F.R.D. 586, 605 (E.D. Cal. 2008) (holding that common proof would predominate in the trial proposed by plaintiffs even though three separate exemptions to the California wage and hour law might apply to class members).

In order to determine whether Ocean State could prove that the primary duty of its ASMs was management, the jury in this case would again need to consider various factors, including the following referenced in the Department of Labor regulations:

the relative importance of the **exempt duties** as compared with other
types of **duties**; the amount of time spent performing **exempt** work; the
employee's relative freedom from direct supervision; and the relationship
between the employee's salary and the wages paid to other employees for
the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).  As shown by the two trials already held in the *Morrison* case, the

evidence on these issues would mostly consist of common proof; that is, evidence applicable to

the entire class.  "If common issues predominate as to liability, the court should ordinarily find

predominance, even if some individualized damage issues exist."  *Perkins*, 669 F. Supp. 2d at

224 (internal quotations omitted).  In deciding whether class members are properly classified as

exempt, courts routinely rely on common evidence such as job descriptions, expert testimony,

surveys, defendant's admissions, sampling, statistical analysis, and/or representative

testimony.  *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 88 (2d Cir. 2003) ("[T]he

plaintiffs correctly point out that not all employees need testify in order to prove FLSA

violations or recoup back-wages, [but] the plaintiffs must present sufficient evidence for the jury

to make a reasonable inference as to the number of hours worked by non-testifying

employees."); *Jankowski v. Castaldi,* No. 01-cv-0164 (SJF)(KAM), 2006 U.S. Dist. KEXIS

4237, at *16 (E.D.N.Y. Jan. 13, 2006) (plaintiffs "need not present testimony from each

underpaid employee; rather, it is well-established that [they] may present the testimony of a

representative sample of employees as part of [their] proof of the prima facie case under the

FLSA") (internal quotation omitted).

The proposed class is sufficiently cohesive.  Any differences in Plaintiffs' jobs are minor

and not material to the issues in the case.  Accordingly, Plaintiffs meet the requirement of Rule

23(b)(3).

### 2. A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal citation omitted). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[9]

Concentrating the litigation in this Court is desirable because a significant portion of the allegedly wrongful conduct occurred within its jurisdiction, and many of Defendant's stores are located here. Particularly in light of the consolidation of this action with *Scribner* and the four state court cases, the class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims. *See Morris*, 859 F. Supp. 2d at 617; *Alli*, 2011 U.S. Dist. LEXIS 143303, at *7; *Damassia v. Duane Reade,*

---

[9]     Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial."); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 140 (2d Cir. 2001).

*Inc.*, 250 F.R.D. 152, 161, 164 (S.D.N.Y. 2008).  A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

While Defendant did object to certification of Rule 23 classes generally, Defendant consents to the certification of a settlement class solely for the purposes of efficiently effectuating the proposed global settlement in all cases.

## VI.    THE PROPOSED NOTICE AND DISTRIBUTION ARE MORE THAN ADEQUATE

The proposed Notice of Class and Collective Action Settlement complies with the due process and Federal Rule of Civil Procedure 23.  Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)     the nature of the action;
> (ii)    the definition of the class certified;
> (iii)   the class claims, issues, or defenses;
> (iv)    that a class member may enter an appearance through an attorney if the member so desires;
> (v)     that the court will exclude from the class any member who requests exclusion;
> (vi)    the time and manner for requesting exclusion; and
> (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

In addition to satisfying each of the Rule 23 notice requirements, the Proposed Notice describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing.  Courts have approved class notices even when they provided only general information about a settlement.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson*, 2011 U.S. Dist. LEXIS 105775, at *11, 26-27, 38-39; *Hernandez*, 2012 U.S. Dist. LEXIS

165771, at *12-14.  The Proposed Notice, which provides class members with detailed information, fully comply with and indeed exceed the notice requirements of Rule 23.

The Settlement Agreement provides that within 15 days of the Court's issuance of the Preliminary Approval Order, Defendant will submit to Plaintiffs' counsel the names and last known addresses for all class members.  Plaintiffs' counsel will then mail the notices and claim forms to all class members and will also follow up on any undeliverable claim forms, including making reasonable attempts to locate class members where the first notice is returned as undeliverable.  As discussed above, the Proposed Notice contains information about how to exclude oneself or object to the settlement.  Each Rule 23 Class Member will have 45 days from the date of mailing to opt out of the Settlement Agreement or object to the settlement.  Class members will be encouraged to submit claim forms by this date as well, but they will be permitted to submit claims for an additional four months even beyond the initial distribution date (after receiving additional reminders), a process that is designed to maximize the amount of class members who will participate in the settlement.

## VII.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Class Counsel under Rule 23(g), which governs the standards and framework for appointing class counsel and sets forth four determining factors: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and" (4) "the resources that counsel will commit to representing the class[.]" Fed. R. Civ. P. 23(g)(1)(A); *see also Damassia*, 250 F.R.D. at 165.  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the class.  Fed.

26

R. Civ. P. 23(g)(1)(B).

Plaintiffs' Counsel meet the standards set forth in Rule 23(g).  Plaintiffs' Counsel have done substantial work identifying, investigating, prosecuting, and settling Plaintiffs' and Class Members' claims.  They also have substantial experience prosecuting and settling employment class actions, including wage and hour class actions.  The lawyers assigned to this matter are well-versed in class action and wage and hour law and are well-qualified to represent the class. Courts in this district and elsewhere have repeatedly found counsel to be adequate class counsel in wage and hour class actions.  *See supra* note 9.

## VIII.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant this

Motion for Preliminary Approval of Class Action Settlement and scheduled a final approval

hearing for July 2017.  Upon the Court's entry of the Proposed Order attached as Exhibit C,

Plaintiffs' counsel will distribute the class notice to class members.

> Respectfully Submitted,
>
> OMAR MORRISON, CARLI GALASSO and MANUEL
> TOPPINS, individually and on behalf of other similarly
> situated Assistant Store Managers,
>
> By their attorneys,
>
>
> _____
> Richard E. Hayber, Esq.
> The Hayber Law Firm, LLC
> Fed. No.: ct11629
> 221 Main Street, Suite 502
> Hartford, CT 06106
> Phone: (860) 522-8888
> Fax: (860) 218-9555
> rhayber@hayberlawfirm.com
>
> Shannon Liss-Riordan, Esq. (admitted *proc hac vice*)
> Lichten & Liss-Riordan, P.C.
> 729 Boylston Street – Suite 2000
> Boston, MA 02116
> Phone: (617) 994-5800
> Fax: (617) 994-5801
> sliss@llrlaw.com

## CERTIFICATION OF SERVICE

I hereby certify that on **APRIL 5, 2017**, a copy of the above was filed electronically [and service made by mail to anyone unable to accept electronic filing].  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.

Richard E. Hayber