# EXHIBIT A

## CLASS AND COLLECTIVE ACTION SETTLEMENT AGREEMENT

This Class and Collective Action Settlement Agreement ("Agreement") is made by and between (i) Omar Morrison, Manual Toppins, Carli Galasso, Michael Scribner, Kelly Watts, Lynne Newton, David Povilaitis, Michael Munson, George Owens, and Kristen Hanscome, (ii) the FLSA Opt In Class and Rule 23 Class, and (iii) Ocean State Jobbers, Inc., Ocean State Job Lot Stores of MA, Inc., Ocean State Job Lot of New York, Inc., Ocean State Job Lot Stores of RI, Inc., Ocean State Job Lot Stores of RI2, Inc., and all of such entities' parents, subsidiaries, and affiliates, and any other entities operating under the name "Ocean State Job Lot" (collectively, "Defendants") to voluntarily and completely settle and resolve the matters in the Lawsuits set forth below and the wage and hour claims that were or could have been asserted by the parties to this Agreement. The Named Plaintiffs, the Settlement Class(es), and the Defendants may be separately referred to as a "party," and may be collectively referred to as the "parties."

The parties hereby agree as follows:

1.    (A)   The "Lawsuits" Defined:

      a. *Morrison et al. v. Ocean State Jobbers, Inc.*, 3:09-cv-01285-AWT ("Morrison Lawsuit"), pending in the United States District Court for the District of Connecticut, and involving plaintiffs who work(ed) in Connecticut, Massachusetts, Rhode Island, Vermont and New Hampshire.

      b. *Scribner et al. v. Ocean State Jobbers, Inc.*, 1:14-cv-11633-WGY ("Scribner Lawsuit"), pending in the United States District Court for the District of Connecticut, and involving plaintiffs who work(ed) in Connecticut, Massachusetts, Rhode Island, Vermont, New Hampshire, Maine and New York.

      c. *Newton et al. v. Ocean State Job Lot Stores of MA, Inc.*, C.A. No. 15-4823 ("Newton Lawsuit"), pending in the Superior Court of the State of Massachusetts, and involving plaintiffs who work(ed) in Massachusetts.

      d. *Munson et al. v. Ocean State Job Lot of New York, Inc.*, No. 610345/2015 ("Munson Lawsuit"), pending in the Supreme Court of the State of New York, County of Suffolk, and involving plaintiffs who work(ed) in New York.

      e. *Owens et al. v. Ocean State Job Lot Stores of RI, Inc. et al.*, PC-2015-4252 ("Owens Lawsuit"), pending in the Superior Court of the State of Rhode Island, and involving plaintiffs who work(ed) in Rhode Island.

    f.    *Hanscome et al. v. Ocean State Jobbers, Inc.*, HHD-CV-16-6070810-S ("Hanscome Lawsuit"), pending in the Superior Court of the State of Connecticut, and involving plaintiffs who work(ed) in Connecticut.

The Morrison Lawsuit, Scribner Lawsuit, Newton Lawsuit, Munson Lawsuit, Owens Lawsuit, and Hanscome Lawsuit may be collectively referred to as the "Lawsuits."

    (B)    <u>Named Plaintiffs and Settlement Classes Defined</u>:

a. The "Named Plaintiffs": Omar Morrison, Manual Toppins, Carli Galasso, Michael Scribner, Kelly Watts, Lynne Newton, David Povilaitis, Michael Munson, George Owens, and Kristen Hanscome.

b. The "FLSA Opt In Class": All persons, other than the Named Plaintiffs, who have filed consent forms in the Morrison Lawsuit or the Scribner Lawsuit and who have not filed withdrawals of those forms or who have not otherwise been excluded from the litigation as of the date of settlement in this case (December 21, 2016), and any member of the Rule 23 Class who opts in to the FLSA Opt In Class by depositing/cashing a Settlement Class Payment. The members of the "FLSA Opt In Class as of the date of settlement in this case are listed in Schedule A.

c. The "Rule 23 Class": All persons, other than the Named Plaintiffs, employed by Defendants as assistant store managers who worked in Connecticut, Massachusetts, Rhode Island, New York Vermont, Maine, New Jersey and New Hampshire during the following periods:

c(i). From August 21, 2011, until the date of preliminary approval of the Settlement for the Rule 23 Massachusetts class;[1]

c(ii). From September 29, 2009, until the date of preliminary approval of the Settlement for the Rule 23 New York class;

c(iii). From September 30, 2013, until the date of preliminary approval of the Settlement for the Rule 23 Rhode Island class;

c(iv). From August 26, 2014, until the date of preliminary approval of the Settlement for the Rule 23 Connecticut class.

---

[1] On August 21, 2014, Plaintiffs filed an amended complaint in *Scribner*, adding a claim under Massachusetts Overtime Law, M.G.L.c. 151 §1A. Accordingly, the Massachusetts Rule 23 class was already part of the *Scribner* Lawsuit at the time the Newton Lawsuit was filed on June 30, 2015.

c(v). From December 21, 2014, until the date of preliminary approval of the Settlement for the Rule 23 classes involving the states of Vermont, Maine, New Jersey and New Hampshire.

The Named Plaintiffs, FLSA Opt In Class, and Rule 23 Class may be collectively referred to as the "Settlement Class." Solely for purposes of settling this lawsuit, the parties stipulate and agree that the requisites for establishing class and collective certification with respect to the Settlement Class as defined above have been and are met. The parties agree that evidence of this limited stipulation for settlement purposes only will not be deemed admissible for any purpose in this or any other proceeding.

2. <u>Court Preliminary and Final Approval of Agreement</u>: The parties agree to cooperate as necessary to obtain court approval of this Agreement. In the event the Agreement is terminated pursuant to Paragraph 9, the parties agree to continue to negotiate in good faith an agreement with terms that are acceptable to the Court and the parties, provided that in no event shall Defendants' payment obligation exceed that set forth herein. The parties agree to cooperate to seek Court preliminary and final approval of this Agreement as follows:

a. The parties, if necessary, will file joint motions to stay the Scribner Lawsuit, Newton Lawsuit, Munson Lawsuit, Owens Lawsuit, and Hanscome Lawsuit, and file an amended complaint in the Morrison Lawsuit, which will include the claims in the above-stayed Lawsuits so that all litigation can be submitted for approval to Judge Alvin Thompson or his successor. In the event that the court in any one of the Lawsuits refuses to stay such Lawsuit(s), the parties will withdraw such Lawsuit(s) and toll the statute of limitations for the claims in such Lawsuit(s) pending final approval of this Agreement in the Morrison Lawsuit.

b. The parties will jointly request an order granting preliminary approval of the Agreement ("Preliminary Approval"). Plaintiffs' counsel will prepare a Motion for Approval and all necessary documents (subject to Defendants' review and approval).

c. Within fifteen (15) days of entry of Preliminary Approval of the Agreement, Defendants will provide to Plaintiffs' counsel the names and last known addresses for all Settlement Class members.

d. Plaintiffs' counsel will prepare a Class and Collective Action Notice and Claim Form to be sent to Settlement Class members (subject to Defendants' review and approval).

3

{00472529.DOC/1}

Case 3:09-cv-01285-AWT   Document 468-1   Filed 08/06/17   Page 5 of 12

  e. Defendants will cooperate to provide Plaintiffs' counsel with such additional data as may be reasonable and necessary for them to make reasonable calculations of Class Members' settlement allocations."

 3. Settlement Fund: The total amount to be paid by Defendants in settlement of the claims resolved by this Agreement is $1,915,000.00 ("Settlement Fund"). Aside from the Settlement Fund and the Defendants' share of the payroll taxes, under no circumstances shall Defendants be required to pay more than the Settlement Fund for any reason under this Agreement to settle and resolve this matter. In accordance with the terms and dates set forth in Paragraph 4 of this Agreement, Defendants will pay the Settlement Fund as follows:

  a. A total of $1,185,000.00 will be paid to the Settlement Class, pursuant to a formula to be determined by Plaintiffs' counsel, subject to approval by Defendants (to be paid half as W2 income (representing overtime back wages) and half as 1099 income (representing other non-wage damages under applicable law). Plaintiffs will develop a formula that allocates class payments based upon the number of workweeks each Settlement Class member worked during the relative statute of limitations for his/her case, and which gives greater weight to employees who opted in to the Morrison Lawsuit and Scribner Lawsuit, and greater weight to Settlement Class members who have worked in Massachusetts (due to the mandatory trebling of damages under Massachusetts law). In addition, Plaintiffs' formula will provide for incentive payments for the Named Plaintiffs and each Testifying Plaintiff (defined as a plaintiff who testified at either trial in the Morrison Lawsuit), to be paid as 1099 non-wage income for services rendered in their capacities as class representatives ("Incentive Payments"). In accordance with Paragraph 4 of this Agreement, Plaintiffs will make the calculations for the allocations and provide them to Defendants, and then Defendants will submit the appropriate checks to Plaintiffs' counsel, who shall distribute them to the Settlement Class members. The aggregate amount of the payments described above in this paragraph shall not under any circumstances exceed $1,185,000.00.

  b. A total of $730,000.00 in attorneys' fees and costs (1/3 fee being $638,333 and the remainder as costs of the Lawsuits) ("Attorney's Payment") will be paid as 1099 non-wage income by check payable to "Hayber Law Firm, LLC." Hayber Law Firm will distribute fees and costs from this $730,000.00 payment to other co-counsel pursuant to their agreements. The attorneys' fees and costs approved by the Court shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney or

{00472529.DOC/1}  4

law firm for attorneys' fees, expenses or costs in the Lawsuits incurred on behalf of the Named Plaintiffs and/or the Settlement Class, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of the Named Plaintiffs and/or the Settlement Class. Plaintiffs' counsel further agrees that any allocation of fees between or among other co-counsel and any other attorney representing a Named Plaintiff and/or the Settlement Class shall be the sole responsibility of Plaintiffs' counsel, and Plaintiffs' counsel agrees to indemnify and hold harmless Defendants from any claim or liability by any other party claiming or seeking to claim any attorneys' fees or costs.

4.      Procedure for Claim Administration and Payment: Plaintiffs' counsel will be responsible at its sole cost for: mailing out class notices and claim forms to Settlement Class members; following up on any undeliverable claim forms, including making reasonable attempts to locate class members where the first notice is returned as undeliverable at the address provided; responding to class members' inquiries; collecting claim forms from class members; sending reminder notices as appropriate; and calculating class members' settlement payments based on data provided by Defendants. After Preliminary Approval, Settlement Class Members will be given thirty (30) days from the date the Class Notice is sent to (i) submit claim forms to receive shares from the Settlement Fund, (ii) in the case of the Rule 23 Class, opt out of the Agreement, or (iii) submit objections ("Claim Period"). Additionally, Plaintiffs' counsel may accept late claim forms provided that they are submitted within twenty (20) days prior to the final distribution of the Settlement Fund, unless Defendants agree to a different deadline. During the Claim Period, Plaintiffs' counsel shall provide periodic updates at Defendants' counsel's request to identify the notices mailed and claim forms and opt-outs and objections received. Plaintiffs' counsel will calculate the settlement distribution to class members based on the formula described above.

Requests for Exclusion. The Class Notice shall provide that Settlement Class Members who wish to exclude themselves from the settlement must submit a written statement requesting exclusion from the settlement ("opt-out"), postmarked on or before the date specified in the Class Notice. Such written request for exclusion must contain the name, address and telephone number of the person requesting exclusion. The opt-out must be personally signed by the Settlement Class Member who seeks to opt out. No opt-out request may be made on behalf of a group of Settlement Class Members. The opt-out request must be sent by mail and must be timely postmarked. The postmark date of the mailing envelope shall be the exclusive means used to determine whether a request for exclusion (opt-out) has been timely submitted. Any Settlement Class Member who requests exclusion (opts out) of the settlement will not be entitled to any Settlement Class Payment and will not be bound by the Agreement or have any right to object, appeal, or comment thereon. At no time shall any of the parties or their

5

counsel seek to solicit or otherwise encourage members of the Settlement Class to opt out of the Settlement.

Objections. The Class Notice shall provide that those members of the Settlement Class who wish to object to the settlement must mail a written statement of objection on or before the date specified in the Class Notice. The postmark date of the mailing shall be the exclusive means for determining that a Notice of Objection is timely. The Notice of Objection must state the specific basis for the objection. Members of the Settlement Class who fail to make objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Agreement. At no time shall any of the parties or their counsel seek to solicit or otherwise encourage members of the Settlement Class to submit written objections to the settlement or appeal from the Order and Final Judgment.

Within fifteen (15) days after entry of Final Approval of the Agreement, Plaintiffs' counsel shall provide to Defendants' counsel: (1) a spreadsheet showing amounts owed to each Settlement Class member; and (2) Plaintiffs' counsel's tax identification number. Within thirty (30) days after receipt by Defendants' counsel of such spreadsheet and tax identification number, Defendants shall send to Plaintiffs' counsel payment of the Settlement Fund by checks for Settlement Class members, Incentive Payments checks for the Named Plaintiffs and Testifying Plaintiffs, and the check for the Attorneys' Payment. Plaintiffs' counsel shall mail all such checks (other than for the Attorneys' Payment) to each Settlement Class claimant, by first class mail to his/her last-known address no later than fifteen (15) days after the Defendants have sent the Settlement Funds to Plaintiffs' counsel.

5. Settlement Class Payments: Consistent with Paragraph 3a of this Agreement, payments to Settlement Class claimants will be made in two checks: 50% of each Settlement Class claimant's share of the Settlement Fund will be paid as 1099 income, with no withholdings; and 50% of each Settlement Class claimant's share will be paid as W2 income, with the employee's share of taxes deducted. Defendants will separately pay the employer's share of taxes, and that amount will not come from the Settlement Fund. Nothing in this Agreement shall be construed to require Defendants to make any payments to compensate Settlement Class members/claimants or have any liability whatsoever to Settlement Class members/claimants for any adverse tax effect associated with any payments or benefits, or for any failure to deduct or withhold from any payments or benefits. Defendants also shall not have any liability to Settlement Class members/claimants for the loss of a check or any other issue causing non-payment to the Settlement Class member(s)/claimant(s) once the Settlement Fund checks are sent by Defendants' counsel to Plaintiffs' counsel, except that Defendants shall not unreasonably refuse to cooperate with Plaintiffs' counsel to rectify non-payment when circumstances indicate that there exists a genuine reason for the loss of a check or other issue causing non-payment to the Settlement Class member(s)/claimant(s).

6

{00472529.DOC/1}

6. <u>Residual Funds</u>: In the event that any Settlement Class member does not submit a timely claim form (or does submit a claim form but does not cash his or her check, despite Plaintiffs' counsel's reasonable efforts to notify the Settlement Class member/claimant that the check has not been cashed after Defendants' counsel has advised Plaintiffs' counsel that any such check(s) has not been cashed), his or her allocated share of the Settlement Fund shall be held by Defendants as residual funds ("Residual Funds"), and after the distributions described in Paragraphs 4 and 5 above, the Residual Funds, if any, will be held by Defendants for an additional one hundred twenty (120) days and will be used to pay late claims and to resolve any disputes which may arise. After the one hundred twenty (120) days has elapsed, any remaining unclaimed Residual Funds will be distributed by Plaintiffs' counsel to all Settlement Class members who have submitted claim forms, regardless of when they filed their claim forms, in an amount proportional to the share of the Settlement Fund ("Second Distribution") that each Settlement Class member/claimant received as an initial distribution, except that those individuals who would only be entitled to less than $50 of the Residual Funds will not receive a Second Distribution. Plaintiffs' counsel will be responsible for providing to Defendants the calculation for the Residual Fund distribution. The Parties agree that no amount of the Settlement Fund will revert back to Defendants. Sixty (60) days after the Residual Funds are distributed, Defendants will inform Plaintiffs' counsel of any uncashed checks, and Plaintiffs' counsel will make reasonable efforts to locate such Settlement Class members/claimants and distribute their funds to them. Ninety (90) days after the Residual Funds are distributed, the value of any remaining portion of the Settlement Fund or uncashed checks (for which the parties cannot locate the Settlement Class member/claimant in order for them to cash their check) will be distributed on a *cy pres* basis to the National Employment Law Project (NELP).

7. <u>Class Member Release</u>: As of the date upon which Final Approval of this Agreement is entered, and except as to such rights or claims as may be created expressly in this Agreement, each Settlement Class member who does not opt out of the Agreement forever and fully releases Defendants, as defined in the preamble at the top of page 1 of this Agreement, together with all of their members, owners, stockholders, predecessors, successors, assigns, parents, subsidiaries, affiliates, partners, joint ventures and investors, and their respective agents, directors, officers, employees, shareholders, executives, counsel, members, insurers, fiduciaries, representatives, attorneys and benefit plans (collectively the "Released Parties") from any and all claims related to Defendants' alleged misclassification and/or failure to pay overtime wages under state or local law. In addition, each Settlement Class member who has opted into one or more of the Lawsuits (by having submitted an opt-in form, by submitting an opt-in form as part of the Settlement, or by cashing/depositing a Settlement Class Payment) or who submits a claim to participate in the settlement forever and fully releases the Released Parties from any and all claims related to Defendants' alleged misclassification and/or failure to pay overtime wages under the federal FLSA. This release shall be contained in the Class and Collective Action Notice and Claim Form to be sent to the Settlement Class members, which shall expressly

7

{00472529.DOC/1}

advise that cashing/depositing a Settlement Class Payment constitutes an opt-in to the FLSA Opt In Class.

8. <u>No Admission of Liability</u>: The mutual covenants and promises contained herein are not to be construed as admissions of liability on behalf of any of the parties. On the contrary, each party expressly denies any liability whatsoever to the other party. The parties further agree that neither this Agreement nor any part of it is to be construed, used or admitted into evidence in any proceeding, judicial, administrative or otherwise, now pending or subsequently instituted, except one brought for the purpose of enforcing any rights, obligations, or duties arising out of this Agreement, or as otherwise required by law. In the event that this Agreement is not finally consummated, it and any preceding settlement discussions shall be without prejudice to any party and shall not be used in any subsequent proceedings, judicial, administrative or otherwise.

9. <u>Termination</u>: This Agreement may be terminated by written notice to Plaintiffs' counsel or Defendants' counsel (as the case may be): (i) by any party within twenty (20) business days if the Court declines to enter Preliminary Approval, Final Approval, or Judgment in substantially the form submitted by the parties, (ii) by the Defendants if less than ninety percent (90%) of the Named Plaintiffs and FLSA Opt-In Class that previously opted in to the Morrison or Scribner cases submits a claim form, (iii) by the Defendants if more than ten percent (10%) of the Rule 23 Class opts out and/or files objections, or (iv) by any party if this Agreement does not become final for any other reason, provided that in the event of Paragraph 9(i) or 9(iv), the parties shall cooperate to attempt to address issues raised that caused such circumstances.

10. <u>Effect of Termination</u>: Termination of this Agreement pursuant to Paragraph 9 shall have the following effects:

    a. The Agreement shall be terminated and shall have no force or effect, and none of the parties shall be bound by any of its terms;

    b. Defendants shall have no obligation to pay the Settlement Fund or make any payment under the Agreement to any party, Settlement Class member/claimant or Plaintiffs' counsel in the event the Agreement is terminated, and any amounts having already been paid shall immediately be refunded to Defendants;

    c. Any Preliminary Approval Order, Final Approval Order and/or Judgment, including any order of conditional class certification, shall be void and vacated;

    d. The Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the parties, all of

whom shall be restored to their respective positions in the Lawsuits as they existed as of December 21, 2016 except as enumerated herein;

e.  Neither this Agreement, nor any ancillary documents, actions, statements and communications, nor any filings in furtherance of settlement (including all matters associated with the mediation and/or settlement negotiations), shall be admissible or offered into evidence in the Lawsuits or any other action or proceeding for any purpose whatsoever; and

f.  If the Agreement is terminated, the parties agree to work cooperatively to request jointly that the Court enter a reasonable schedule to proceed with the Lawsuits, including new deadlines for responding to pleadings, the completion of discovery, class certification briefing, expert reports, and dispositive motion briefing, and trial.

11.  Dismissal: Upon final Court approval of the settlement, and the expiration of any right of appeal, Plaintiffs shall effectuate a dismissal of all Lawsuits that are subject to this agreement with prejudice.

12.  Miscellaneous

12.1  Binding Effect: If the Court grants Final Approval, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, administrators, executors, administrators, assigns, officers, and shareholders.

12.2  No Collateral Attack: This Agreement shall not be subject to collateral attack by the Named Plaintiffs or any other Settlement Class members. Such prohibited collateral attacks shall include but not be limited to claims that a Settlement Class member/claimant settlement payment was improperly calculated, that improper deductions or withholdings were made from a settlement payment, or that the Settlement Class member/claimant failed to submit a timely or valid claim for any reason.

12.3  Authority to Sign: The signatories to this Agreement hereby represent that they are fully authorized to enter into this Agreement and bind the parties hereto, including all Settlement Class members, to the terms and conditions hereof. Because the Settlement Class Members are so numerous, it is impossible or impractical to have each one execute this Agreement. The Class Notice and the Claim Form will advise all Settlement Class Members of the binding nature of the release and such shall have the same force and effect as if this Agreement were executed by each Settlement Class Member.

12.4  Counterparts: This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each

counterpart shall be deemed an original and, when taken together with other signed counterparts, shall constitute one Agreement, shall be binding upon and effective as to all parties. Facsimile or scanned signatures shall have the same effect as original signatures.

12.5   Entire Agreement: This Agreement constitutes the entire agreement between the parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein. This Agreement supersedes all prior agreements and understandings among the parties with respect to the settlement of the Lawsuits.

12.6   Modification: This Agreement may not be changed, altered, waived or modified, except in a written agreement that is both signed by the parties, and their counsel. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties hereto. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

12.7.   Enforcement and Governing Law: This Agreement shall be governed, construed, interpreted, and determined in accordance with Connecticut law, without regard to its conflicts of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

_____
On behalf of the Plaintiffs
And the Settlement Class

Richard E. Hayber
Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT 06106
(860) 522-8888
rhayber@hayberlawfirm.com


Shannon Liss-Riordan, BBO #640716
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
sliss@llrlaw.com

_____
Omar Morrison
For the Settlement Class


_____
Cozen O'Connor
On behalf of the Defendants

Michael C. Schmidt
Jonathan Cavalier
Cozen O'Connor
277 Park Avenue
New York, New York 10172
(212) 453-3937
mschmidt@cozen.com


_____
Ocean State, by Marc Perlman
For the Defendants

{00472529.DOC/1}

11